United States District Court
For the Northern District of California

1
2
3
4
5                          UNITED STATES DISTRICT COURT

6                          NORTHERN DISTRICT OF CALIFORNIA

7

8    RICHARD STUART,                              No. C-07-4499 EMC

9              Plaintiff,                          **ORDER GRANTING PLAINTIFF'S
                                                   MOTION FOR LEAVE TO FILE
10        v.                                       SECOND AMENDED COMPLAINT;
                                                   AND GRANTING PLAINTIFF'S
11   RADIOSHACK CORPORATION,                       MOTION FOR CLASS
                                                   CERTIFICATION**
12             Defendant.
     _____/             **Docket Nos. 37, 51**
13

14

15        Plaintiff Richard Stuart has filed a class action against Defendant RadioShack Corporation,

16   asserting claims that RadioShack has violated the California Labor Code and the California Business

17   & Professions Code by failing to reimburse employees for the expenses they incurred in carrying out

18   inter-company store transfers ("ICSTs") (*e.g.*, transfer of store merchandise).  Expenses include

19   those incurred by an employee driving his or her own car on company business.  Currently pending

20   before the Court are Mr. Stuart's motion for leave to file a second amended complaint ("SAC") and

21   motion for class certification.  Having considered the parties' briefs and accompanying submissions,

22   as well as the oral argument of counsel, the Court hereby **GRANTS** the motion for leave to amend

23   and **GRANTS** the motion for class certification.

24                    I.    **FACTUAL & PROCEDURAL BACKGROUND**

25        California Labor Code § 2802 provides in relevant part that "[a]n employer shall indemnify

26   his or her employee for all necessary expenditures or losses incurred by the employee in direct

27   consequence of the discharge of his or her duties, or of his or her obedience to the directions of the

28   employer . . . ."  Cal. Lab. Code § 2802(a).

**United States District Court**
For the Northern District of California

1    In his first amended complaint ("FAC"), Mr. Stuart alleges that RadioShack violated this

2    statute by having a policy of not compensating employees "for use of [their] personal vehicles for

3    RadioShack business trips of less than 25 miles." FAC ¶ 2.  The business trips at issue typically

4    involved picking up and/or delivering merchandise from one RadioShack store to another.  *See* FAC

5    ¶ 1.  As defined in the FAC, the class that Mr. Stuart seeks to represent consists of "[a]ll persons

6    employed by Defendants within the State of California, at any time during the past four (4) years

7    through the present who drove their personal vehicles less than 25 miles to and from RadioShack

8    Stores and who were not reimbursed for mileage."  FAC ¶ 7.

9            In his motion for class certification, Mr. Stuart asks for certification of a different class -- *i.e.*,

10   a class consisting of "[a]ll persons employed by RadioShack Corporation in California at any time

11   between June 7, 2003 through the present, who transported materials, including store merchandise,

12   from one RadioShack store to another and were not reimbursed for expenses."  Mot. at 7.

13           After RadioShack pointed out that Mr. Stuart was asking for certification of a class different

14   from that alleged in his complaint, Mr. Stuart filed a motion for leave to file a SAC.  In his proposed

15   SAC, Mr. Stuart alleges that "RadioShack's written policy states that RadioShack will not

16   compensate its employees . . . for use of their personal vehicles for RadioShack business trips which

17   said employees were required to perform on behalf of RadioShack, in the normal course and scope

18   of their employment with RadioShack and in the discharge of their duties."  SAC ¶ 2.  Mr. Stuart

19   asks for certification of a class consistent with the class as defined in his motion for class

20   certification -- *i.e.*, class consisting of "[a]ll persons who were employed at RadioShack retail stores

21   in the State of California at any time between June 7, 2003, through the present who transported

22   materials including store merchandise from one RadioShack store to another and were not

23   reimbursed for expenses."  SAC ¶ 7.  This, of course, includes those previously excluded from the

24   putative class alleged in the original complaint, *i.e.*, those who drove their personal vehicles more

25   than 25 miles to and from RadioShack stores.

26

27

28

United States District Court

For the Northern District of California

## II.  DISCUSSION

A.      Motion for Leave to File SAC

As indicated above, Mr. Stuart seeks permission to file a SAC in order to broaden the scope of the class and then obtain certification of the broader class.  *See Berlowitz v. Nob Hill Masonic Management, Inc.*, No. C-96-01241 MHP, 1996 WL 724776, at *2 (N.D. Cal. Dec. 6, 1996) (rejecting plaintiff's attempt to seek certification of a class different from that alleged in the complaint; stating that the court was "bound by the class definition provided in the complaint" and that it would "not consider certification of the class beyond the definition provided in the complaint *unless plaintiffs choose to amend it*") (emphasis added).

Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "'Four factors are commonly used to determine the propriety of a motion for leave to amend.  These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.'"  *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007).

In the instant case, RadioShack asserts that Mr. Stuart has unreasonably delayed in seeking leave to amend.  Apparently, as far back as August 2007 or thereabouts, Mr. Stuart's counsel contemplated filing an amended complaint to allege that RadioShack had failed to reimburse employees for all vehicle expenses (and not just for such expenses incurred for trips fewer than 25 miles).  *See* Paley Decl. ¶ 2.  In May 2008, Mr. Stuart's counsel again contemplated filing an amended complaint.  *See* Paley Decl. ¶ 2.  In July 2008, Mr. Stuart's counsel informed the Court through a joint CMC statement that he "intend[ed] to move to amend the complaint . . . to expand the class definition to include Inter-Company Stock Transfers of more than 25 miles."  Docket No. 27 (St. at 6).  But ultimately no motion for leave to amend was filed until December 2008 -- more specifically, only after RadioShack had pointed out, in its opposition to the motion for class certification, that Mr. Stuart was seeking certification of a class beyond that alleged in his FAC.  In short, it appears that, for more than a year, Mr. Stuart thought about amending the complaint but did not do so.  Thus, RadioShack's assertion of undue delay has, at least at first blush, some merit.

United States District Court

For the Northern District of California

In response, Mr. Stuart claims that "[t]he reason why the request was not made earlier is that when [his] counsel appeared in this case at [a] [c]ase management hearing, . . . in August of 2008, the parties and Court discussed the amendment and [counsel] for [RadioShack] said [he] did not have a problem if [Mr. Stuart] were only going to amend the class definition to conform to proof [*i.e.*, the Intra-Company Stock Transfer Reports]."  Glick Decl. ¶ 4; *see also* Docket No. 32 (St. at 5-6) (stating that Mr. Stuart "intend[ed] to amend the Complaint to revise the class definition upon the Intra-Company Stock Transfer Reports obtained by Defendant").  This argument is not particularly persuasive for two reasons.  First, the argument only addresses why no motion for leave to amend was sought from August 2008 on.  Mr. Stuart fails to explain why he made no attempt to amend from August 2007 to August 2008.  Second, even assuming that RadioShack agreed to an amendment to conform to proof, it is not clear that this constituted an agreement to the specific amendment now sought -- *i.e.*, a class definition without any mileage limitation.  Notably, a prior filing with the Court suggests that RadioShack did not intend to make an agreement to such a broad class definition.  *See* Docket No. 27 (St. at 6) (responding to Mr. Stuart's statement that he intended to expand the class definition to trips of more than 25 miles; arguing that any proposed amendment would be "untimely and improper").  The Court therefore has serious concern as to delay on the part of Mr. Stuart.  *See Lockheed Martin Corp. v. Network Solns., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("Although delay is not a dispositive factor in the amendment analysis, it is relevant, especially when no reason is given for the delay.").

