1  SEYFARTH SHAW LLP
   Andrew M. Paley (SBN 149699)
2  apaley@seyfarth.com
   David D. Jacobson (SBN 143369)
3  djacobson@seyfarth.com
   2029 Century Park East, Suite 3300
4  Los Angeles, California 90067-3063
   Telephone: (310) 277-7200
5  Facsimile: (310) 201-5219

6  Attorneys for Defendant
   RADIOSHACK CORPORATION
7

8              UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

10

11 RICHARD STUART, individually, and      )  Case No. C07-04499 EMC
   on behalf of all others similarly situated )
12 and the California general public; and  )  [Assigned to Magistrate Judge
   DOES 1 through 1000, inclusive,         )  Edward M. Chen, Courtroom C]
13                                          )
                                            )  **DEFENDANT'S REPLY BRIEF**
14              Plaintiffs,                 )  **RE: REQUIREMENT TO**
                                            )  **REQUEST REIMBURSEMENT**
15         v.                               )  **AS AN ELEMENT OF LABOR**
                                            )  **CODE SECTION 2802 CLAIM;**
16                                          )  **DECLARATIONS OF DONNA**
   RADIOSHACK CORPORATION, a             )  **OCAMPO; MARK WOLFE,**
17 Delaware corporation; and DOES 1       )  **THOMAS SCHULTZ, CHRIS**
   through 100, inclusive,                 )  **NESBIT, GARY SLATE AND**
18                                          )  **DAVID D. JACOBSON IN**
                                            )  **SUPPORT THEREOF**
19              Defendants.                 )
                                            )  Hearing Date:   April 22, 2009
20                                          )  Time:           10:30 a.m.
                                            )  Courtroom:      C
21

22

23

24

25

26

27

28

─────────────────────────────────────────────
Defendant's Brief Re: Failure to Request Reimbursement and Labor Code Section 2802
LA1 6781611.1                          Case No. C07-04499 EMC

## INTRODUCTION AND SUMMARY OF ARGUMENT

Rather than follow the Court's clear instructions to brief the issue of whether an employee is required to request reimbursement from his employer prior to seeking penalties, interest and/or attorneys' fees, Stuart has submitted a brief replete with unsupported "facts" in a shameless attempt to prematurely litigate this case. Stuart's brief is inappropriate, misstates RadioShack's position and policies, and fails to respond to the Court's request.

RadioShack does not allege that requesting reimbursement is an administrative remedy that must be completed or exhausted prior to filing suit to obtain reimbursement for expenses. Nor does it claim that employees have waived their right to indemnification under Labor Code section 2802. Rather, RadioShack maintains that the requirement of requesting reimbursement is a necessary element of a section 2802 claim seeking interest, penalties and attorneys' fees for which the plaintiff bears the burden of proof at trial. Simply put, until a request for reimbursement is made and is denied, no claim for a violation of section 2802 exists as there is no actual controversy.

Labor Code sections 2856 and 2861 state that it is completely acceptable for an employer to require its employees to submit reimbursement requests for the expenses they incur during employment. An employer would otherwise have no way of knowing exactly how much to reimburse its employee, or when reimbursement is necessary under 2802. Stuart not only fails to provide any relevant case law or legal authority to support his contention, but the case law he does cite to supports RadioShack's position.

Finally, RadioShack would be remiss if it did not respond to the misleading and inaccurate statements set forth in Stuart's brief. His brief is replete with misinformation. RadioShack's policy has never flatly disallowed reimbursement for mileage. To the contrary, it has always had a reimbursement policy and the

/ / /

2

Defendant's Brief Re: Failure to Request Reimbursement and Labor Code Section 2802
LA1 6781611.1                                                    Case No. CV07-04499 EMC

1   evidence shows that employees, including Stuart, not only knew about the

2   reimbursement policy, but were reimbursed in accordance with the policy.

3   **LEGAL ARGUMENT**

4   **I.   PLAINTIFFS MUST SHOW AT TRIAL THAT THEY REQUESTED**

5   **REIMBURSEMENT TO RECOVER INTEREST, PENALTIES AND**

6   **ATTORNEY'S FEES**

7   **A.   RadioShack's Position**

8   In his brief, Stuart alleges that RadioShack seeks to "put some condition

9   precedent in § 2802" by requiring that "an employee exhaust any remedies set by

10  the employer" to obtain expense reimbursement.  Stuart completely misses the

11  point and misstates RadioShack's contentions.

12  RadioShack's position is that the requirement of requesting reimbursement

13  is a necessary element of a section 2802 claim seeking interest, penalties and

14  attorneys' fees <u>for which the plaintiff bears the burden of proof at trial</u>.  Until a

15  request for reimbursement is made and is denied, no claim for a violation of

16  section 2802 exists because there is no actual controversy.  If there is no request,

17  then there can be no denial, and thus no violation of section 2802.[1]

18  To be clear, and contrary to Stuart's claims, RadioShack does not contend

19  that an employee must *always* submit a request for reimbursement prior to filing a

20  section 2802 claim.  Where there is evidence that a company's policy specifically

21

22  [1]  For example, because 2802 is an indemnity statute, it is closely related to the
23  areas of insurance and claims processes. An insurance company has no duty to
     indemnify a policy holder if he/she fails to go through the proper claims process.
24  Take for example, Mary, whose house suffers fire damage. Mary sues her
     insurance company for failing to cover the damages to her house, claiming the
25  damages are covered under the insurance company's policy. There is no doubt that
     Mary cannot succeed at trial if the evidence shows that she never filed a claim with
26  the company as required. Similarly, simply telling the Company "there was a fire"
     without going through the proper claims process is not enough. The insurance
27  company would otherwise have no way of knowing what is required to reimburse
     her for the damage to her house and the contents. Here, the ICST paperwork by
28  itself is insufficient and does not put RadioShack on notice that an expense needs
     to be reimbursed and/or the amount it is required to reimburse to the employee.

3

1    prohibits reimbursement of certain expenses, there is no need to comply with a

2    requirement to submit a reimbursement request because to do so would be futile.

