UNITED STATES April 30, 2009 DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD STUART,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RADIOSHACK CORPORATION,<br><br>　　　　Defendant.<br>_____/ | No. C-07-4499 EMC<br><br>**ORDER RE CROSS-MOTIONS RE EXHAUSTION DEFENSE**<br><br>**(Docket Nos. 88, 89, 94, 96)** |

  Currently pending before the Court are the parties' cross-motions regarding what the Court has termed, for purposes of convenience, the exhaustion defense. Defendant RadioShack Corp. has not labeled its motion as any particular kind of motion. Plaintiff Richard Stuart has styled his motion as a motion for partial summary adjudication or, in the alternative, as a motion in limine. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other evidence of record, the Court concludes that the exhaustion defense as defined by RadioShack is not legally viable but that another defense, as described below, is and that, under the standard articulated below for that defense, Mr. Stuart has not provided sufficient evidence to warrant either partial summary adjudication or preclusion.

## I. DISCUSSION

  California Labor Code § 2802 provides, in relevant part, that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802. Section 2802 is subject to an anti-waiver provision. California Labor Code § 2804 states in relevant part, that "[a]ny

contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof [including the benefits provided in § 2802], is null and void." Cal. Lab. Code § 2804. The issue currently before the Court is whether an employee must first make a request for reimbursement with his or her employer before the employer's duty to indemnify is triggered.

In resolving this issue, the Court begins by rejecting Mr. Stuart's contention that § 2802 is not ambiguous on its face. As the Court previously indicated in its order granting class certification, § 2802 as phrased is ambiguous. Section § 2802 simply states that an employer *shall* reimburse; it says nothing about *when* the duty to reimburse is triggered. *See* Docket No. 65 (Order at 23-24); *cf. Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 570 (2007) (noting that "[n]othing in the language of section 2802 restricts the methods that an employer may use to calculate reimbursement"). In resolving this ambiguity, the Court must "consider the consequences of each possible construction and will reasonably infer that the enacting body intended an interpretation producing practical and workable results rather than one producing mischief or absurdity." *Id.* at 567.

The Court is not persuaded that either party's construction is appropriate. Mr. Stuart's contention is that the duty to reimburse is triggered once the expense is incurred by the employee irrespective of any other circumstance. However, if the employer had no knowledge or reason to know that the expense was incurred and the employee withheld that information, it would hardly seem fair to hold the employer accountable, particularly when, under the California Labor Code Private Attorneys General Act, an employer may be held liable for civil penalties and attorney's fees for a failure to reimburse in accordance with § 2802. *See* Cal. Lab. Code § 2699(a), (f), (g). In turn, RadioShack's contention is that the duty to reimburse is triggered *only* when an employee makes a request for reimbursement even if the employer knew or had reason to know the expense was incurred. While the employee, rather than the employer, is in the best position to know when he or she has incurred an expense and the details of that expense, *see* Docket No. 65 (Order at 24), such a narrow construction is at war with § 2802's "strong public policy . . . favor[ing] the indemnification (and defense) of employees by their employers for claims and liabilities resulting from the

employees' acts within the course and scope of their employment." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 952 (2008) (internal quotation marks omitted).

The Court concludes that a fair interpretation of §§ 2802 and 2804 which produces "practical and workable results," *Gattuso, id.*, at 567, consistent with the public policy underlying those sections, focuses not on whether an employee makes a request for reimbursement but rather on whether the employer either knows or has reason to know that the employee has incurred a reimbursable expense. If it does, it must exercise due diligence to ensure that each employee is reimbursed.

Focusing on the employer's knowledge parallels the approach taken by both federal and state courts when considering the similar question whether an employer may be held liable for a failure to pay overtime. For example, in *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413 (9th Cir. 1981), the Ninth Circuit considered a claim for overtime pursuant to federal law, *i.e.*, the Fair Labor Standard Act ("FLSA"). Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours specified above at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). As used in § 207(a)(1), the term "'[e]mploy' includes to suffer or permit to work." *Id.* § 203(g). The Ninth Circuit stated that the words "suffer" and "permit" as used in the statute mean "with the knowledge of the employer." *See Forrester*, 646 F.2d at 414.

> Thus an employer who knows or should have known that an employee is or was working overtime must comply with the provisions of § 207. An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, *even if the employee does not make a claim for the overtime compensation*.
>
> However, where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207.

*Id.* (emphasis added).

3

Notably, the California Supreme Court has indicated its approval of the Ninth Circuit's interpretation of "suffer" and "permit" for purposes of state law wage claims. *See Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000) (citing and quoting *Forrester*); *see also White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 103 (N.D. Cal. 2007) (stating that, to prevail on a claim for overtime based on state law, the plaintiff had to prove that the employer "had actual or constructive knowledge of his alleged off-the-clock work").

The Court is persuaded that the analogy to the overtime cases is appropriate. Reimbursement for expenses is comparable to a wage. In both situations, an employee is owed compensation for services or acts performed for the employer's benefit. In both situations, the compensation is, under governing statutes, owed as a matter of right once incurred or accrued. Both obligations are subject to an anti-waiver provision -- *i.e.*, under California law, there is an anti-waiver provision for wages just as there is for reimbursement. *See* Cal. Lab. Code § 206.5 (providing that "[a]n employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made"); *id.* § 219(a) (providing that "no provision of this article can in any way be contravened or set aside by a private agreement"). And in both cases, there are practical considerations that arise when overtime or expenses may be incurred without the knowledge of the employer and where the employee takes no step to request compensation or reimbursement. In short, the same practical problems raised by RadioShack in the instant case with respect to reimbursement can occur with respect to overtime as well.

