SEYFARTH SHAW LLP
Andrew M. Paley (SBN 149699)
apaley@seyfarth.com
David D. Jacobson (SBN 143369)
djacobson@seyfarth.com
2029 Century Park East, Suite 3300
Los Angeles, California 90067-3063
Telephone: (310) 277-7200; Facsimile: (310) 201-5219

Attorneys for Defendant
RADIOSHACK CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

| | |
|---|---|
| RICHARD STUART, individually, and on behalf of all others similarly situated and the California general public; and DOES 1 through 1000, inclusive,<br><br>Plaintiffs,<br><br>v.<br><br>RADIOSHACK CORPORATION, a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. C07-04499 EMC<br><br>[Assigned to Magistrate Judge Edward M. Chen, Courtroom C]<br><br>**DEFENDANT RADIOSHACK CORPORATION'S TRIAL BRIEF**<br><br>Trial Date: October 9, 2009 |

## I. SUMMARY OF POSITIONS

### A. Plaintiffs' Claims

Plaintiffs allege that RadioShack's California retail employees sometimes used their personal vehicles to transfer merchandise between neighboring RadioShack stores.[1] The transfer of merchandise between RadioShack stores is documented on what is called an Inter-Company Stock Transfer ("ICST") form. Merchandise transfers are typically done to satisfy a customer who wants to purchase something that is out of stock at the store he/she is visiting. There are several methods by which a merchandise transfer can be made: the customer can be directed to pick up the merchandise directly from another store that has the product in stock; the store can order the product for the customer online and have it shipped to the customer's home; the product can be shipped from another store via FedEx or UPS; or an employee can travel to another store to pick up the merchandise for the customer. The latter method is the least-preferred option as it takes an employee out of the store. When an employee travels to another store to pick up or deliver product, the employee generally--but not always--uses his/her personal vehicle to drive to and from the neighboring store.

Plaintiffs allege that RadioShack did not reimburse its employees for the costs incurred when employees used their personal vehicles to perform ICSTs. Plaintiffs seek recovery based upon three theories: (1) violation of Labor Code §2802, (2) violation of Business & Professions Code §§17200 *et seq.*, and (3) Private Attorneys General Act ("PAGA") penalties under Labor Code §§2699 *et seq.* as a result of the alleged violation of Labor Code §2802.[2]

---

[1] Mr. Stuart recently passed away. Plaintiff's counsel have moved to substitute two new class representatives, Kimberla Means and Ramon Vargas, in place of Mr. Stuart.

[2] Labor Code section 2802 is the basis for all of Plaintiffs' claims. That statute reads, in pertinent part, as follows: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the direction of the employer…"

1

B. **RadioShack's Position**

RadioShack denies that it violated Labor Code §2802 and denies that any Class Member has been damaged in any manner whatsoever. An employee's request for reimbursement is required before a duty to "indemnify" is triggered under Labor Code section 2802. RadioShack's travel policies in effect during the Class Period allowed for reimbursement in accord with California law. Employees are required to fill out a form in order to be reimbursed, specifying the amount to be reimbursed and the reason the expense was incurred. A store employee's request for reimbursement generally requires the approval of the District Manager. It was the practice of several District Managers to approve all reasonable requests for mileage reimbursement. Most of the class members never requested reimbursement. Employees sometimes purposefully ignored RadioShack policy and traveled to neighboring stores to obtain out of stock merchandise--instead of sending a customer to the other store--to ensure that the employee would receive credit for the sale, thereby boosting the income of the employee with spiffs and/or commissions. Such trips were made on the employee's own initiative to increase their income, not because anyone at RadioShack directed such actions as part of the "direct consequence of [the employee's] duties or of his/her obedience to the directions of the employer."

Because the Court has indicated its intention to enter summary judgment in Plaintiffs' favor as to liability with regard to their claims under section 2802, RadioShack will not address the liability issues here in detail.

With respect to Plaintiffs' PAGA claim, unlike wage statutes, which require payment at least twice per month, section 2802 does not specify a time for payment. Therefore, payment can be made at any time, and, at most, there is only one PAGA violation per employee. Additionally, PAGA penalties are discretionary; under the facts of this case, where the amount of potential reimbursement averages only a few dollars per employee each month, it would be

unjust and confiscatory, and a violation of the Eighth Amendment to the United States Constitution, to award PAGA penalties of more than $100 per person for violations of section 2802.

Because the Court has bifurcated trial of this matter with Phase One focusing on Plaintiffs' section 2802 claims and Phase Two focusing on their claims under the Unfair Competition Law (Business and Professions Code section 17200 et seq.) and PAGA penalties, RadioShack will limit this brief to the section 2802 claims, and present appropriate briefing with respect to the Phase Two issues after the completion of Phase One.

## II. RELEVANT PROCEDURAL HISTORY

### A. Class Certification

On February 5, 2009, the Court certified a class of "all persons employed by RadioShack within the State of California, at any time from June 3, 2003, to the present, who drove their personal vehicles to and from RadioShack Stores and who were not reimbursed for mileage." On February 12, 2009, the Court clarified its order regarding certification as follows: "The certified class consists of all persons employed by RadioShack within the State of California, at any time from June 3, 2003, to the present, who drove their personal vehicles to and from RadioShack Stores *to carry out ICSTs* and who were not reimbursed for mileage. Both Plaintiff and Defendant agree and have understood, as has th[e] Court, that the scope of this litigation is restricted to reimbursement for ICSTs." (Emphasis in original)

### B. The Court's Order Regarding The Duty To Reimburse

Central to the claims asserted by Plaintiffs is the question of when the duty to reimburse arises. RadioShack asserts that there is no duty to reimburse until an employee submits a claim for reimbursement, thereby informing the employer of the amount of reimbursement requested and the reason for the reimbursement. Under section 2802, which is an "indemnity" statute, there is no duty to reimburse until the employee makes a request for reimbursement or otherwise puts the

employer on notice that the employee needs to be indemnified for an expense incurred on behalf of the employer. The overwhelming majority of employees never submitted a request for reimbursement.[3]

The Court asked for briefing on the duty to reimburse under section 2802 and, after argument, ruled that employees do not need to submit a request for reimbursement to trigger the employer's duty to reimburse under Labor Code section 2802. By Order dated April 30, 2009, the Court ruled that "once an employer knows or has reason to know that the employee has incurred an expense, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is reimbursed for the expense." Order dated April 30, 2009 at 6:20-23. The Court found that promulgating policies to be followed in order to obtain reimbursement did not, alone, fulfill its obligations under section 2802 if RadioShack knew or had reason to know that an expense was incurred.

### C. Summary Judgment Re Liability

The parties stipulated to certain facts. The Court has indicated that it intends to enter summary judgment in favor of Plaintiffs on their Labor Code section 2802 claim and on RadioShack's affirmative defenses of estoppel and laches. The Court previously bifurcated trial with the first phase focusing on Plaintiffs' section 2802 claim and the second phase focusing on Plaintiffs' claims for restitution under Business & Professions Code section 17200 and penalties under the Private Attorneys General Act (PAGA) in Labor Code section 2699. Assuming the Court enters summary judgment as indicated, the following issues remain to be tried:

Phase One:

The amount of damages, if any, that can be recovered pursuant to section 2802 for reimbursement of expenses incurred by RadioShack employees who used their personal vehicles to transfer merchandise between stores. The key questions

---

[3] Plaintiff Stuart admits that he knew that he could be reimbursed for mileage for ICSTs that he performed, but he did not fill out the form to request reimbursement because it "wasn't worth it" for such small amounts.

are the number of merchandise transfers that were actually made by Class Members using their personal vehicles during the Class Period, and the distances traveled in connection therewith.

Phase Two:

1. The amount of restitution, if any, that is appropriate under Business & Professions Code section 17200.[4]

2. The amount of penalties, if any, that is appropriate under Labor Code section 2699.

This brief focuses on the issues remaining in Phase One of the trial.

### D. Stipulation as to a Bench Trial

On September 23, 2009, the parties stipulated that this matter can be tried to the Court on all remaining issues.

## III. RELEVANT FACTS

On September 22, the parties submitted to the Court a list of stipulated facts. RadioShack now sets forth additional facts relevant to Phase One of this trial.

### A. RadioShack's Merchandise Transfer Policy

#### 1. *ICST Policy*

The majority of the merchandise in RadioShack's stores is shipped from corporate distribution centers. Sometimes, a particular item might become out of stock at a store before the store manager or distribution center is able to replenish the item. When that happens, company policy allows for transfers between stores to satisfy a customer, but only as a *"last resort, reserved for situations when merchandise is not available by any other means."* See Store Transfer Policy dated

---

[4] Plaintiffs claim they are also entitled to "disgorgement." It is unclear what "disgorgement" Plaintiffs seek. However, "disgorgement" of anything other than "restitution of 'money that once had been in the possession of the person to whom it [is] to be restored'" is not a proper remedy under the UCL. Restitution under the UCL is limited to restoring money or property to those who lost it as a result of the defendant's unfair business practices, and disgorgement is available as a UCL remedy only to the extent it constitutes restitution. *Feitelberg v. Credit Suisse First Boston, LLC,* 134 Cal. App. 4th 997 (2005).

February 15, 2006. The company policy regarding ICSTs specifically provides as follows: "*[d]ue to the labor expense, shipping costs, and productivity losses associated with transfers, they must be viewed as a last resort solution and should be used only when absolutely necessary to satisfy a customer.*" Id.

Nevertheless, many employees ignore the policy, and perform ICSTs using their personal vehicles, typically because they want to ensure that they get credit for the sale. For example, Ramon Vargas admits that he routinely ignored RadioShack's policy regarding ICSTs and did not send customers to other stores or ask if out of stock merchandise could be delivered to a customer's home, because he wanted to ensure that he would receive "spiffs" and/or commissions for the sale. Thus, rather than follow RadioShack's policy, Mr. Vargas would ask the customer to return the next day so he (Mr. Vargas) could travel to another store to obtain the out of stock merchandise, so he could ring up the sale and receive credit (thereby increasing his compensation).

    2. *Documentation of Inter-Company Stock Transfers*

RadioShack documents transfers of merchandise between stores on an ICST form. The ICST form contains a place to indicate the manner in which the transfer was made. Thus, if the merchandise is delivered to the receiving store via the preferred method of Federal Express, the employee is supposed to indicate "*Federal Express*" in the "*shipped via*" portion of the ICST form. If a customer picks up the merchandise, the ICST form is supposed to indicate "*customer pick-up.*" If the last resort of physical transfer by a store employee is used, the name or initials of the store employee who picked up or delivered the merchandise is supposed to be entered in the "*Shipped via*" portion of the ICST form.

Beginning in 2007, the process for completing the ICST form was changed slightly. An employee entering an ICST was given a list of options for the method of delivery. The options are "Fedex," "Customer," "Employee," "Swap Meet" and "Dist. Mgr." If the employee selects "Employee," he/she is then prompted to enter

the name of the employee who physically transfers the merchandise.

In many instances, however, employees do not properly fill out the ICST form. Thus, for example, there are ICST forms that appear to indicate that an employee personally transferred merchandise from RadioShack stores in Hawaii to the mainland. The ICST forms indicate that the method of transfer was "employee" and contain employee names in the "remarks" or "description" fields, when it is obvious that employees did not drive their cars to transfer merchandise from Hawaii to the mainland. Similarly absurd examples abound, reflecting ICSTs performed by employees between California and Miami, New Hampshire, and other locations where it is obvious that an employee did not actually drive his/her car to deliver the merchandise. Additionally, ICST forms were sometimes used to track/account for merchandise that was returned by customers, or to correct prior merchandise transfers that had been entered in error. In those instances, the ICST is a paper transaction only, with no merchandise traveling between stores. Many ICSTs lack any indication of the method of transfer. The purpose of the ICST information was to track inventory in RadioShack's inventory, not to identify which employee performed an ICST or how far he/she traveled.

## IV. ANALYSIS OF POTENTIAL DAMAGES

### A. Labor Code Section 2802 Claim

The statute of limitations period for section 2802 is three years from the filing of the complaint. Thus, the relevant limitations period for Plaintiffs' section 2802 claim begins June 7, 2004. RadioShack produced a database of all merchandise transfers in California beginning in January 2003.[5] There are approximately 1 million merchandise transfers in this database. The database contains all inter-company stock transfers, regardless of manner of transfer, *i.e.* FedEx, UPS, customer pick-up, employee transfer, as well as entries that, upon

---

[5] The statute of limitations for Plaintiffs' claim for restitution under Bus. & Prof. Code sections 17200 *et seq*. goes back four years—to June 7, 2003.

closer examination, are not inventory transfers at all—they are paper transactions that were done to account for customer returns, restocking of merchandise, or correction of prior transfers that were entered in error.

RadioShack has examined all of the entries in the database, and endeavored to eliminate obvious non-personal transfers such as those performed by UPS, FedEx, customer pick-up, out of state transfers, as well as those that are outside of the statutory period, or are otherwise obviously not actual merchandise transfers. RadioShack then examined the remaining entries to determine if the name or initials listed in the "shipped via" or "description" fields could be matched to an employee's name that appears on the Final Payroll Attendance Reports for the transferor or transferee stores at the time of the merchandise transfer. After filtering the ICST database in this manner, RadioShack believes that, at most, there are approximately 175,489 potential employee personal transfers during the statutory period for claims under section 2802. RadioShack does not believe that all of these ICSTs are in fact personal merchandise transfers. Additionally, simply because a merchandise transfer was performed by an employee does not mean that it gives rise to a claim for reimbursement under section 2802. For example, in crowded major metropolitan areas such as San Francisco, it is likely that the employee performed the transfer using public transportation, rather than using a personal vehicle.

Nonetheless, RadioShack has calculated the driving distance for every potential personal ICST by use of a commercially available mapping program.[6] RadioShack applied the actual IRS reimbursement rates in effect at the time of each potentially personal ICST. Using the actual IRS reimbursement rates, and the actual driving distance for each ICST, the maximum possible damage recoverable by Plaintiffs is $1,081,334 pursuant to their section 2802 claim.

---

[6] RadioShack calculated the distance round-trip. However, employees sometimes picked up/dropped off product on their normal commute and therefore, at most, drove only one-way in the course of performing some merchandise transfers.

RadioShack intends to present its calculations in rebuttal to whatever evidence Plaintiffs present regarding damages. Plaintiffs bear the burden of proof on all elements of their claims and cannot rely on RadioShack's calculations to meet their burden.

Dated:  September 29, 2009

SEYFARTH SHAW LLP

By:  \_\_/s/  David D. Jacobson\_\_
     Andrew M. Paley
     David D. Jacobson
Attorneys for Defendant
RADIOSHACK CORPORATION

Email: djacobson@seyfarth.com

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action; my business address is 2029 Century Park East, Suite 3500, Los Angeles, CA 90067-3021.

     On September 29, 2009, I served the following described document(s) on the interested parties in this action:

**DEFENDANT RADIOSHACK CORPORATION'S TRIAL BRIEF**

**[XX] Electronically by using the Court's ECFCM System on the following parties:**

Stephen Glick, Esq.
Law Offices of Stephen Glick
1055 Wilshire Blvd., Suite 1480
Los Angeles, CA 90017
Attorneys for Plaintiff Richard Stuart

Scott A. Brooks, Esq.
Daniels, Fine, Israel, Schonbuch & Lebovits LLP
1801 Century Park East, Ninth Floor
Los Angeles, CA 90067

**AND**

**[XX] (VIA U.S. MAIL)**

     [xx] by placing the true copies thereof enclosed in sealed envelopes, addressed as stated below on the following parties:

Ian Herzog, Esq.
Law Offices of Ian Herzog
233 Wilshire Blvd., Suite 550
Santa Monica, CA 91401

Craig S. Momita, Esq.
Daniels, Fine, Israel, Schonbuch & Lebovits
1801 Century Park East, Ninth Floor
Los Angeles, CA 90067

     [xx] As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after day of deposit for mailing in affidavit.

Executed September 29, 2009, at Los Angeles, California.

**[XX] (FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*Lisa A. McMihelk*
Lisa A. McMihelk

LA1 6902428.2

Certificate of Service
Case No. CV07-04499 EMC