Of course, "[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).  "[T]he party opposing amendment must also show that the amendment sought is futile, in bad faith or will cause undue prejudice to the opposing party." *Jones v. Bates*, 127 F.3d 839, 847 n.8 (9th Cir. 1997).

In the case at bar, RadioShack claims prejudice, in particular, because it has already filed an opposition to the motion for class certification.  However, it is likely that RadioShack would make the same arguments in opposition to the motion for class certification even if the class definition were expanded.  RadioShack admits as much when it contends that the proposed amendment is futile for the very reasons argued in its opposition to the motion for class certification.  *See* Opp'n at 11.

4

United States District Court
For the Northern District of California

1    RadioShack also claims prejudice on the ground that the amendment "would require

2    additional discovery by RadioShack to explore the basis for Plaintiff's new allegations."  Opp'n at

3    11.  RadioShack, however, provides no specific explanation as to what discovery would be needed.

4    Any such discovery would not likely be substantial -- RadioShack knows what its policies on

5    reimbursement are, and Mr. Stuart does not seem to be asking for new discovery based on the

6    amendment.  *Compare Westfall v. Kendle Int'l, CPU, LLC*, No. 1:05-cv-00118, 2007 WL 486606, at

7    *4 (N.D.W. Va. Feb. 15, 2007) (denying plaintiff's motion for leave to file a fourth amended

8    complaint -- asking, in part, to add three new plaintiffs to the litigation -- which was filed on the

9    same day that the defendants' response to her motion for class certification was due; explaining that

10   the defendant would be prejudiced by the amendment because the court "could not consider the

11   motion for either type of class certification until after the plaintiff rebriefed the certification issue

12   with these [new] plaintiffs as representative parties").  To the extent that Mr. Stuart might seek new

13   discovery, that would not necessarily disrupt the current trial schedule; currently, trial is slated for

14   June 2009, some five months away.

15   The Court notes, however, that the proposed SAC contains the following factual allegation:

16          RadioShack's written policy states that RadioShack will not
            compensate its employees, including Stuart and the class he
17          represents, for use of their personal vehicles for RadioShack business
            trips which said employees were required to perform on behalf of
18          RadioShack, in the normal course and scope of their employment with
            RadioShack and in the discharge of their duties.

19

20   SAC ¶ 2.  This factual allegation appears groundless.  There does not seem to be any dispute

21   between the parties that the *written* policy in place during the bulk of the class period provided in

22   relevant part as follows:

23          An employee who uses his or her own car on business will be
            reimbursed for mileage (i.e., to and from airport, factories,
24          warehouses, etc.).

25          Mileage for incidental business use of a car within the city or
            suburbs where the store/office/headquarters is located (trips to the post
26          office, bank, etc.) will not be reimbursed.

27   Brooks Decl., Ex. 3 (policy); *see also* Schultz Decl. ¶ 5 (referring to "team member" instead of

28   employee but otherwise citing same key language above).  Thus, contrary to what the proposed SAC

alleges, there is no blanket written policy that bars reimbursement.  Reimbursement appears to have been keyed to the distance of the travel -- whether it was within the city or suburbs.  Mr. Schultz, RadioShack's Area Vice President for the Western United States, so testified in explaining the policy.  *See* Schultz Depo. at 168-69.  Notably, even Mr. Stuart himself believed that reimbursement for trips exceeding 25 miles were reimbursable and in fact sought to obtain such reimbursement on one occasion.  *See* Stuart Depo. at 23, 39-40, 43.

Furthermore, in January 2007, the written policy changed for California employees.  *See* Schultz Decl. ¶ 5.  The change eliminated "the restriction on reimbursement for incidental trips to the bank, post office, etc.  After January 2007, all business trips were eligible for reimbursement." Schultz Decl. ¶ 5.  Thus again, contrary to what the proposed SAC alleges, there is no blanket written policy barring reimbursement.  (For purposes of convenience, the Court shall hereinafter refer to the policy in place before January 2007 as the "old policy" and the policy in place as of January 2007 as the "new policy.").

Because the proposed SAC contains a groundless allegation, Mr. Stuart's request for leave to file the amended complaint should arguably be denied.  However, it makes little sense to take this approach in the instant case since the thrust of the proposed amendment is that, regardless of what the policy was or even is now, RadioShack employees have not been properly reimbursed as required by state law.  *See* SAC ¶ 16 (alleging employees not in fact reimbursed).  Accordingly, the Court shall grant Mr. Stuart's motion for leave to amend but shall strike ¶ 2 of the SAC and, further, shall require Mr. Stuart to file a third amended complaint ("TAC") in order to amend the flawed allegation about what the written policy of RadioShack was and/or is now -- *i.e.*, to provide an allegation that more accurately conforms to the evidence.

B.     Motion for Class Certification

Federal Rule of Civil Procedure 23 governs class actions.  Under this rule, a class action may be maintained only if (1) each of the requirements of Rule 23(a) is satisfied and (2) one of the requirements of Rule 23(b) is satisfied.

1.     Rule 23(a)

Rule 23(a) provides as follows:

United States District Court
For the Northern District of California

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)      the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

            a.      <u>Numerosity</u>

Under Rule 23(a), the first requirement for maintaining a class action is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[I]n determining whether a class is so 'numerous' that joinder is impracticable, the most important factor is the absolute size of the proposed class. . . . [A] class defined so as to include an extremely large number of class members may, by itself, establish that joining all class members would be impracticable." 5-23 Moore's Fed. Prac. -- Civ. § 23.22[1][b]; *see also Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) (noting that, although impracticability is not measured strictly by number, "numbers are important" and "courts have found that numerosity is satisfied when class size exceeds 40 members").

In the instant case, RadioShack has agreed not to contest numerosity. That agreement, however, is not enough to establish the numerosity requirement. There must be some evidence supporting such. *See James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001) (stating that, "[t]o satisfy the numerosity prong, a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members") (internal quotation marks omitted); *see also Davis v. Astrue*, 250 F.R.D. 476, 488 (N.D. Cal. 2008) (Patel, J.) (denying motion to certify but giving plaintiff leave to re-file motion if able to provide admissible evidence to satisfy the numerosity requirement).

1    For the bulk of the class period, the policy that RadioShack had in place with respect to

2    reimbursement for the use of a personal car was as follows.

3                                    **Personal Car**

4            *An employee who uses his or her own car on business will be
        reimbursed for mileage (i.e., to and from airport, factories,*

5        *warehouses, etc.).*

6            *Mileage for incidental business use of a car within the city or
        suburbs where the store/office/headquarters is located (trips to the*

7        *post office, bank, etc.) will not be reimbursed.*

8            Mileage is only reimbursed if it exceeds the normal daily
        commute.

9
        **Example 1:** Round-trip to airport after arriving at normal work

10       place: If round-trip from airport to work is 25 miles, you will be
        reimbursed for 25 miles.

11
        **Example 2:** Round-trip to airport from home: If round-trip to

12       work is 25 miles, and your round-trip to airport is 35 miles, you will
        only be reimbursed for 10 miles.  In this example, no reimbursement

13       will be given if the round-trip to the airport is 25 miles or less.

14           Employees may not claim mileage in excess of 750 miles per
        month without approval from their Divisional Vice President.

15
            Mileage reimbursement must not be paid from petty cash.

16

17   Brooks Decl., Ex. 3 (policy) (emphasis added); *see also* Schultz Decl. ¶ 5 (referring to "team

18   member" instead of employee but otherwise citing same key language above).  As noted above, in

19   January 2007, the new written policy eliminated the restriction on reimbursements for "incidental"

20   trips.  However, there is evidence that the new policy was not widely publicized to RadioShack

21   employees.  *See* Schultz Depo. at 175-78.

22           The evidence of record reflects that, at least under the old policy, there were more than 50

23   inter-company stock transfers that were made in California for which an employee was not

24   reimbursed.  *See* Schultz Depo. at 26-28.  There is also evidence that, from June 7, 2003, and on,

25   hundreds of employees made ICSTs.  See Schultz Depo. at 207.  While there is no evidence about

26   any specific number of employees not reimbursed under the new policy, the SAC alleges that

27   employees have not been reimbursed from 2003 to the present.  *See* SAC ¶ 16.  Evidence that the

28   new policy has not been widely publicized to employees suggests there are significant numbers of

1  employees who have not been reimbursed even under the new policy.  Thus, in toto, the Court finds

2  there are sufficient numbers of employees to satisfy the numerosity requirement.

3                          b.      Commonality and Typicality

4         For a plaintiff to meet the commonality requirement, there must be "questions of law or fact

5  common to the class."  Fed. R. Civ. P. 23(a)(2).  "All questions of fact and law need not be common

6  to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is

7  sufficient, as is a common core of salient facts coupled with disparate legal remedies within the

8  class."  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2007) (internal quotation marks

9  omitted).  Ultimately, "[t]he commonality test is qualitative rather than quantitative -- one significant

10  issue common to the class may be sufficient to warrant certification."  *Id.*

11        As for the typicality requirement, a plaintiff must establish that "the claims or defenses of the

12  representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).

13  "This 'typicality' requirement attempts to ensure that the representative parties' (named plaintiffs')

14  interests are substantially aligned with those of absent class members."  5-23 Moore's Fed. Prac. --

15  Civ. § 23.24[1].  The Ninth Circuit has held that "representative claims are typical if they are

16  reasonably coextensive with those of absent class members; they need not be substantially identical.

17  Some degree of individuality is to be expected in all cases, but that specificity does not necessarily

18  defeat typicality."  *Dukes*, 509 F.3d at 1184 (internal quotation marks omitted).

19        As RadioShack points out,

20            [t]he commonality and typicality requirements of Rule 23(a) tend to
              merge.  Both serve as guideposts for determining whether under the
21            particular circumstances maintenance of a class action is economical
              and whether the named plaintiff's claim and the class claims are so
22            interrelated that the interests of the class members will be fairly and
              adequately protected in their absence.

23

24  *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

25        In the case at bar, Radioshack contends that Mr. Stuart cannot meet the commonality and

26  typicality requirements because, even though it has a uniform policy on reimbursement for business

27  trips, *see Parish v. Sheriff of Cook County*, No. 07 4369, 2008 U.S. Dist. LEXIS 87140, at *8-9

28  (N.D. Ill. Oct. 24, 2008) (finding commonality requirement satisfied because "[p]laintiffs' focus, at

9

United States District Court

For the Northern District of California

1    least for liability purposes, is on the defendants' alleged policy of allowing unqualified personnel to

2    usurp decisions made by medical doctors . . . , not on the particulars of individualized decisions"),

3    (1) Mr. Stuart will be subject to a unique defense and (2) Mr. Stuart has demonstrated a lack of

4    knowledge and/or misunderstanding about RadioShack's reimbursement policy.

5                                        i.        Unique Defenses

6            The Ninth Circuit has held that "a named plaintiff's motion for class certification should not

7    be granted if 'there is a danger that absent class members will suffer if their representative is

8    preoccupied with defenses unique to it.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

9    1992); *see also Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (indicating the

10   same).  Moore's treatise states that, "[t]o preclude class certification, the defendant need not

11   establish that the class representative's claim ultimately would be defeated by the unique defense.

12   Rather, class treatment generally will be denied if a unique defense is even arguably present."

13   Moore's § 23.25[2][b][iv].

14           In its opposition brief, RadioShack argued that Mr. Stuart will be preoccupied by the

15   following unique defenses: (1) that his claims for reimbursement are barred because he waived such

16   claims, (2) that he is estopped from raising the claims, or (3) that he unreasonably delayed in raising

17   the claims.  *See* Opp'n at 9.  At the hearing, however, it became clear that RadioShack's argument

18   was not so much waiver, estoppel, or laches but rather something akin to exhaustion.[1]  That is,

19   _____

20          [1] As a matter of law, the waiver defense is not applicable to Mr. Stuart's § 2802 claim, *see* Cal.
     Lab. Code § 2804 (providing that "[a]ny contract or agreement, express or implied, made by any

21   employee to waive the benefits of this article or any part thereof, is null and void, and this article shall
     not deprive any employee or his personal representative of any right or remedy to which he is entitled

22   under the laws of this State"); *see also* Cal. Civ. Code § 3513 (stating that "[a]ny one may waive the
     advantage of a law intended solely for his benefit [b]ut a law established for a public reason cannot be

23   contravened by a private agreement"); *Covino v. Governing Board*, 76 Cal. App. 3d 314, 322-23 (1977)
     (stating that "a law established for a public reason cannot be waived or circumvented by a private act";

24   thus, rejecting plaintiff-appellant's contention that § 3513 was not applicable to the waiver that he had
     made (thus rendering his waiver valid) because his waiver "was made in open court and not effected by

25   way of an agreement as provided by the code"; "the validity of a waiver of rights which were enacted
     for a public reason should not depend on the happenstance whether the waiver was incorporated in an

26   agreement or pronounced in the course of a judicial proceeding").

27          Similarly, the waiver defense is likely inapplicable to Mr. Stuart's claim for violation of
     California Business & Professions Code § 17200.  *See* Cal. Civ. Code § 3513.  In addition, Mr. Stuart's

28   contention that § 17200 claims are not subject to equitable defenses such as estoppel and laches seems
     meritorious.  In *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163 (2000), the California

**United States District Court**
For the Northern District of California

1  RadioShack's contention was that, although it had an obligation to reimburse pursuant to California

2  Labor Code § 2802, that obligation was not triggered unless and until an employee actually made a

3  claim for reimbursement, and here Mr. Stuart failed to make any claim for reimbursement for a trip

4  of fewer than 25 miles.

5        As a preliminary matter, the Court notes that such a defense -- which the Court shall

6  hereinafter refer to as the "exhaustion" defense for purposes of convenience -- may well be a defense

7  common to many class members and therefore not unique to Mr. Stuart.  This has been suggested by

8  RadioShack itself.  *See* Schultz Depo. at 27, 157, 169, 207 (RadioShack's 30(b)(6) witness testifying

9  that he had not seen any paperwork related to claims for reimbursement "if someone did submit [a

10  reimbursement claim]"; that he did no know if anyone submitted claims; and that he did not know

11  anyone that did get reimbursed).  This counsels in favor of finding commonality and/or typicality.

12  *See, e.g.*, *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 241 F.R.D. 435, 445-46

13  (S.D.N.Y. 2007) (rejecting defendants' contention that named plaintiff had "claims [that] are not

14  typical because he must address [a statute of limitations] defense"; stating that "the fact that [named

15  plaintiff] must address the statute of limitations question makes it more likely, not less, that the

16  interests of the class members will be fairly and adequately protected because many absent members

17  are likely to be subject to the very same defense"); *Feldman v. Motorola, Inc.*, No. 90 C 5887, 1994

18  U.S. Dist. LEXIS 14809, at *4 (N.D. Ill. Oct. 18, 1994) (noting that a certain "defense should be

19  common to many class members and susceptible of resolution through the use of subclasses.").

20        Even if the defense were applicable to only Mr. Stuart, or even if a limited number of class

21  members were subject to the defense, the Court is not persuaded that the defense would become

22  "central to the litigation [and] create a significant danger that [Mr. Stuart would] become distracted."

23  Moore's § 23.24[5]; *see also Hanon*, 976 F.2d at 508 (focusing on whether "'there is a danger that

24  _____

25  Supreme Court expressly stated that "equitable defenses may not be asserted to wholly defeat a UCL

26  claim since such claims arise out of unlawful conduct." *Id.* at 179.  The court made a point of noting
   that "equitable considerations may . . . guide the court's discretion in fashioning the equitable remedies

27  authorized by section 17203," *id.*, but, as noted in a subsequent state appellate court opinion, that
   statement did not mean that "equitable defenses may . . . be used to defeat the cause of action under the

28  UCL." *Ticconi v. Blue Shield of California Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 544 (2008).

United States District Court

For the Northern District of California

1   absent class members will suffer if their representative is preoccupied with defenses unique to it'"");

2   *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164-65 (7th Cir. 1974) (indicating that a party should not

3   be allowed to represent a class "if a major focus of the litigation will be on an arguable defense

4   unique to the named plaintiff"; noting that "[a] representative plaintiff should not be permitted to

5   impose such a disadvantage on the class"); *Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D. Ill.

6   1986) (noting that "it is only when a unique defense will consume the merits of a case that a class

7   should not be certified" and that "[n]o showing has been made that there is a defense against the

8   named plaintiffs that is both 'inapplicable to the remainder of the class and threatens to become a

9   primary issue in the litigation'"). As discussed below, *see* Part II.B.2.c, *infra*, the viability of

10  RadioShack's exhaustion defense will, in all likelihood, turn largely on common and relatively

11  simple facts. It is not likely to consume a great deal of litigation attention and become a major focus

12  of the litigation. *See Koos*, 496 F.2d at 1164-65.

13                    ii.    <u>Lack of Knowledge or Misunderstanding</u>

14          RadioShack contends that, regardless of the above, there is a commonality/typicality problem

15  because Mr. Stuart either lacked knowledge or had a misunderstanding about the policy at issue

16  regarding reimbursement. Because RadioShack also relies on Mr. Stuart's lack of knowledge or

17  understanding in support of its argument that there is an adequacy problem, and the lack of

18  knowledge or understanding seems more closely tied to the adequacy requirement, the issue of Mr.

19  Stuart's lack of knowledge or understanding is addressed below. *See General Tel.*, 457 U.S. at 158

20  n.13 (stating that the commonality and typicality requirement "also tend to merge with the

21  adequacy-of-representation requirement" as the former "serve as guideposts for determining whether

22  under the particular circumstances maintenance of a class action is economical and whether the

23  named plaintiff's claim and the class claims are so interrelated that the interests of the class

24  members will be fairly and adequately protected in their absence"; noting, however, that the

25  adequacy "requirement also raises concerns about the competency of class counsel and conflicts of

26  interest").

27

28

United States District Court

For the Northern District of California

c.    <u>Adequacy</u>

Under Rule 23(a), a class action may be brought only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). RadioShack does not argue that Mr. Stuart has a conflict of interest with the proposed class or that his counsel is not qualified and competent. *Cf. Dukes*, 509 F.3d at 1185; *see also Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) ("Adequate representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.") (internal quotation marks omitted).

Instead, RadioShack claims that Mr. Stuart has a lack of knowledge and understanding about the case based on his deposition testimony, which was given on November 15, 2008. "[T]o satisfy the adequacy-of-representation requirement, the class representative must possess at least a minimal degree of knowledge regarding the class action." Moore's § 23.25[1][c][ii]; *see also Epifano v. Boardroom Business Products, Inc.*, 130 F.R.D. 295, 302 (S.D.N.Y. 1990) ("While unfamiliarity with the suit does not by itself *require* denial of representative status, it is certainly a factor to be considered in determining the adequacy of the proposed representative") (emphasis added); *Koenig v. Benson*, 117 F.R.D. 330, 337 (E.D.N.Y. 1987) ("[T]he named plaintiffs require only a basic knowledge of the facts."). During his deposition, Mr. Stuart testified that, *inter alia*:

- From June 2003 to the present, he has never asked anyone at RadioShack for reimbursement, with one exception in which case he appears to have been reimbursed. *See* Stuart Depo. at 23.

- He has not asked for reimbursement because in the late 1990's (*i.e.*, 1996 to 1999), he read in the store operating manual that it was RadioShack's policy not to reimburse for trips fewer than 25 miles.[2] *See* Stuart Depo. at 39-40, 43. (At first, Mr. Stuart thought the cut-off was

_____

[2] Prior to this testimony, Mr. Stuart testified that he did not ask for reimbursement because he was told by a store manager that it was not worth it -- *i.e.*, all the paperwork or something along those lines. *See* Stuart Depo. at 35. "The feeling that I had is, if I could locate the proper paperwork, it would not be submitted because it wasn't worth it. [¶] Quote, you know, don't waste your time on that stuff. Let's do that instead: Wash the windows, clean this, put away the merchandise, whatever the case may be." Stuart Depo. at 35 (but admitting that he was never specifically told not to submit a claim for reimbursement). However, Mr. Stuart's testimony seemed to shift, stating that "the reason that I didn't really pursue the matter" was because of the policy. *See* Stuart Depo. at 39 ("So in asking, after [finding

13

United States District Court

For the Northern District of California

1 | 50 miles; he subsequently corrected himself and said that the cut-off was 25 miles.  *See*
2 | Stuart Depo. at 39-40, 43.)
3 | • He has not read the store operating manual in three or four years, and the last time that he
4 | read the policy was when he read the manual in the late 1990's (*i.e.*, 1996 to 1999).  *See*
5 | Stuart Depo. at 41-42, 44.  He has not looked at the policy since 2000 when he stopped
6 | managing stores.  *See* Stuart Depo. at 4.
7 | • He assumes that the policy today is the same as it was back in the late 1990's.  *See* Stuart
8 | Depo. at 42.  Prior to filing the lawsuit, he did not look at the store operating manual to see
9 | what the current policy was on reimbursement.  *See* Stuart Depo. at 54.
10 | • He has never seen the policy that states, *inter alia*, "Mileage for incidental business use of a
11 | car within the city or a suburb where the store, office, headquarter is located and trips to the
12 | post office, bank, etc. will not be reimbursed."  *See* Stuart Depo. at 126-27, 130.
13 | • He does not care about the reimbursement policy anymore because "[i]t doesn't affect me.
14 | At least, I don't care to the extent that I did."  Stuart Depo. at 44.
15 | • On one occasion, he had to drive to San Francisco from the East Bay to pick up in item
16 | which was not in stock in his store for a sale to a customer.  He did not ask reimbursement
17 | for that trip (approximately 56 miles roundtrip and therefore outside of what he understood
18 | the policy to be (*i.e.*, a 25-mile cut-off)) because it "[w]asn't worth it."  Stuart Depo. at 96.
19 | "[I]t was not important to me.  The importance there is, number one, to satisfy a customer;
20 | number two, I got a very nice commission on that one.  The extraneous paperwork was the
21 | furthest thing from my mind.  It didn't enter in my mind."  Stuart Depo. at 97.
22 | • He is filing the lawsuit because of the "cumulative effect of [doing trips fewer than 25 miles
23 | for which you are not reimbursed] so many times over so many years and realizing, hey, wait
24 | a minute.  What's going on here?  [¶] And if I'm doing this, I'll bet there's other people that
25 | are doing the same thing and probably running farther and more often than I, and

27 | _____
28 | out about the policy], it was more tongue and cheek, knowing what, you know, it's futile.").

14

United States District Court

For the Northern District of California

1    somebody's really being taken advantage of here on a very broad scale."  Stuart Depo. at 98-

2    99.

3         As reflected by the above, Mr. Stuart has not seen the old policy since 2000, and it appears

4    unlikely that he has seen the new policy (whether that is because the last time he read the

5    reimbursement policy was back in the late 1990's or because the new policy may not have been

6    publicized to current employees).  Furthermore, as indicated by the above, Mr. Stuart's

7    understanding is that there is no reimbursement for business trips of fewer than 25 miles.  However,

8    the evidence of record indicates that, since at least January 2000, "RadioShack has never had a set

9    mileage limitation on requests for reimbursement of expenses incurred by employees through the

10   use of their personal automobiles in connection with their job duties."  Schultz Decl. ¶ 6.  Thus,

11   RadioShack appears to have a strong argument that Mr. Stuart is not closely familiar with the written

12   policies at issue.[3]  The question is whether Mr. Stuart's lack of familiarity renders him inadequate as

13   a class representative.

14        Although Mr. Stuart's lack of familiarity with the specific policies at issue is of concern, the

15   Court still deems him an adequate representative.  Under the case law, the key seems to be whether

16   the proposed class representative demonstrates such a lack of knowledge or understanding about the

17   case -- what has been called by some courts "alarming unfamiliarity," *Koenig v. Benson*, 117 F.R.D.

18   330, 337 (E.D.N.Y. 1987) -- that there appears to be simply blind reliance on class counsel.  *See,*

19   *e.g.*, *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) (stating that "a potential

20   class is entitled to 'more than blind reliance upon even competent counsel by interested and

21   inexperienced representatives'"); *Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 249 (C.D. Cal.

22   2006) (noting that, in another case, it was proposed representative's credibility and blind reliance on

23   her attorneys that made her inadequate); *Yamner v. Boich*, No. C-92-20597 RPA, 1994 U.S. Dist.

24   LEXIS 20849, at *17 (N.D. Cal. Sept. 15, 1994) (stating that "[a] class representative cannot blindly

25   rely on counsel to the extent that he lacks familiarity with the critical aspects of the case"); *In re*

26   ─────────────────

27        [3] On the other hand, the old policy does condition reimbursement upon some measure of distance (travel within the city or suburbs is not reimbursable, but travel outside the city is).  *See* Schultz Depo.

28   at 168-59.  Furthermore, the examples provided in the old policy quoted above do make reference to 25 miles.  Accordingly, Mr. Stuart's understanding of the old policy may not be entirely off base.

United States District Court

For the Northern District of California

1   *Storage Tech. Corp. Secs. Litig.*, No. 83-M-1981, 113 F.R.D. 113, 118-19 (D. Colo. 1986)

2   (commenting that proposed representative was "not very knowledgeable as to the status of his

3   lawsuit" and did "not appear to be exercise independent judgment in this case" even though "the

4   class is entitled to more than blind reliance on counsel").  In the instant case, Mr. Stuart has

5   demonstrated a basic understanding of the case -- that he and his fellow workers were not

6   reimbursed for ICSTs when the law so requires.  The limits of his familiarity or understanding of the

7   precise terms of the policy does not suggest blinding reliance on counsel.[4]

8          Moreover, courts have found that a plaintiff may adequately represent the class if he or she

9   has a "basic understanding about the nature of the suit," *Byes v. Telechek Recovery Services, Inc.*,

10  173 F.R.D. 421, 427-28 (E.D. La. 1997), or a generalized understanding of the allegations in the

11  case.  *See Gibbs Properties Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 436 (M.D. Fla. 2000); *see also*

12  *Dujanovic v. Mortgage Am., Inc.*, 185 F.R.D. 660, 668 (N.D. Ala. 1999) (finding proposed

13  representative adequate because, even though his belief that the claims arose from the broker's act of

14  increasing his interest rate was not technically correct, his "assessment of the alleged wrongful

15  conduct is essentially correct" because "[t]he reason Congress enacted RESPA to prohibit referral

16  fees, fee splitting, kickbacks, and duplicative fees was because Congress recognized that such

17  charges effectively increased the interest rates that borrowers would be required to pay on residential

18  loans"; adding that "lack of specific knowledge about the claims generally is not grounds for

19  denying certification where the representative's counsel is capable of handling the litigation");

20  *Rivera v. Fair Chevrolet Geo P'ship*, 165 F.R.D. 361, 364-65 (D. Conn. 1996) (finding proposed

21  representative adequate because, even though "his understanding of the case is sketchy," he, *inter*

22

23          [4] The Court rejects RadioShack's attempt to characterize this case as comparable to *Bodner v.*
24  *Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 U.S. Dist. LEXIS 30408 (N.D. Cal. Apr. 25, 2007).  *See*
    Opp'n at 11 (claiming that "[t]he facts of *Bodner* are strikingly similar").  Most notably, in *Bodner*,
25  Judge Patel made a point of noting that there was clear evidence that "plaintiff's counsel constructed
    [the] lawsuit before it had a plaintiff" (*i.e.*, the plaintiff became the plaintiff by responding to an
26  advertisement by counsel) and that "this [was] not the first instance in which plaintiff's counsel has
    attempted to bring a class action against this defendant," having filed a similar suit in the Southern
27  District of California where the court specifically questioned counsel about its relationship with the
    plaintiff in that case (*i.e.*, the lawsuit was "nothing more than [counsel] bring its show to the Northern
28  District and continuing its practice of selecting stand-in plaintiffs, even ones who are inappropriate").
    *Id.* at *3, 6-7.  Such facts or similar facts are not present in the instant case.

1    *alia*, "understands that the claims involve Truth-in-Lending violations, and that, in general, his claim

2    is that he was overcharged for gap insurance . . . and the lien fee"); *Storage Tech.*, 113 F.R.D. at 119

3    (noting that, in securities case, proposed representative was adequate because, "[a]lthough he did not

4    know the specific misrepresentations alleged in the complaint, he underst[ood] the underlying legal

5    basis of this action"; adding that he was "familiar with the STC products which were the subject of

6    the alleged misrepresentations").  The instant case is sufficiently comparable to these cases -- *i.e.*,

7    Mr. Stuart may not be familiar with the specifics of the policies at issue, but there is no dispute that

8    he understands the gist of this suit -- that he and others were not reimbursed for expenses related to

9    ICSTs.  Indeed, the probative value of the specific terms of the written policies is not the central

10   issue in this case. Rather, the ultimate issue is whether employees were in fact reimbursed for ICSTs

11   and if not, whether that failure violated California law.  In short, the focus on the case is the actual

12   practice, not the formal written policies, of RadioShack.

13            To the extent RadioShack argues that Mr. Stuart should still be deemed inadequate because

14   he has "never cared about reimbursement," Opp'n at 10, that argument does not have much merit.

15   Admittedly, Mr. Stuart did testify in his deposition that he not care about the reimbursement policy

16   anymore because "[i]t doesn't affect me.  At least, I don't care to the extent that I did."  Stuart Depo.

17   at 44.  Nevertheless, he also explained in his deposition why he had filed suit against RadioShack --

18   *i.e.*, because of the

19              cumulative effect of [doing trips fewer than 25 miles for which you are
             not reimbursed] so many times over so many years and realizing, hey,
20           wait a minute.  What's going on here?

21              And if I'm doing this, I'll bet there's other people that are
             doing the same thing and probably running farther and more often than
22           I, and somebody's really being taken advantage of here on a very
             broad scale.

23

24   Stuart Depo. at 98-99.  This comment, along with the fact that he has participated in the lawsuit --

25   *e.g.*, by having his deposition taken -- is sufficient to satisfy the Court that Mr. Stuart cares enough

26   about the case that he will participate adequately in the lawsuit and not let the case languish (*i.e.*,

27   vigorous prosecution).

28

United States District Court

For the Northern District of California

2.      Rule 23(b)

As indicated above, class certification requires not only that each of the requirements of Rule 23(a) be met but also one of the requirements of Rule 23(b).

a.      Rule 23(b)(1)

A class action may be maintained under Rule 23(b)(1) if

> prosecuting separate actions by or against individual class members would create a risk of :
>
> (A)      inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B)      adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

The Court shall not entertain any contention that certification should be granted pursuant to Rule 23(b)(1) because, although Mr. Stuart mentioned Rule 23(b)(1) in passing in his opening brief, nowhere did he provide any substantive argument. *See* Mot. at 8, 13-14 (although mentioning Rule 23(b)(1), discussing only Rule 23(b)(2) and 23(b)(3) in any detail).  The Court therefore deems the argument waived.  Even in his reply brief, where Mr. Stuart makes a Rule 23(b)(1) argument for the first time, *see* Reply at 12 (asserting that"[g]iven the number of employees involved and their locations throughout this State . . . , surely separate suits would risk inconsistent adjudications"), the argument is conclusory and lacks any real substance.

b.      Rule 23(b)(2)

Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "A class action under Rule 23(b)(2) is appropriate only if a defendant's conduct or failure to act is 'generally applicable' to an entire class of persons."  Moore's § 23.43[2][b].

**United States District Court**
For the Northern District of California

1

2

3

4

> Although class certification under Rule 23(b)(2) is generally improper if the primary relief sought by the action is money damages . . . , class actions may be certified under Rule 23(b)(2) even when some money damages are also sought.  Seeking money damages that are merely incidental to plaintiffs' request for injunctive or corresponding declaratory relief will not defeat certification under Rule 23(b)(2).

5   Moore's § 23.43[3][c]; *see also* Fed. R. Civ. P. 23(b)(2), 1966 advisory committee notes ("The

6   subdivision does not extend to cases in which the appropriate final relief relates exclusively or

7   predominantly to money damages.").

8          The Ninth Circuit has stated that there is no "bright-line rule distinguishing between

9   incidental and non-incidental damages for the purposes of determining predominance." *Molski v.*

10  *Gleich*, 318 F.3d 937, 950 (9th Cir. 2003).  "Rather than adopting a particular bright-line rule, we

11  have examined the specific facts and circumstances of each case.  In order to determine

12  predominance, we have focused on the language of Rule 23(b)(2) and the intent of the plaintiffs in

13  bringing the suit." *Id.*

14

15

16

17

> At a minimum, however, we must satisfy ourselves that: "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits."

18  *Dukes*, 509 F.3d at 1186 (quoting *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 164 (2d

19  Cir. 2001)).  The Ninth Circuit has also stated that "the predominance test turns on the primary goal

20  of the litigation -- not the theoretical or possible size of the damage award." *Id.*

21         In the instant case, the Court cannot say that injunctive or declaratory relief is the

22  predominant relief sought by Mr. Stuart.  The first and third causes of action in the FAC and SAC

23  seek damages, not injunctive relief, and the bulk of the suit focuses on the old policy, which has now

24  been replaced by the new policy.  *See Blackwell v. Skywest Airlines*, 245 F.R.D. 453, 466 (S.D. Cal.

25  2007) (refusing to certify under Rule 23(b)(2) because "the class seeks only monetary damages" and

26  "[a]n injunction is not necessary because SkyWest changed its policy 'sometime in Fall 2006'").

27  Injunctive relief may be problematic if the practice under the old policy differs from the current

28  practice.  *Cf. Smith v. Univ. of Wash. Law School*, 233 F.3d 1188 (9th Cir. 2000) (decertifying Rule

United States District Court

For the Northern District of California

1    23(b)(2) class because injunction moot). While injunctive relief is sought in the second cause of

2    action, Mr. Stuart's unfamiliarity with the terms of the polices indicates that the predominant relief

3    sought is monetary. So is the fact that Mr. Stuart has not proffered any evidence as to the actual

4    practice after the new written policy was established in 2007, facts likely necessary in order to

5    establish standing and entitlement to injunctive relief. Accordingly, because Mr. Stuart's focus has

6    been on damages, not an injunction, certification pursuant to Rule 23(b)(2) is not appropriate.

7    Mr. Stuart contends still that his request for monetary relief does not take him outside the

8    confines of Rule 23(b)(2) because the request for reimbursement is a request for equitable relief.

9    *See* Mot. at 13. While that may be the case, the Ninth Circuit has explained that the fact that a

10   monetary award is an equitable remedy does not mean that it is not monetary relief for purposes of

11   Rule 23(b)(2). *See Dukes*, 509 F.3d at 1187 ("While the district court was correct in labeling back

12   pay as an equitable remedy available under Title VII, any suggestion that back pay's status as an

13   equitable remedy somehow prevents it from also being a form of monetary relief for purposes of

14   Rule 23(b)(2) is incorrect. Back pay is certainly not of an 'injunctive nature or of a corresponding

15   declaratory nature,' and thus Plaintiffs' request for back pay weighs against certification under Rule

16   23(b)(2), its equitable nature notwithstanding.").

17                              c.       Rule 23(b)(3)

18   Under Rule 23(b)(3), a class action may be maintained if

19          the court finds that the questions of law or fact common to class
            members predominate over any questions affecting only individual
20          members, and that a class action is superior to other available methods
            for fairly and efficiently adjudicating the controversy. The matters
21          pertinent to these findings includes:

22          (A)      the class members' interests in individually controlling the
                     prosecution or defense of separate actions;
23
24          (B)      the extent and nature of any litigation concerning the
                     controversy already begun by or against class members;

25          (C)      the desirability or undesirability of concentrating the litigation
                     of the claims in the particular forum; and
26
            (D)      the likely difficulties in managing a class action.
27

28   Fed. R. Civ. P. 23(b)(3).

**United States District Court**
For the Northern District of California

1    There is little dispute that, in the instant case, so long as common questions predominate, a

2    class action will be a superior method of adjudication and that the four criteria listed in (A)-(D)

3    would counsel in favor of certification.  The key issue is thus predominance.  "'The Rule 23(b)(3)

4    predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant

5    adjudication by representation.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

6    "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common

7    issues will help achieve judicial economy."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234

8    (9th Cir. 1996).  "When common questions present a significant aspect of the case and they can be

9    resolved for all members of the class in a single adjudication, there is clear justification for handling

10   the dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.

11   The Court finds that common questions do predominate over any individualized inquiry.

12   None of RadioShack's arguments to the contrary is availing.

13   For example, RadioShack contends that the old policy -- *i.e.*, the policy in place during the

14   bulk of the class period which provided for reimbursement, except for "[m]ileage for incidental

15   business use of a car within the city or suburbs where the store/office/headquarters is located (trips

16   to the post office, bank, etc.)," Brooks Decl., Ex. 3 (policy); *see also* Schultz Decl. ¶ 5 (quoting

17   policy) -- was not applied uniformly because it gave store or district managers discretion to

18   determine what was incidental.  This argument is not convincing for two reasons.

19   First, the old policy allowed for only limited discretion in decisionmaking.  *Cf. Alba v. Papa*

20   *John's USA*, No. CV 05-7487 GAF (CTx), 2007 U.S. Dist. LEXIS 28079, at *33-36 (C.D. Cal. Feb.

21   7, 2007) (examining whether standardized policies and practices used by defendants prevented store

22   managers from exercising discretion and/or independent judgment).  Significantly, the policy on its

23   face and the allegations of the SAC suggest that short ICSTs were generally not considered

24   reimbursable.  There is evidence from RadioShack itself that corroborates this.  *See* Schultz Depo. at

25   150, 168 (indicating that, if the old policy were followed, employees would not be reimbursed for

26   ICSTs unless they were of a great distance).  While there is also some conflicting evidence, *see*

27   Schultz Decl. ¶ 10 (stating that, "[g]enerally, prior to 2007, most store managers and district

28   managers would approve requests for reimbursement made in connection with ICSTs" -- implicitly

United States District Court

For the Northern District of California

1   because "[t]rips to perform store-to-store transfers are not listed among the examples of 'incidental'

2   use that are excluded from reimbursement in the Travel Policy"), that is not sufficient to defeat

3   certification.

4          Second, the fact that managers may have had some discretion to determine what ICSTs were

5   incidental and which were not (and thus reimbursable) does not change the fact that the central issue

6   in this case is whether there was a failure to reimburse, which would constitute a violation of the

7   California Labor Code.  That is, the issue is not *why* employees were not reimbursed but *whether*

8   they were.  That legal issue -- the legality of failing to reimburse employees for ICSTs --

9   predominates this case.  Determining who in fact was reimbursed and who was not will be a

10  straightforward factual question that informs the remedy, and will likely be resolved by documents.

11  Those determinations will not predominate this case.

12         RadioShack cites several cases in support of its contention that class certification is

13  inappropriate because decisions were made by many different store or district managers, but those

14  cases are all distinguishable.  They involve claims of discrimination.  *See Stastny v. Southern Bell*

15  *Tel. & Telegraph Co.*, 628 F.2d 267 (4th Cir. 1980); *Boykin v. Viacom, Inc.*, No. 96 CIV. 8559

16  (DLC), 1997 U.S. Dist. LEXIS 17872 (S.D.N.Y. Nov. 12, 1997); *Zapata v. IBP, Inc.*, 167 F.R.D.

17  147 (D. Kan. 1996).  In these cases, there is typically no express company policy advocating

18  discrimination (*i.e.*, the allegedly illegal practice).  *Cf. Dukes*, 509 F.3d at 1177-83 (examining

19  commonality in a discrimination case even where there is some local managerial discretion).  Absent

20  a general policy of discrimination or policies which encourage discrimination (*e.g.*, *Dukes*), proof of

21  liability in such cases may well be decided on a case by case basis, turning on a myriad of facts

22  which inform whether there was *e.g.*, discriminatory intent behind each adverse action.  At the very

23  least, the issue of predominance involves a closer, more complex analysis.  In contrast, in the instant

24  case, the only fact that informs liability under the California Labor Code (putting aside the

25  exhaustion defense discussed below) is the objective fact whether the employee was reimbursed for

26  the ICST.  Unlike discrimination cases, where motivation (at least in disparate treatment cases) is

27  pivotal, here, the reason why reimbursement was not made is not relevant.  In contrast to the

28  complexity in establishing discrimination, the simplicity of operative facts in this case demonstrates

1  that common questions predominate.  *Cf. Parish*, 2008 U.S. Dist. LEXIS 87140, at *14-15 (in case

2  in which plaintiff-prisoners challenged jail policy which allowed jail personnel lacking medical

3  degrees to effectively overrule decisions made by medical doctors regarding patients' medical needs,

4  rejecting defendants' contention that there were too many individualized inquiries such as the

5  relative urgency of each individual's need for medication and whether jail personnel were

6  subjectively aware of each individual's serious medical need; finding predominance because

7  "[p]laintiffs' primary contention is that the creation and execution of these polic[ies] amounts to

8  deliberate indifference" -- "the individual stories of particular detainees may be illustrative, but they

9  are unlikely to be determinative of the issue of liability").

10     RadioShack argues still that there will be significant individualized inquiries because of its

11  exhaustion defense -- *i.e.*, its defense that it had no obligation to reimburse unless and until an

12  employee made a claim for reimbursement.  There are several problems with this argument.  First, as

13  noted above, this defense is not likely to be unique to Mr. Stuart.  Rather, it appears likely that many

14  employees did not submit formal reimbursement requests.  Thus, this defense is likely to raise

15  common questions and thus will not vitiate the predominance requirement of Rule 23(b)(3).  Second,

16  even if there is a fair variation within the class between those who did and those who did not

17  exhaust, that determination is likely to be straightforward based on documentation.  The simplicity

18  of the determination would not vitiate predominance of common issues.  Finally, there is a question

19  of whether the exhaustion defense is even viable.  Without reaching a legal conclusion, the Court

20  finds that this determination will likely involve more common than individual facts.

21     In this regard, Mr. Stuart argues that the exhaustion defense must be rejected out of hand.

22  There is a fair argument that the prohibition of waiver of rights under § 2802, *see* Cal. Lab. Code §

23  2804, bans the exhaustion defense but the Court, without ruling, is doubtful.  There is no case law

24  interpreting § 2804 to relieve employees of making any effort to obtain reimbursement.  Mr. Stuart

25  asserts that it is the employer's sole obligation to ensure that reimbursement is made, regardless of

26  whether an employee submits a request for reimbursement, but the authority he cites does not stand

27  for this proposition.  The language of California Labor Code § 2802 does state that the employer

28  *shall* reimburse for all necessary business expenses but it says nothing about *when* payment must be

**United States District Court**
For the Northern District of California

1    made.  *See* Cal. Lab. Code § 2802(a) (providing that "[a]n employer shall indemnify his or her

2    employee for all necessary expenditures or losses incurred by the employee in direct consequence of

3    the discharge of his or her duties, or of his or her obedience to the directions of the employer . . . .").

4    While "shall" means the employer has no discretion but to reimburse proper expenses at least when

5    requested and documented, it does not necessarily require reimbursement where there has been no

6    request.  *Cf. Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 570 (2007) (noting that

7    "[n]othing in the language of section 2802 restricts the methods that an employer may use to

8    calculate reimbursement").  To be sure, § 2802 is a codification of California's "strong public policy

9    that favors the indemnification (and defense) of employees by their employers for claims and

10   liabilities resulting from the employees' acts within the course and scope of their employment,"

11   *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 952 (2008) (internal quotation marks omitted),

12   but, again, this does not address *when* reimbursement must be made.

13          Moreover, from a practical standpoint, it makes sense that the employee provide some

14   request for and information about reimbursement.  As the California Supreme Court held in *Gattuso*,

15   when the language of a statute "is ambiguous, a court may consider the consequences of each

16   possible construction and will reasonably infer that the enacting body intended an interpretation

17   producing practical and workable results rather than one producing mischief or absurdity."  *Gattuso*,

18   42 Cal. 4th at 567.  The employee, rather than the employer, is in the best position to know when he

19   or she has incurred a business expense and how much of such expense was incurred.  *Cf. id.* at 568-

20   70 (discussing the various methods by which reimbursement for purposes of § 2802 may be

21   calculated; indicating that, with respect to two of the three methods discussed, *i.e.*, the actual

22   expense method and the mileage reimbursement method, the *employee* would need to submit

23   information to the employer in order to be reimbursed).  As a practical matter, an employer needs

24   information about the expense before it can reimburse the employee.

25          At the hearing, Mr. Stuart argued that, nevertheless, the employer should not be able to sit

26   back and wait for a claim for reimbursement.  According to Mr. Stuart, the employer had a duty to

27   actively ensure that its employees were making claims for reimbursement.  Mr. Stuart even

28   suggested that the employer should have a policy whereby its employees are subject to discipline

United States District Court

For the Northern District of California

1   (ultimately, termination) if claims for reimbursement are not submitted, for only then can the

2   employer ensure that its employees will in fact submit such claims.[5]  Mr. Stuart, however, has not

3   cited any authority to support this proposition.  Furthermore, practically speaking, such an approach

4   would produce "mischief or absurdity."  *Gattuso*, 42 Cal. 4th at 567.  Not only would this place an

5   excessive burden on the employer, but this would also impose a severe burden on the employee;

6   termination for a failure to submit reimbursement claims seems like disproportionate punishment.

7   Moreover, this could create a perverse incentive: an employee could be terminated for violating

8   company policy by failing to make a claim for reimbursement and then be entitled to bring a lawsuit

9   against his or her employer, including seeking penalties against the employer under the California

10  Labor Code Private Attorney Generals Act.  *See* Cal. Lab. Code § 2698 *et seq.*

11        On the other hand, the Court agrees with Mr. Stuart that an employer should not be able to

12  avoid its obligations under § 2802 simply by sitting back and waiting for a claim for reimbursement

13  at least where the employer has deterred employees form seeking reimbursement.  At the hearing,

14  RadioShack agreed that, if the employer made it futile for the employee to make a claim (*e.g.*,

15  because the employer actively discouraged employees from making reimbursement claims), then the

16  employee would have a § 2802 claim even if he or she had never formally made a claim.  But in

17  view of the strong policy in California in favor of reimbursement embodied in California Labor

18  Code §§ 2802 and 2804 (the latter statute prohibiting waiver of rights under § 2802), employer

19  responsibility is broader than simply avoiding futility and active discouragement.  While the Court

20  need not decide precisely the parameters of the employer's obligation under § 2802 to inform and

21  perhaps encourage employees to submit reimbursement claims (or whether an exhaustion defense

22  applies at all), the relevant question here is whether the exhaustion defense (if available) requires

23  such individualized determination such that common questions do not predominate.  The Court

24  concludes it does not.  The parameters of the employer's obligation, and thus conversely the

25  viability of the exhaustion defense, are likely to be judged by a reasonable person standard.  Most of

---

27        [5] The Court notes that the California Supreme Court is considering a somewhat similar matter --
*i.e.*, whether an employer simply has the duty to *provide* meal periods for its hourly employees or
whether an employer has the duty to *ensure* that its hourly employees take period periods.  *See Brinker*
28  *Rest. Corp. v. Superior Court*, 85 Cal. Rptr. 3d 688 (2008).

United States District Court

For the Northern District of California

1   the relevant facts (the terms of the reimbursement policy, its general interpretation by management,

2   whether it was publicized companywide, etc.) are common.  While there might be some

3   individualized inquiries as to whether actions of individual store or district managers might have

4   taken steps to fulfill the employer's obligation under the California Labor Code (*e.g.*, by actively

5   encouraging employees to submit reimbursement claims), the common questions are likely to

6   predominate.  Moreover, as noted above, even if the exhaustion defense were found to be viable, its

7   impact on class member's entitlement to relief will be a simple matter to determine.  That

8   determination will not undermine the overarching common questions on the core question of

9   liability -- did RadioShack violate § 2802 by not reimbursing employees for ICSTs?

10          Finally, the Court rejects RadioShack's contention that individualized inquiries will be

11  rampant because the actual expenses of each employee must be determined.  It is true that Mr. Stuart

12  has left open the need for computation of actual expenses: at the hearing, Mr. Stuart expressly stated

13  that he might not be content with the IRS mileage rate to calculate reimbursement.  *See Gattuso*, 42

14  Cal. 4th at 569-70 (discussing mileage reimbursement method and IRS mileage rate).  Even so, as a

15  general matter, courts are "comfortable with individualized inquires as to damages." *Kurihara*,

16  2007 U.S. Dist. LEXIS 64224, at *25-26 (adding that courts "are decidedly less willing to certify

17  classes where individualized inquiries are necessary to determine liability"); *see also Blackie v.*

18  *Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (rejecting defendants' argument that predominance

19  requirement was not satisfied because of individual questions of damages; stating that "[t]he amount

20  of damages is invariably an individual question and does not defeat class action treatment").  Should

21  it ultimately prove that individualized determination must be made as to damages or the defense of

22  exhaustion, those determinations may be bifurcated from liability and certification amended.  *See*

23  Fed. R. Civ. P. 23(c)(4) (providing that "an action may be brought or maintained as a class action

24  with respect to particular issues" such as liability).

## III.   CONCLUSION

26          For the foregoing reasons, Mr. Stuart's motion for leave to amend and motion for class

27  certification are both granted.  The Court certifies the following class: all persons employed by

28  RadioShack within the State of California, at any time from June 3, 2003, to the present, who drove

1   their personal vehicles to and from RadioShack Stores and who were not reimbursed for mileage.

2   Mr. Stuart shall immediately file a copy of the proposed SAC and then shall have twenty (20) days

3   from the date of this order to file a third amended complaint ("TAC") which amends the groundless

4   paragraph in the SAC (*i.e.*, ¶ 2).  No other changes shall be made in the TAC.

5          A status conference shall be held on February 11, 2009, when discovery motions herein are

6   heard.

7          This order disposes of Docket Nos. 37 and 51.

8

9          IT IS SO ORDERED.

10

11  Dated:  February 5, 2009

12                                                                      _____
                                                                         EDWARD M. CHEN
13                                                                       United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

27