3    Conversely, where, as here, company policy *does* allow for reimbursement

4    of expenses, an employee must first submit a request for reimbursement pursuant

5    to section 2861. Only if the request is denied should the employee be allowed to

6    seek penalties, interest and attorneys' fees resulting from a section 2802 violation.[2]

7    **B.    Stuart Disregards Labor Code sections 2856 and 2861**

8    Stuart's argument that an employee is not required to exhaust administrative

9    remedies before filing a 2802 claim is misguided. First, RadioShack does not

10   contend that the request for reimbursement should be treated as an administrative

11   remedy or an exhaustion defense. Moreover, Stuart completely disregards Labor

12   Code sections 2856 and 2861. Contrary to his assertions, both sections clearly

13   provide that it is reasonable for an employer to require its employees to abide by

14   company policies, including those pertaining to any incurred expenses. Section

15   2856 of the California Labor Code states that "[a]n employee shall substantially

16   comply with **all** directions of his employer concerning the service on which he is

17   engaged...." *Id.* (Emphasis added). Similarly, Labor Code section 2861 directs

18   that "[a]n employee shall, on demand, render to his employer just accounts of all

19   his transactions in the course of his service...."

20   In other words, the Labor Code clearly permits RadioShack to require its

21   employees to fill out a reimbursement request pursuant to Company policy so that

22   it knows exactly how much to reimburse them for any expenses incurred in

23   connection with their employment. RadioShack's policy clearly states that an

24   employee must submit a reimbursement request form in order to obtain

25   reimbursement of expenses. See Travel Policy at p. 14, under "FORMS

26   REQUIRED": ("All expenses incurred and their related business purpose should

27   _____

28   [2] For example, unlike wage payments, there are no timing requirements with
     respect to payments under section 2802. An employer can issue payment and
     vitiate a claim under section 2802 at any time.

4

1  be clearly listed on the travel claim form found on Answers Online or posted on
2  the expenses form within the PeopleSoft T&E system. The original travel claim
3  must be submitted in PeopleSoft or on the travel claim form…")

4      Given the plain meanings of Labor Code sections 2856 and 2861,
5  RadioShack's travel policy providing for reimbursement of expenses and the
6  requirement that its employees follow Company policy are consistent with the
7  protections of 2802 that Stuart adamantly advances. Further, it is self-evident that
8  sections 2856 and 2861 are to be read in conjunction with 2802. While section
9  2802 is located in Article 2 of the Labor Code (Obligations of the Employer),
10  sections 2856 and 2861 are found in Article 3 (Obligations of the Employee).
11  There is no doubt that these statutes are meant to be read together, and not
12  separately.

13      **C.**     ***Gattuso v. Harte-Hanks Shoppers* Further Supports RadioShack's**
14              **Position.**

15      The Supreme Court decision in *Gattuso v. Harte-Hanks Shoppers, Inc.,* 42
16  Cal. 4th 554 (2007) further supports the position that a request for reimbursement
17  is an essential element of a 2802 claim. Stuart concedes that in *Gattuso*, the
18  California Supreme Court recognized the "actual expenses" method of
19  reimbursement. When dealing with this method of reimbursement, a court is
20  required to take into account individual factors such as the type of vehicle driven
21  by each employee, insurance costs for each employee, repair costs for each
22  employee, gas mileage, etc. *Id.* at 568.

23      *Gattuso* demonstrates why reliance on the employee to fulfill his obligations
24  to properly submit a reimbursement request is necessary. Unless the employee
25  communicates the above information to his/her employer, the employer has no way
26  of knowing how much to reimburse the employee. Even if the employer has preset
27  the rate of reimbursement, *Gattuso* makes clear that the employee has the right to
28  ///

1  request what he believes constitutes his actual expenses if he believes that the

2  preset rate is insufficient.

3       Under this method of reimbursement, then, it is entirely permissible to rely

4  on the employee to tell his employer the amount he thinks he is owed.  It is up to

5  the employee to tell the employer what expenses the employee incurred, and if the

6  employee does not believe that a preset rate will sufficiently reimburse him, the

7  rate which the employee contends is proper.  Here, Stuart claims that the IRS

8  reimbursement rate is insufficient to indemnify class members for mileage

9  expenses.  Given his position, it would be entirely unjust for Stuart or any other

10  class members to seek reimbursement of such expenses *unless* they first informed

11  RadioShack of the nature and extent of such expenses and allowed it the

12  opportunity to indemnify them for those expenses.  Only if RadioShack denies

13  such a request can an actual controversy that is ripe for adjudication exist.

14  **II.**  **STUART'S PURPORTED "FACTS" ARE INACCURATE AND**

15       **UNSUPPORTED BY THE EVIDENCE**

16       In an attempt to convince the Court that there are no triable issues, Stuart's

17  brief is replete with misinformation and inaccurate statements.  His presentation of

18  misleading "facts" is an inappropriate attempt to prematurely litigate the case

19  before the Court and should be disregarded.  Nevertheless, Stuart leaves

20  RadioShack with no choice but to respond to his specious statements.  In so doing,

21  RadioShack does not attempt to set forth all of the evidence that supports its

22  position.  Rather, RadioShack simply provides examples to demonstrate Stuart's

23  misstatements.

24      **A.**  **RadioShack's Policies Have Always Been Lawful**

25       First and foremost, Stuart's statement that "[d]uring the period from June 7,

26  2003 through at least the beginning of 2007, RadioShack's written policy was not

27  / / /

28  / / /

6

to reimburse employees for expenses for transfers" is completely incorrect. *See* Plaintiff's Brief, p. 2. RadioShack has never had a policy that flatly denied reimbursement. RadioShack's policy prior to 2007 stated:

> An employee who uses his or her own car on business **will be reimbursed for mileage** (i.e., to and from airport, factories, warehouses, etc.).

> Mileage for incidental business use of a car within the city or suburbs where the store/office/headquarters is located (trips to the post office, bank, etc.) will not be reimbursed.

Beginning in 2007, all mileage submitted by employees in California was eligible for reimbursement. Even Stuart concedes that RadioShack has always had a reimbursement policy. During his deposition, Stuart testified that in his district he believed that the policy was that trips in excess of 25 miles were eligible for reimbursement, and that he would have been reimbursed for such trips if he had asked. *See* Stuart Depo at 39:24-44:25; 95:1-98-7. He also conceded that when he did request reimbursement, he was paid. *See* Stuart Depo. 22:20-23:23. Hence, Stuart's own testimony dispels his claims.

In addition, although RadioShack's pre-2007 policy indicated that mileage for "incidental" business use of a car would not be reimbursed, it is undisputed that it was up to RadioShack's District Managers to determine what constituted "incidental" mileage. Even prior to 2007 many District Managers granted ***all*** requests for mileage reimbursement. For example, the practice of District Managers Donna Ocampo and Mark Wolfe has always been to approve **all** mileage reimbursement requests. *See* Declaration of Donna Ocampo ("Ocampo Decl.") ¶ 5; Declaration of Mark Wolfe ("Wolfe Decl.) ¶ 5.

Similarly, Stuart's claim that Tom Schultz did not know if any employee had been reimbursed for an ICST is neither relevant nor evidence of an unlawful

---

[1] Under the policy, employees are reimbursed for any expenses incurred—what constitutes "incidental business use" is up to the District Manager.

1   policy. As the Area Vice President, Mr. Schultz oversees hundreds of RadioShack
2   stores and does not review reimbursement requests unless the request is for
3   mileage over <u>750 miles</u>. Declaration of Tom Schultz ("Schultz Decl.") ¶3. Mr.
4   Schultz thus has no reason to know whether a particular employee has ever been
5   reimbursed for transferring merchandise to another store in connection with an
6   ICST.

7   **B.    The Post-2007 Policy Was Indeed Communicated To The**
8          **Employees**

9          Stuart's assertions that the "post-2007" policy was never communicated to
10  employees is also false. Stuart attempts to mislead the Court into believing that
11  Mr. Schultz's testimony that he informed the District Managers about the change
12  in policy is evidence that no other RadioShack employees knew about the policy
13  change. Stuart conveniently overlooks the fact that the District Managers were
14  responsible for relaying the relevant information to their employees during
15  manager meetings. Schultz Decl., ¶ 6. The District Managers informed their Store
16  Managers, who in turn, were tasked with notifying the sales associates of the
17  policy change. *See e.g.*, Declaration of Chris Nesbit ("Nesbit Decl.") ¶ 4;
18  Declaration of Gary Slate ("Slate Decl.") ¶ 4; Ocampo Decl. ¶ 5; Wolfe Decl. ¶ 4.
19  Moreover, Stuart has not produced a shred of evidence to indicate that any
20  employee was unaware of RadioShack's Travel Policy, either before or after the
21  change in 2007, or that employees were discouraged from submitting claims for
22  reimbursement.

23  **C.    The ICST Paperwork Is Not Evidence Of Constructive Notice**

24         Stuart's claim that the ICST paperwork "is all that [RadioShack] needed to
25  discharge its statutory obligation to reimburse mileage" also is incorrect. First,
26  RadioShack used the ICST paperwork <u>only to track inventory</u>, not mileage
27  expenses incurred. Second, ICST forms are not sent to the accounts payable
28  department—the department responsible for reimbursement of employee business

8

1   expenses.  Third, the ICST forms do not indicate the *actual* mileage driven

2   between stores,  which is dependent on traffic conditions and other unpredictable

3   circumstances.  Fourth, as is evident from a review of the ICST database,

4   employees routinely enter undecipherable data that cannot be used to determine

5   whether a transfer was done by use of personal vehicle, or if so, which employee

6   performed the transfer.  It is precisely for these reasons that RadioShack has an

7   expense reimbursement form and requires employees to submit the form in order

8   to receive reimbursement.

9          Reliance on the ICST paperwork is additionally misplaced if one utilizes the

10   actual expenses reimbursement method under *Gattuso*.  While the ICST paperwork

11   may give RadioShack a general sense of the mileage from one store to another, it

12   does not contain information regarding the type of vehicle driven by each

13   employee, insurance costs for each employee, or repair costs for each employee.

14   Reliance on the ICST paperwork would not provide RadioShack with enough

15   information to properly reimburse an employee under the actual expenses method

16   of reimbursement.  Indeed, Stuart's claim that the IRS reimbursement rate is

17   insufficient to indemnify class members for mileage expenses contradicts his own

18   argument that the ICST paperwork is all that RadioShack needs to reimburse its

19   employees.

20          In light of the dictates of section 2861 and RadioShack's clear policy

21   requiring submission of a reimbursement form, employees should not be able to

22   claim that completing an ICST form to reflect the transfer of merchandise between

23   stores satisfies the requirement of requesting reimbursement of expenses.

24   **D.     Stuart's Alleged "Evidence" of an Unlawful Policy Is Irrelevant**

25          Stuart's claim that he has discovered "evidence of another unlawful policy"

26   is also without merit.  The e-mail (not a Company memorandum) to which Stuart

27   refers is from an accounting clerk regarding one particular reimbursement request

28   **that occurred outside of the relevant class period**.  This "evidence" is not even

9

1   relevant to the case and should be excluded.  Second, as explained in the

2   declarations of Mr. Schultz and the District Managers, RadioShack never had a

3   policy that prohibited reimbursement for mileage less than 30 miles per day.  *See*

4   Schultz Decl., ¶ 8; Nesbit Decl., ¶ 7; Slate Decl., ¶ 5; Wolfe Decl., ¶ 6.  Simply

5   put, the individual just made a mistake.

6        Moreover, to the extent it has any relevance, the e-mail demonstrates that

7   Stuart's assertion that RadioShack had a policy to deny *all* requests for

8   reimbursement of mileage to transfer merchandise in connection with an ICST is

9   incorrect.  The e-mail actually shows that the employee was reimbursed, but at a

10  reduced rate.

11       **E.      A Demand Letter Does Not Constitute a Reimbursement Request**

12       Finally, Stuart claims that he and other class members did in fact submit

13  reimbursement requests because counsel mailed RadioShack a letter threatening to

14  file a lawsuit.  First, pre-certification counsel represents only Stuart and not

15  putative class members.  Second, even as to Stuart, the letter does not itemize his

16  alleged expenses.  Nowhere does it list when he used his car to perform ICSTs,

17  how far he drove, or how much he claims in reimbursement.  Again, it is worth

18  noting that Stuart claims that the IRS rate is insufficient to reimburse his mileage

19  expenses.  But he makes no attempt to tell RadioShack at what rate he should be

20  reimbursed or why.  Stuart's attempt to fulfill a necessary element of his 2802

21  claim fails.

22  **III.   CONCLUSION**

23  The only real issue at hand is whether an employee is required to request

24  reimbursement from his employer prior to seeking penalties, interest and/or

25  attorneys' fees.  The answer is yes.  Such a requirement is a necessary element to a

26  section 2802 claim.  As such, RadioShack respectfully requests the Court rule that

27  / / /

28  / / /

Defendant's Brief Re: Failure to Request Reimbursement and Labor Code Section 2802
LA1 6781611.1   .
Case No. CV07-04499 EMC

1    plaintiffs have the burden of proof to show that such requests were made.  At a

2    bare minimum proof of such requests should be required in order to obtain

3    penalties, interest and/or attorneys' fees.

4

5    DATED:   April 8, 2009                         SEYFARTH SHAW LLP

6                                                    By: ____/s/ David D. Jacobson_____
                                                         Andrew M. Paley
7                                                        David D. Jacobson
                                                     Attorneys for Defendant
8                                                    RADIOSHACK CORPORATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Brief Re: Failure to Request Reimbursement and Labor Code Section 2802
LA1 6781611.1                                    Case No. CV07-04499 EMC

# Declaration of Donna Ocampo

1

## DECLARATION OF DONNA OCAMPO

2      I, Donna Ocampo, declare:

3      1.      I have personal knowledge of the matters set forth herein, and if called

4 upon to testify, I could and would do so competently.

5      2.      I have worked in California as a District Manager for RadioShack

6 since July of 2002. I am currently the District Manager for seventeen RadioShack

7 stores in the San Leandro area. I have been the District Manager for the San

8 Leandro area since September 2008. Prior to my current assignment, I served as

9 District Manager in the Riverside area (November 2005-September 2008), and in

10 Bakersfield (July 2002-November 2005).

11      3.      I am familiar with RadioShack's Travel and General Business

12 Expense Policy (the "Travel Policy"), which reads as follows:

13      "A team member who uses his or her own car on business trips will be

14      reimbursed at an established rate per mile (i.e. to and from airport,

15      factories, warehouses, etc.).

16      Mileage for incidental business use of a car within the city or suburbs where

17      the store/office is located (trips to the post office, bank, etc.) will not be

18      reimbursed."

19      4.      Except for a modification in early 2007, the Travel Policy was in

20 effect during the time period from June 2003 to the present. Sometime in early

21 2007, the policy was changed in California. I learned of the change during a

22 telephone conference with Tom Schultz and all of the California District

23 Managers. Mr. Schultz informed us that, going forward, RadioShack's policy was

24 to reimburse employees for all mileage, regardless of the distance or reason for the

25 trip, so long as it was business-related.

26      5.      I am responsible for approving all requests for mileage reimbursement

27 from employees in my District. The change in the policy as conveyed by Mr.

28

1   Schultz in early 2007 did not affect my review/approval of requests for

2   reimbursement. During the time period from June 2003 to the present, my policy

3   has always been to approve all business-related requests for mileage

4   reimbursement as long as they were reasonable.

5       I declare under penalty of perjury under the laws of the United States of

6   America that the foregoing is true and correct.

7       Executed this _8th_ day of April, 2009 at _San Leandro,_ California.

8

9                                   Donna OCampo

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Decl. of Donna Ocampo              C07-04499 EMC

LA1 6781541.1

# Declaration of Mark Wolfe

# DECLARATION OF MARK WOLFE

I, Mark Wolfe, declare:

1.      I have personal knowledge of the matters set forth herein, and if called upon to testify, I could and would do so competently.

2.      I have worked for RadioShack since 1971.  I have been a Store Manager, a District Manager and a Regional Manager.  I am currently the District Manager for seventeen RadioShack stores in the Oakland area.  I have been a District Manager in the Oakland area for the past six years.  Based upon my experience as a Store Manager District Manager, and Regional Manager, I am generally familiar with RadioShack's policies and procedures.  Part of my responsibilities as a District Manager is to ensure that the Store Managers in my District follow RadioShack's policies and procedures.

3.      I am familiar with RadioShack's Travel and General Business Expense Policy (the "Travel Policy"), which reads as follows:

> "A team member who uses his or her own car on business trips will be reimbursed at an established rate per mile (i.e. to and from airport, factories, warehouses, etc.).
>
> Mileage for incidental business use of a car within the city or suburbs where the store/office is located (trips to the post office, bank, etc.) will not be reimbursed."

4.      The Travel Policy was in effect during the time I started as a District Manager in the Oakland area six years ago, and continued in effect until early 2007.  Sometime in early 2007, the policy was changed in California to provide for reimbursement for mileage incurred by employees in connection with the use of their personal vehicles for business purposes, including incidental trips within the same city or suburb where the store is located.  The change in policy was communicated to me during a conference call with Tom Schultz, the Area Vice

14

LA1 6781786.1

President for California, with all of the California District Managers. I conveyed the change in the policy to the Store Managers in my District at our next regularly scheduled monthly meeting. At that time, I instructed the Store Managers that they should convey the change in the policy to their store employees.

5. I am responsible for approving all requests for mileage reimbursement from employees in my District. The change in the policy for reimbursement did not affect my review/approval of requests for expense reimbursement. Even prior to the policy change, my view was that if an employee used his or her personal vehicle for work-related purposes, he or she should be reimbursed for mileage. Therefore, my policy was to approve any request for mileage reimbursement that was reasonably related to the performance of an employee's work duties.

6. I have never heard of a RadioShack policy that restricted reimbursement based upon the number of miles traveled. For example, I have never heard of a policy to the effect that RadioShack would not reimburse mileage unless it was more than 30 miles in a day. If such a policy existed, I would have expected to be made aware of the policy, as knowledge and enforcement of such a policy would fall within the purview of my duties as a District Manager.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7 day of April, 2009 at Benicia, California.

Mark Wolfe

15

# Declaration of Thomas Schultz

# DECLARATION OF THOMAS SCHULTZ

I, Thomas Schultz, declare:

1.     I have personal knowledge of the matters set forth herein, and if called upon to testify, I could and would do so competently.

2.     Since May 2008, I have been employed by RadioShack Corporation as the Area Vice President for the Western United States.  Part of my responsibility as Area Vice President for the Western United States includes the entire State of California, which includes approximately 550 RadioShack stores.  From January 2007 to May 2008, I was Area Vice President for the State of California.  Prior to that, from January 2000 to January 2007, I worked as a Regional Sales Manager, and later as a Regional Vice President, in Northern California, with responsibility for approximately 250 RadioShack stores.

3.     During the entire time of my employment by RadioShack in California (since January 2000), I have been familiar with RadioShack's written Travel and General Business Expense Policy (the "Travel Policy").  As part of my responsibilities in each position I have held at RadioShack since the year 2000, I needed to know RadioShack's Travel Policy because I had, in each of my positions, responsibility for approval of employee requests for expense reimbursement.  In my present position as Area Vice President, I am responsible for approval of all requests for reimbursement of mileage in excess of 750 miles.  Requests for reimbursement for mileage less than 750 miles are approved by the District Managers.

4.     Except for a change in 2007, the provisions in the Travel Policy with respect to reimbursement of mileage incurred by employees in connection with the use of their personal vehicles for business purposes have not changed since I began working in California in the year 2000.  During this entire period, the applicable portion of the Travel Policy has read as follows:

16

LA1 6781650.1

"A team member who uses his or her own car on business trips will be reimbursed at an established rate per mile (i.e. to and from airport, factories, warehouses, etc.).

Mileage for incidental business use of a car within the city or suburbs where the store/office is located (trips to the post office, bank, etc.) will not be reimbursed."

5.     In January 2007, RadioShack's reimbursement policy changed slightly for California employees.   The change was the elimination of the restriction on reimbursement for incidental trips to the bank, post office, etc.  After January 2007, all mileage incurred in connection with the use of a personal vehicle for business purposes was eligible for reimbursement.

6.     I announced the change in the reimbursement policy on a conference call to all California District Managers in January 2007.  I did not contact Store Managers or their employees with respect to the change in policy.  I informed the District Managers, who it turn had responsibility to inform the Store Managers, of the change in policy.

7.     Prior to January 2007, it was up to each individual Store Manager and/or his District Manager to determine whether a particular trip by an employee fell within the "incidental business [trip]" exclusion of the Travel Policy. Incidental trips are very short trips that are "incidental" to the operation of the business, such as trips to the bank or post office, which are typically less than two miles.  Prior to January 2007, those trips were not covered by the Travel Policy. Whether other trips, such as trips to pick up or deliver merchandise in connection with an ICST, were covered, was within the discretion of each individual Store Manager and/or his District Manager, depending on the circumstances.

8.     During the entirety of my employment by RadioShack in California, from 2000 to the present, I have never heard of a Company policy that limited

17

1   mileage reimbursement based on distance.  For example, I have never heard of a

2   policy to the effect that RadioShack would not reimburse mileage unless it was

3   more than 30 miles in a day.  If such a policy existed, I would have expected to be

4   made aware of the policy, as knowledge and enforcement of such a policy would

5   fall within the purview of my duties as a Regional Vice President and Area Vice

6   President.

7        I declare under penalty of perjury under the laws of the United States of

8   America that the foregoing is true and correct.

9        Executed this _8_ day of April, 2009 at _CoLoNA_, California.

10

11                                                    Thomas Schultz

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        18

LA1 6781650.1

# Declaration of Chris Nesbit

# DECLARATION OF CHRIS NESBIT

I, Chris Nesbit, declare:

1.     I have personal knowledge of the matters set forth herein, and if called upon to testify, I could and would do so competently.

2.     I am currently the District Manager for eighteen RadioShack stores in the San Diego area.  I have been a District Manager in California since August 2004.  Prior to August 2004, I worked as a Store Manager for approximately ten years.  Part of my responsibilities as a District Manager is to ensure that the Store Managers in my District follow RadioShack's policies and procedures.

3.     I am familiar with RadioShack's Travel and General Business Expense Policy (the "Travel Policy"), which reads as follows:

> "A team member who uses his or her own car on business trips will be reimbursed at an established rate per mile (i.e. to and from airport, factories, warehouses, etc.).
>
> Mileage for incidental business use of a car within the city or suburbs where the store/office is located (trips to the post office, bank, etc.) will not be reimbursed."

4.     The Travel Policy was in effect during the time I started as a District Manager in 2004, and continued in effect until early 2007.  In early 2007, the policy was changed in California to provide for reimbursement for mileage incurred by employees in connection with the use of their personal vehicles for business purposes, including incidental trips within the same city or suburb where the store is located.  The change in policy was communicated to me during a conference call with Tom Schultz--the Area Vice President for California--with all of the California District Managers.  I have weekly conference calls with the Store Managers in my District, and I in turn communicated the change in the policy to my Store Managers on the next weekly conference call.  I also asked my Store

LA1 6781380.1

1 Managers to make sure that the employees in their stores were made aware of the
2 change in the policy.

3     5.     I am responsible for approving all requests for mileage reimbursement
4 from employees in my District. Prior to the change in policy in 2007, if I received
5 a request for reimbursement, I was required to determine whether the trip was an
6 incidental trip within the same city or suburb before approving the request. After
7 the policy changed in 2007, I no longer had to make this determination, because
8 all mileage incurred for business purposes was eligible for reimburseable under the
9 new policy. Since the change in policy in 2007, I do not recall ever denying a
10 request for reimbursement for mileage of any sort.

11     6.     Prior to the change in the Travel Policy in early 2007, employees in
12 my District who used their personal vehicle to pick up merchandise from another
13 store would have been eligible to be reimbursed under the policy if the other store
14 was outside of the same city or suburb, and the employee filled out a Travel Form
15 and turned it in to request reimbursement. I make a point of stressing to the
16 employees in my District that they should make sure to pay themselves when they
17 are working out of the office or traveling for business. For example, if a Store
18 Manager or other employee is required to travel to an off-site meeting away from
19 his or her store, and the distance to the off-site meeting is greater than his or her
20 normal commute, that employee would be entitled to reimbursement for the
21 mileage in excess of his or her normal commute. At such off-site meetings, I
22 typically remind the attendees that they should fill out a Travel Form so they will
23 be reimbursed for their mileage.

24     7.     I have never heard of a mileage restriction with respect to whether the
25 company would reimburse an employee. For example, I have never heard of a
26 policy to the effect that RadioShack would not reimburse mileage unless it was
27 more than 30 miles in a day. If such a policy existed, I would have expected to be
28 made aware of the policy, as knowledge and enforcement of such a policy would

20

LA1 6781380.1

1    fall within the purview of my duties as a District Manager.

2         I declare under penalty of perjury under the laws of the United States of

3    America that the foregoing is true and correct.

4         Executed this  7  day of April, 2009 at *MURRIETA*, California.

5                                    _____

6                                         Chris Nesbit

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        21

# Declaration of Gary Slate

# DECLARATION OF GARY SLATE

I, Gary Slate, declare:

1.     I have personal knowledge of the matters set forth herein, and if called upon to testify, I could and would do so competently.

2.     Since January 2005, I have worked for RadioShack as the District Manager for the Modesto/Stockton area.  Based upon my experience as a District Manager, I am generally familiar with RadioShack's policies and procedures.  One of my responsibilities as a District Manager is to ensure that the Store Managers in my District follow RadioShack's policies and procedures.

3.     I am familiar with RadioShack's Travel and General Business Expense Policy (the "Travel Policy"), which reads as follows:

> "A team member who uses his or her own car on business trips will be reimbursed at an established rate per mile (i.e. to and from airport, factories, warehouses, etc.).
>
> Mileage for incidental business use of a car within the city or suburbs where the store/office is located (trips to the post office, bank, etc.) will not be reimbursed."

4.     To my knowledge, the Travel Policy was in effect during the entire time period I have been a District Manager, with the exception of a change in 2007.  Sometime in 2007, the policy was changed in California to provide for reimbursement for all mileage incurred by employees in connection with the use of their personal vehicles for business purposes, including incidental trips within the same city or suburb where the employee's store is located.  I don't recall how the policy change was communicated to me, but I remember that the policy changed, and that I communicated the change in policy to the Store Managers in my District at the next monthly managers' meeting after I learned of the change in policy.

5.     I have never heard of a RadioShack policy that restricted

22

LA1 6781882.1

1  reimbursement based upon the number of miles traveled.  I have never heard of a

2  policy to the effect that RadioShack would not reimburse mileage unless it was

3  more than 30 miles in a day.  If such a policy existed, I would have expected to be

4  made aware of the policy, as knowledge and enforcement of such a policy would

5  fall within the purview of my duties as a District Manager.

6      I declare under penalty of perjury under the laws of the United States of

7  America that the foregoing is true and correct.

8      Executed this 8th day of April, 2009 at Modesto , California.

9

10                                        Gary Slate

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Decl. of Gary Slate          C07-04499 EMC

LA1 6781882.1

# Declaration of David D. Jacobson

1

**DECLARATION OF DAVID D. JACOBSON**

2

I, David D. Jacobson, declare:

3

1.    I am an associate in the law firm of Seyfarth Shaw LLP, one of the

4

attorneys   of   record   for   Defendant   RADIOSHACK   CORPORATION

5

("RadioShack").   I am licensed to practice before all courts in the state of

6

California.  I have personal knowledge of the matters set forth herein, and if called

7

upon to testify, I could and would do so competently.

8

2.    Attached hereto as Exhibit "A" are true and correct copies of the

9

cover page, reporter's certificate and excerpts from the deposition of Richard

10

Stuart, taken November 15, 2008.

11

I declare under penalty of perjury under the laws of the United States of

12

America that the foregoing is true and correct.

13

Executed this 8th day of April 2009 at Los Angeles, California.

14

15

David D. Jacobson

16

17

18

19

20

21

22

23

24

25

26

27

28

24

Declaration of David D. Jacobson                           C07-04499 EMC

LA1 6754841.1

# Exhibit "A"

1

1            UNITED STATES DISTRICT COURT

2     NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

3

4  RICHARD STUART,
    individually, and on behalf
5  of all others similarly
    situated and the California
6  general public; and DOES 1
    through 1000, inclusive,

7

8       Plaintiffs,

9       vs.           Case No. C07-04499EMC

9

10  RADIOSHACK CORPORATION, a
    Delaware corporation; and
10 DOES 1 through 100,
11 inclusive;

12       Defendants.
   _____
13

14

15

16     Deposition of RICHARD STUART, taken on behalf

17 of Defendant, at SEYFARTH SHAW LLP, 560 Mission

18 Street, 31st Floor, San Francisco, California,

19 beginning at 10:14 a.m. and ending at 1:03 p.m. on

20 Saturday, November 15, 2008, before Hanna Kim,

21 Certified Shorthand Reporter No. 13083.

22

23

24

25

CERTIFIED TRANSCRIPT

2

1    APPEARANCES OF COUNSEL:

2

     FOR PLAINTIFF:
3

4            LAW OFFICES OF STEPHEN GLICK
             BY:   STEPHEN GLICK, ESQ.
5            1055 Wilshire Boulevard, Suite 1480
             Los Angeles, California 90017
6            (213) 387-3400
             (213) 387-7872 Fax
7            sglick@glicklegal.com

8
             DANIELS FINE ISRAEL SCHONBUCH & LEBOVITS
9            LLP
             BY:   SCOTT A. BROOKS, ESQ.
10           1801 Century Park East, 9th Floor
             Los Angeles, California 90067
11           (213) 556-7900
             (310) 556-2807 Fax
12           brooks@dfis-law.com

13   FOR DEFENDANT:

14
             SEYFARTH SHAW LLP
15           BY:   DAVID D. JACOBSON, ESQ.
             One Century Plaza
16           2029 Century Park East, Suite 3300
             Los Angeles, California 90067-3063
17           (310) 277-7200
             (310) 277-5219 Fax
18           djacobson@seyfarth.com

19

20

21

22

23

24

25

3

1                              INDEX

2      WITNESS                          EXAMINATION

3      RICHARD STUART

4               BY MR. JACOBSON              4, 140

5               BY MR. GLICK                 130

6

7

8                              EXHIBITS

9      DEFENDANT'S                              PAGE

10     1      Amended Notice of Deposition of        55
              Plaintiff Richard Stuart and Proof
11            of Service, executed 11-3-08; 10 pages

12     2      Document entitled "Store Transfers,    76
              Last Revised 02-15-2006," DEF0003191
13            through DEF0003195; 5 pages

14     3      Declaration of Richard Stuart in       91
              Support of Motion for Class
15            Certification, pages 1-6; Exhibit 5,
              letter dated 4-16-2008; RS 0001
16            through RS 0015; Exhibit 6 -9;
              Proof of Service; 34 pages

17     4      Previously marked document, Exhibit 9   125
              to deposition of Schultz, RadioShack
18            document; 1 page

19     5      RadioShack document DEF0003196         128
              through DEF0003204; 9 pages
20

21

22

23

24

25

VERITEXT CORPORATE SERVICES (800) 567-8658

Exhibit A

27

22

1        Prior to that, I worked for a little

2  company called Sears Roebuck.  I was an advertising

3  and sales promotion manager for the nine western

4  states and travelled extensively, up and down through

5  the Coast and to the -- out back to Chicago and New

6  York, frequently.

7        In my briefcase, I always kept a complete

8  pad for sales or travel expense reports, so I was

9  very used to being reimbursed for travel expenses

10  whether it be automotive or if I'm travelling for

11  Sears -- eating, you know, hotels, whatever it may

12  be.  So I was very conversant with that part of

13  business.

14        I found -- felt and did find that most

15  RadioShack employees have never heard of this.  And

16  they're told to do this, go to a meeting, or to go to

17  another store to pick up merchandise to satisfy a

18  customer.  They were never told they could be

19  reimbursed for that, and it's not fair.

20      Q.   Since you've worked at RadioShack, have you

21  ever asked to be reimbursed for anything?

22      A.   Absolutely.

23      Q.   Who did you ask?

24      A.   Who did I ask?

25      Q.   Yes.

Exhibit A

28

23

1    A.   Most recently, it would be the Castro

2  Valley store manager.

3    Q.   And what's his name?

4    A.   Shaun Lorge.  It's a her.

5    Q.   What's her last -- how do you spell the

6  last name?

7    A.   L-o-r-g-e.

8         This was in relation to a sales associate

9  meeting held in Milpitas.  And from Castro Valley,

10 roundtrip, it's is around 50 miles.  And I was

11 reimbursed, one time.

12   Q.   All right.  Since -- let's deal with the

13 period covered by this lawsuit and then we'll go back

14 from there.

15        But -- from -- first, when was this, this

16 instance that you just described to me?

17   A.   Either spring or early summer of this year.

18   Q.   Of 2008?

19   A.   Yes.

20   Q.   All right.  Other than that instance, since

21 June of 2003 to the present, did you ever ask anyone

22 for reimbursement?

23   A.   No.

24        MR. GLICK:  You mean, other than in this

25 lawsuit, right?

39

1  for reimbursement?

2     A.   Yes.

3     Q.   When, other than the two that you described

4  previously --

5     A.   Well, no.

6     Q.   -- when you were -- and you were given the

7  reimbursement?

8     A.   Okay.  No, the reason that I didn't really

9  pursue the matter was as a store manager we have

10  little books -- rather, large books, actually, that

11  is mandatory that they be in the store.

12        Ordinarily if you have any question, your

13  answers can be found in these books.  The primary one

14  is called the store operating manual.  We call it the

15  SOM.

16        After looking something else up, I stumbled

17  across a thing under travel expense in the SOM that

18  specifies in writing for any trip that you use your

19  own vehicle -- or something to that effect, less than

20  50 miles, it is RadioShack's policy not to

21  reimbursement.  And I thought that was really rather

22  poor.  So in asking, after that, it was more tongue

23  and cheek knowing what, you know, it's futile.

24     Q.   When was it when you stumbled across this

25  policy that said no reimbursement if it's less than

Exhibit A

30

40

1  50 miles?

2      A.   It would be probably while I had the store

3  in Hesperian.

4      Q.   So approximately, when was that?

5      A.   '96 to '99, in that area, because I was in

6  that store for three and a half years.

7      Q.   Okay.  But you already testified that after

8  that with this Mr. Heumann --

9      A.   Heumann.

10     Q.   Heumann.  Excuse my pronunciation.

11          That -- the inference you gave me anyway,

12 from your answer, was that, yes, you could have

13 submitted a request for reimbursement, but it just

14 wasn't worth the time.

15          So is that testimony not accurate?

16          MR. GLICK:  Wait, wait, wait, wait, wait.

17          He can't answer a question like that.

18 You're giving him your interpretation of the

19 question, so it's compound.  I object to it as

20 compound.

21          And it's also the windup on thing.  I mean,

22 if you want to ask him a question, that's fine, but

23 you got this windup about how you interpreted it.

24 BY MR. JACOBSON:

25     Q.   Did you understand the question?

41

1      MR. GLICK:  Yeah.  I'm not going to permit

2   him to answer that -- those, those questions.

3      MR. JACOBSON:  Are you instructing him not

4   to answer?

5      MR. GLICK:  Yeah, because -- I would ask

6   you to rephrase it because you're putting this windup

7   in there that -- that, you know, it makes it

8   impossible for him to answer.

9      He told you that he thought it was futile,

10  I think was his words.  It was tongue and cheek, I

11  think.

12     But go ahead and ask the question.  I'm

13  sorry.  I'm sure we can work this out.  You can ask

14  it if you break it up.

15  BY MR. JACOBSON:

16     Q.   Well, let's go at it this way:  Since

17  somewhere between 1996 and 1999, has RadioShack

18  policy with respect to reimbursement changed as far

19  as you know?

20     A.   No.

21     Q.   So the policy is still today that if you

22  travel less than 50 miles, you're not entitled to

23  reimbursement?

24     A.   I can't answer that without reading the

25  current SOM.  I haven't looked in that book in three

42

1   or four years.

2       Q.   Do you know what the policy is today?

3       A.   I have to assume it's the same.

4       Q.   Do you have any reason to believe it's any

5   different?

6       A.   No.

7       Q.   Have you ever seen a policy that says that

8   if you travel less than 25 miles, you're not entitled

9   to reimbursement?

10      A.   It's -- that's what it says in the SOM,

11  yes, sir.

12      Q.   That's different than what you just

13  testified to, which was that it was -- if the policy

14  was that if it was less than 50 miles, so I'm

15  confused.

16      MR. GLICK:  Wait.  Wait, wait, wait a

17  minute.

18      That's not a question, so let's not -- were

19  you done?  I said "Wait a minute" --

20      MR. JACOBSON:  No.  You interrupted because

21  I'm getting ready to ask --

22      MR. GLICK:  Okay.  Okay.  I'm sorry.

23  You're right.  Excuse me.  I'm sorry.  Go ahead.

24      But wait until he answers -- asks the

25  question completely.

Exhibit A
33

43

BY MR. JACOBSON:

1

2     Q.   I just want to make sure that you

3  understand my question and I get an accurate        .

4  testimony --

5     A.   Right.

6     Q.   -- because I asked you a little while ago,

7  and you told me that the policy that you stumbled

8  across in the standard operating manual said that you

9  weren't entitled to reimbursement if you travelled

10 less than 50 miles.

11          And so my question was --

12    A.   That's my error.

13    Q.   That's not correct?

14    A.   It's 25.

15    Q.   It's 25 miles?

16    A.   Yeah.

17          MR. GLICK:  Of course, that's each way, you

18 know, so.

19          MR. JACOBSON:  Well, I'm asking him, not

20 you, Steve.

21 BY MR. JACOBSON:

22    Q.   Is that what it says, does the policy say

23 that if you travel less than 25 miles, one way,

24 you're not entitled to reimbursement?

25    A.   No.

44

1     Q.  What does it say?

2     A.  Doesn't -- it's not that specific.

3 Ordinarily if you're travelling, you are doing a

4 loop, you know, both ways, cumulative.

5         And as I say, I have not read that in a

6 number of years, so I cannot quote book chapter and

7 verse.

8     Q.  Can you the tell me approximately when it

9 was -- when was the last time you read the policy?

10     A.  I've already told you, when I had the store

11 on Hesperian.

12     Q.  This was in 1996 to 1999?

13     A.  Yes, sir.

14     Q.  Since 1999, at least, you haven't looked at

15 the policy?

16     A.  Since the year 2000 when I stopped managing

17 stores.

18         Being quite frank, I don't care about the

19 policies anymore.  It doesn't affect me.  At least, I

20 don't care to the extent that I did.

21     Q.  Are the policies in the store operating

22 manual available for anyone in the store to look at,

23 or is that only the store managers that can see

24 those?

25     A.  Anyone in the store.

95

1    Q.   I'd like you to turn your attention to

2  paragraph eight, please, on page three.

3    A.   Mm-hmm.

4    Q.   And paragraph eight says, "The closest

5  RadioShack store is the Castro Valley store, where I

6  have worked since 2000, is approximately 5 miles

7  away."

8        That's the San Leandro store that we talked

9  about earlier today; is that correct?

10   A.   Yes.

11   Q.   And it continues on.  "However, I have

12  driven as far as San Francisco from the East Bay in

13  order to pick up an item which was not in stock in my

14  store for a sale to a customer."

15       How far is that, sir?

16   A.   The store in question is on Market Street.

17  It is about five to six blocks -- seven blocks

18  north -- west of where we are right now.  From Castro

19  Valley is approximately 56 miles roundtrip.

20   Q.   And how often have you made that -- that

21  particular trip to pick up product and take back to

22  Castro Valley store?

23   A.   That particular one was a computer and it

24  was the only time.

25   Q.   Did you submit a request for reimbursement?

VERITEXT CORPORATE SERVICES (800) 567-8658

Exhibit A

36

96

1     A.    No.

2     Q.    Why not?

3     A.    Wasn't worth it.

4     Q.    What do you mean "wasn't worth it"?

5     A.    It's the farthest thing from my mind.  What

6  I picked up over here was a $2,000 computer.  And

7  delivered it to the customer's home, got their

8  credit -- no.  Let's see.

9         On that one they handed me a check.  That's

10  what it was because they knew what the dollar amount

11  would be.

12    Q.    I'm not asking for the --

13    A.    -- the particulars?

14    Q.    The particulars of the transaction.

15        I'm asking why did you not submit a request

16  for reimbursement.  You said "wasn't worth it."  That

17  means --

18        MR. JACOBSON:  Let me -- let me ask my

19  question, Steve.

20        MR. GLICK:  Okay.

21  BY MR. JACOBSON:

22    Q.    Does it mean -- I'll rephrase it for you.

23        Do you mean -- by "wasn't worth it," do you

24  mean it just wasn't worth the time for the small

25  amount you would have gotten for reimbursement?

Exhibit A

37

97

1   MR. GLICK:  It was asked and answered.  He

2   said there was a policy, they wouldn't reimburse.  Do

3   you remember?  We went through this already.

4   MR. JACOBSON:  He said the policy was they

5   wouldn't reimburse if it was less than 25 miles, and

6   he just testified that he drove 56 miles.

7   MR. GLICK:  Hmm.

8   BY MR. JACOBSON:

9   Q.  So my question was --

10   MR. GLICK:  Okay.

11   BY MR. JACOBSON:

12   Q.  -- since it was outside of what you

13   understood the policy to be, why did you not submit a

14   request for reimbursement?

15   Your answer was "wasn't worth it."  So my

16   question is, What did you mean by that?  Did you mean

17   it wasn't worth it because it was such a small amount

18   of money for the time it would take to fill the

19   paperwork out?

20   A.  What I meant was it was not important to

21   me.  The importance there is, number one, to satisfy

22   a customer; number two, I got a very nice commission

23   on that one.  The extraneous paperwork was the

24   furthest thing from my mind.  It didn't enter in my

25   mind.

98

1     Q.   So it wasn't important to you to try to get

2   reimbursed for that mileage?

3     A.   Not on that one, no.

4     Q.   But it is important to you to be reimbursed

5   for mileage for the trips that were less than

6   25 miles?

7     A.   Phrasing it that way, I refuse to answer.

8     Q.   Well, you have to answer the question, sir.

9         MR. GLICK:  I guess it's argumentative.

10        THE WITNESS:  Damn right, it is.

11        MR. GLICK:  We're objecting because it's

12   argumentative.

13   BY MR. JACOBSON:

14     Q.   I'm asking -- because you said it's not

15   important.  And so my question is, what's different

16   about that that makes it not important, but the ones

17   that are less than 25 miles are important, important

18   enough for you to file a lawsuit?

19     A.   Okay.  An answer would be on that, that is

20   a specific situation.  Being reimbursed probably

21   didn't even enter my mind because it was not what I

22   was focusing on.  The other ones, it's a cumulative

23   effect of doing this so many times over so many years

24   and realizing, hey, wait a minute.  What's going on

25   here?

145

1          I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby

3  certify:

4          That the foregoing proceedings were taken

5  before me at the time and place herein set forth;

6  that any witnesses in the foregoing proceedings,

7  prior to testifying, were duly sworn; that a record

8  of the proceedings was made by me using machine

9  shorthand which was thereafter transcribed under my

10  direction; further, that the foregoing is a true

11  record of the testimony given.

12          Further, that if the foregoing pertains

13  to the original transcript of a deposition in a

14  Federal Case, before completion of the proceedings,

15  review of the transcript [   ] was [   ] was not

16  requested.

17          I further certify I am neither

18  financially interested in the action nor a relative

19  or employee of any attorney or party to this action.

20          IN WITNESS WHEREOF, I have this date

21  subscribed my name.

22  Dated: __11/17/09__

23                  _Hanna Kim_

24                HANNA KIM

                  CSR NO. 13083

25

Exhibit A

40

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 2029 Century Park East, Suite 3300, Los Angeles, CA 90067-3063.

On April 8, 2009 I served the following described document(s) on the interested parties in this action:

**DEFENDANT'S BRIEF REGARDING  WHETHER AN EMPLOYEE'S FAILURE TO REQUEST REIMBURSEMENT PRECLUDES HIS OR HER CLAIM UNDER LABOR CODE SECTION 2802; DECLARATIONS OF DONNA OCAMPO; MARK WOLFE, THOMAS SCHULTZ, CHRIS NESBIT, GARY SLATE AND DAVID D. JACOBSON IN SUPPORT**

**[XX] Electronically by using the Court's ECFCM System on the following parties:**

Stephen Glick, Esq.
Law Offices of Stephen Glick
1055 Wilshire Blvd., Suite 1480
Los Angeles, CA 90017

Paul R. Fine, Esq.
Scott A. Brooks, Esq.
Daniels, Fine, Israel, Schonbuch & Lebovits LLP
1801 Century Park East, Ninth Floor
Los Angeles, CA 90067

**AND**

**[XX] (VIA U.S. MAIL)**

[xx] by placing the true copies thereof enclosed in sealed envelopes, addressed as stated below on the following parties:

Ian Herzog, Esq.
Law Offices of Ian Herzog
233 Wilshire Blvd., Suite 550
Santa Monica, CA 91401

Craig S. Momita, Esq.
Daniels, Fine, Israel, Schonbuch & Lebovits
1801 Century Park East, Ninth Floor
Los Angeles, CA 90067

[xx] As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing in affidavit.

Executed April 8, 2009 at Los Angeles, California.

**[XX]** (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

_____
Cherie Thompson

LA1 6781611.1

Case No. C07-04499 EMC

41