The Court therefore concludes that, for purposes of § 2802, before an employer's duty to reimburse is triggered, it must either know or have reason to know that the employee has incurred an expense. Once the employer has such knowledge, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense.[1]

---

[1] As the Court noted in its order granting class certification, the California Supreme Court is considering a somewhat similar matter -- *i.e.*, what is the scope of an employer's duty to *provide* meal periods for its hourly employees; must it *ensure* that its hourly employees take such periods? *See Brinker Rest. Corp. v. Superior Court*, 85 Cal. Rptr. 3d 688 (2008) (vacating Court of Appeal decision). The Court of Appeal concluded that an employer did not have a duty to ensure because the plain language of the statute said that an employer was only obligated to provide a meal period and the term

In the instant case, Mr. Stuart argues that the undisputed evidence establishes as a matter of law that RadioShack had either actual or constructive knowledge that employees were incurring expenses by virtue of using their personal vehicles to perform intercompany store transfers ("ICSTs"). The Court does not agree. It is true that the evidence submitted indicates that RadioShack expected as a general matter that employees would use their personal vehicles to conduct ICSTs, *see* Brooks Decl., Ex. 7 (Schultz Depo. at 22-24), and thus an entry into the database indicating an employee conducted an ICST may provide a reason to know (if not actual knowledge) that a reimbursable expense was incurred. However, based on the record before the Court, the Court cannot conclude as a matter of law that RadioShack had such knowledge or reason to know because there is no evidence as to who within RadioShack logged the information (thus making him or her knowledgeable), or who within RadioShack received or otherwise obtained that information (thus making him or her knowledgeable), and whether any of those persons' knowledge is imputable to the company.

In contrast, RadioShack asserts that, as a matter of law, it has taken all reasonable steps to fulfill its obligation under § 2802 because (1) it has a policy that informs employees that "'[a]n employee who uses his or her own car on business will be reimbursed for mileage,'" except for "'incidental business use of a car within the city or suburbs where the store/office/headquarters is located,'" and (2) it has a policy that informs employees that "'expenses incurred . . . should be clearly listed on the travel claim form found on Answers online or posted on the expenses form within the PeopleSoft T&E system.'" Def.'s Op. Br. at 4. RadioShack argues that these policies are enough because, under California Labor Code § 2856 an employee is required to "substantially comply with all the directions of his employer concerning the service on which he is engaged." Cal. Lab. Code § 2856. Moreover, California Labor Code § 2861 specifies that "[a]n employee shall, on

---

"provide" means to supply or make available. *See Brinker Restaurant Corp. v. Superior Court*, 165 Cal. App. 4th 25, 55 (2008). A decision from the California Supreme Court is pending.

Notably, § 2802 does not simply state that an employer has the obligation to "provide" an employee with reimbursement. Rather, the statute reads: "An employer *shall* indemnify his or her employee . . . ." Cal. Lab. Code § 2802 (emphasis added). Given this language, the Court concludes that the duty of the employer is more expansive than that in *Brinker*, however that duty is ultimately defined by the Supreme Court.

5

demand, render to his employer just accounts of all his transactions in the course of his service, as often as is reasonable." Cal. Lab. Code § 2861.

RadioShack's argument is unavailing for several reasons. First, RadioShack provides no authority holding that §§ 2856 and 2861 define the employer's obligation under § 2802 once it knows or has reason to know that an employee has incurred reimbursable expenses. Indeed, §§ 2856 and 2861 are found in a different article of the California Labor Code than § 2802.[2] Moreover, § 2802 embodies a strong public policy favoring reimbursement; there does not appear to be any significant counterveiling public policy underlying §§ 2856 or 2861. Second, the RadioShack policies quoted above simply indicate to employees that they are entitled to reimbursement under certain circumstances and explain the process by which requests for reimbursement should be made. Contrary to what RadioShack argues, they do not "demand" that an employee submit a request for reimbursement for an expense incurred. *See* Cal. Lab. Code § 2861 (providing that "[a]n employee shall, on demand, render to his employer just accounts of all his transactions in the course of his service"). Hence, RadioShack, by virtue of its cited policies, did not bring § 2861 into play. Promulgation of the policies cited by RadioShack do not in themselves fulfill its obligation under § 2802 if it knew or had reason to know an expense was incurred.

## II. CONCLUSION

For the foregoing reasons, the Court rejects RadioShack's contention that a duty to reimburse is not triggered until an employee makes a request for reimbursement. The Court concludes that the proper inquiry focuses on the employer's state of knowledge. Once an employer knows or has reason to know that the employee has incurred an expense, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is reimbursed for the expense. Promulgating the RadioShack policies alone did not fulfill that duty. However, because the evidence of record does not establish that RadioShack had actual or constructive knowledge of expenses being incurred solely by virtue of the ICST data (absent additional evidence as noted above), the Court **DENIES** Mr. Stuart's motion for partial summary adjudication without prejudice.

---

[2] Sections 2856 and 2861 are in the article titled "Obligations of Employee"; § 2802 is in the article titled "Obligations of Employer."

The Court also denies his motion for preclusion. The Court's interpretation of § 2802 and the scope of employer's legal duty to reimburse thereunder shall be deemed a ruling in limine, defining the applicable law as defined herein for all further proceedings in this case.

This order disposes of Docket Nos. 88, 89, 94, and 96.

IT IS SO ORDERED.

Dated: April 30, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge