1   Law Offices Of Stephen Glick
    Stephen Glick (SBN 59404)
2   *sglick@glicklegal.com*
    1055 Wilshire Blvd., Suite 1480
3   Los Angeles, CA 90017
    Telephone:   (213) 387-3400
4   Facsimile:   (213) 387-782

5   Daniels, Fine, Israel, Schonbuch & Lebovits, LLP
    Scott A. Brooks (SBN 160115)
6   *brooks@dfis-law.com*
    1801 Century Park East, Ninth Floor
7   Los Angeles, California 90067
    Telephone (310) 556-7900
8   Facsimile (310) 556-2807

9   Law Offices Of Ian Herzog
    Ian Herzog (SBN 41396)
10  *IH@avlaw.info*
    233 Wilshire Boulevard, Suite 550
11  Santa Monica, California 90405
    Telephone (310) 458-6660
12  Facsimile (310) 458-9065

13  Class Counsel and Attorneys for Plaintiffs

14

15                  UNITED STATES DISTRICT COURT

16        NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

17

18  RICHARD STUART, individually, and          Case No. C07-04499 EMC
    on behalf of all others similarly situated
    and the California general public; and     [Assigned to Magistrate Judge Edward
19  DOES 1 through 1000, inclusive,            M. Chen, Courtroom C]

20                                             **NOTICE OF MOTION AND
                    Plaintiffs,                MOTION FOR ORDER**
21           v.
                                               **(1)PRELIMINARILY
22  RADIOSHACK CORPORATION, a                     APPROVING CLASS
    Delaware corporation; and DOES 1             ACTION SETTLEMENT;**
23  through 100, inclusive,
                                               **(2) APPROVING FORM AND
24                  Defendants.                    METHOD OF NOTICE;**

25                                             **(3) ESTABLISHING
                                                  OBJECTION AND CLAIM
26                                                PROCEDURES; AND,**

27                                             **(4) SCHEDULING FINAL
                                                  FAIRNESS HEARING**
28

                                                        C07-04499 EMC
    NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
                          CLASS ACTION SETTLEMENT

Date:  April 7, 2010
Time:  10:30 a.m.
Courtroom:  C

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE THAT** on April 7, 2010 commencing at 10:30 a.m. in Courtroom C of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Edward M. Chen, Plaintiffs Kimberla Means and Ramon Vargas and the Class will and hereby do move the Court for an order (1) preliminarily approving the class action Settlement; (2) approving the form and method of service of notice of this class action settlement; (3) establishing a procedure for members of the settlement class to object or submit a Claim Form; (4) scheduling a hearing on Plaintiffs' Motion for Final Approval of the settlement, all as more particularly set forth in the Memorandum of Points and Authorities that follows.

This motion will be made pursuant to the Court's inherent power to supervise class action litigation and the settlement of class action cases, on the ground that, after protracted litigation, Plaintiffs have reached a proposed settlement with Defendant RadioShack Corporation ("Defendant"), which the parties believe provides fair, just, and reasonable compensation to unnamed members of the settlement class who allegedly were not provided reimbursement for expenses incurred in performing Inter-Company Store Transfers.  The parties desire to give notice of the action and the proposed Settlement to members of the Settlement Class

2

1   and to hold a hearing as to whether the Settlement should be finally

2   approved.  Counsel for Plaintiffs and Defendant have met and conferred

3   regarding this Motion for the Court's preliminary approval of the

4   Settlement Agreement and Defendant supports this Motion.

5       This motion is based on the Memorandum of Points and

6   Authorities, the Declaration of Scott A. Brooks filed concurrently

7   herewith, the proposed Order, and all other records and papers on file in

8   this action.

9

10  February 24, 2010      LAW OFFICES OF IAN HERZOG

11                          LAW OFFICES OF STEPHEN GLICK

12
                            DANIELS, FINE, ISRAEL,
13                          SCHONBUCH & LEBOVITS, LLP

14

15                          By:_____

16                                  Scott A. Brooks
                            Class Counsel and Attorneys For Plaintiffs
17

18

19

20

21

22

23

24

25

26

27

28

C07-04499 EMC
NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................1

I.   INTRODUCTION AND FACTUAL BACKGROUND ........................... 3

   A.   Plaintiff's Allegations ................................................ 3

   B.   Litigation History ..................................................... 3

II.  THE SETTLEMENT ....................................................... 5

   A.   Settlement Terms ..................................................... 4

      1.   Definition of the Settlement Class .................................. 7

      2.   Settlement Benefits and Settlement Payment Calculation  7

      3.   Notice to Class Members And Estimated Costs
         of Notice................................................................ 11

      4.   Release of Claims .................................................... 12

      5.   Class Counsel's Fees and Expenses, and Enhancements
         To the Named Plaintiffs        12

III. THE TWO STEP APPROVAL PROCESS................................................13

IV.  THE PROPOSED SETTLEMENT MEETS THE CRITERIA
   FOR PRELIMINARY APPROVAL........................................................16

   A.   The Experience And Views of Class Counsel and
      Defense Counsel.......................................................16

   B.   Discovery Conducted in the Case.................................................18

   C.   The Risks Inherent In Trial And Appeal And
      Attendant Delays.......................................................19

i

D.   The Settlement Is Fair and Reasonable ..................................... 20

E.   The Court Should Schedule A Final Fairness Hearing ............... 21

V.   CONCLUSION ............................................................................ 22

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

ii

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT

F:\SAB\PLDG\2637.002\2637.002.Motion for Preliminary Approval.Rev2.doc

# TABLE OF AUTHORITIES

## Cases

*Hammon v. Barry*, 752 F. Supp 1087 (D.D.C. 1990) .....................................17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ....................16

*Mars Steel Corp. v. Continental Illinois Bank and Trust Co.*, 834 F.2d 677, (7th Cir. 1987) ..........................................................................17

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982)....................................................16

*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797...................................11

*Sav-On Drug Stores, Inc. v. Superior Court*, (2004) 34 Cal.4th 319............18

## Statutes

California Code of Civil Procedure § 1542....................................................12

California Labor Code § 2699 ...............................................................2, 10

California Labor Code § 2802....................................................... 3, 4, 5, 20

## Rules

Federal Rule of Civil Procedure 23 ...........................................................16

## Treatises

Conte & Newberg, *Newberg on Class Actions* (4th ed.) § 10:12 ......8, 13, 14, 17

*Manual for Complex Litigation*, Third, § 30.41 ............................... 14, 16, 22

iii

F:\SAB\PLDG\2637.002\2637.002.Motion for Preliminary Approval.Rev2.doc

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Kimberla Means and Ramon Vargas and the Class (collectively "Plaintiffs") submit this Memorandum of Points and Authorities in support of their Motion for Preliminary Approval of a Proposed Class Action Settlement.

The Stipulation Of Settlement (the "Settlement Agreement", attached hereto as Exhibit 1 to the Declaration of Scott A. Brooks), was entered into after several formal settlement conferences before the Honorable Joseph Spero of the United States District Court for the Northern District of California.  Subject to approval by this Court, the Agreement provides benefits to Class Members, including the following:

1.   Defendant will pay a Gross Settlement Amount of $4.5 Million into a Settlement Fund for Class Members who were employed in RadioShack retail stores in California during the Class Period *i.e.,* June 3, 2003 through October 1, 2009;

2.   Each Class Member will be compensated based on the number of weeks worked in a retail store in California during the Class Period;

3.   Class Members will be permitted the options of making a claim, objecting to the proposed settlement or declining to make a claim so that their portion of any settlement proceeds will be donated to the three charitable organizations designated as recipients of cy pres relief.  There will be **no** reversion to Defendant of any

1

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1   settlement monies, even those unclaimed, all of which will be

2   paid to the charitable organizations as cy pres relief;

3   4.   From the Settlement Fund, Plaintiff Kimberla Means and Ramon

4   Vargas will be paid up to a maximum of $5,000.00 each as

5   Incentive Awards, upon approval of the Court;

6

7   5.   All costs of notice, claim administration and distribution

8   (presently estimated at $70,489.60) will be paid out of the

9   Settlement Fund;

10

11   6.   Class Counsel may apply to the Court for attorney's fees of no

12   more than $1,500,000.00 in addition to costs/expenses;

13

14   7.   A payment of $50,000.00 will be made to the Labor Workforce

15   Development Agency in consideration of the settlement of

16   penalties under Labor Code §§ 2699 *et seq*.

17

18   Submitted herewith is a proposed Notice Of Preliminary Approval Of

19   Settlement And Final Approval Hearing ("Notice") to the Class Members

20   which will inform Class Members of the terms of the Settlement Agreement

21   including the release of claims.  Via the Notice, Class Members will be

22   informed of their options in responding to the proposed Settlement,

23   including the right to file claims or to submit objections with the Court and

24   to be heard on such objections.  The Notice is attached as Exhibit A to the

25   Settlement Agreement (Exhibit 1).  In addition, a proposed Claim Form And

26   Release is submitted herewith and attached as Exhibit B to the Settlement

27   Agreement.

28

2

The Settlement Agreement meets the standards for preliminary approval.

# I.   INTRODUCTION AND FACTUAL BACKGROUND

## A.   Plaintiffs' Allegations

On June 7, 2007, plaintiff Richard Stuart filed a putative class action lawsuit against RadioShack Corporation in Alameda County Superior Court, *Richard Stuart, et al. v. RadioShack Corporation*, Case No. RG07329680, alleging that RadioShack violated California's Labor Code § 2802 and Unfair Competition Law by failing to reimburse its employees for mileage they incurred in performing Inter-Company Stock Transfers, seeking damages, penalties, interest, disgorgement of profits, injunctive relief, and attorneys' fees and costs.

## B.   Litigation History[1]

On August 8, 2007, RadioShack removed the action to this Court. In accordance with the Federal Rules of Civil Procedure, the parties exchanged data and documents regarding the ICSTs.

By Order dated February 5, 2009, the Court certified a class of "all persons employed by RadioShack within the State of California, at any time from June 3, 2003, to the present, who drove their personal vehicles to and from RadioShack stores and who were not reimbursed for mileage." On February 12, 2009, the Court modified the February 5 Order, redefining the class as: "all persons employed by RadioShack within the State of California, at any time from June 3, 2003, to the present, who drove their personal vehicles to and from RadioShack stores to carry out ICSTs and who were not reimbursed for mileage."

---

[1] The pertinent facts are set forth in the Declaration of Scott A. Brooks.

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

C07-04499 EMC
NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

1   During the course of the Litigation, Richard Stuart passed away.  On

2   October 6, 2009, Plaintiffs Kimberla Means and Ramon Vargas were

3   substituted in place of Richard Stuart as class representatives.  Kimberla

4   Means was substituted as a class representative as to the Labor Code § 2802

5   claim and the Unfair Competition Law claim.  Ramon Vargas was

6   substituted as a class representative as to all claims.

7   Throughout this period, the issue of the ICST data was addressed by

8   counsel through formal discovery, including the depositions of persons most

9   knowledgeable designated by Defendant on issues such as the records of

10  ICSTs maintained on computer, as well as the policies, practices and

11  procedures regarding reimbursement, record-keeping, and performance of

12  ICSTs.

13  In addition, the parties engaged in substantial briefing on the core

14  issues raised by the claims and defenses, at the Court's invitation and

15  direction.  On April 1, 2009, the parties filed cross-motions regarding

16  "exhaustion of remedies" *i.e.*, defining an employer's obligation to reimburse

17  employees for mileage.  On April 30, 2009, the Court filed its Order Re

18  Cross-Motions Re Exhaustion Defense holding that the exhaustion defense

19  was not viable but that Plaintiff had not set forth sufficient evidence to

20  obtain judgment on the issue.

21  The Court also ordered the parties to submit briefing on the issues (1)

22  whether due diligence is sufficient to constitute a defense;  and, (2) what

23  equitable defenses could be asserted against the claim for violation of §

24  2802.

25  On July 9, 2009, following briefing by the parties regarding the form

26  and content of the notice to the class, the Court ordered notice to issue by

27  July 24, 2009.

28

4

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

On August 18, 2009, the Court ordered that the parties brief the issues of 1) whether equitable defenses could be asserted against Plaintiffs' claim under the Private Attorneys General Act of 2004 and 2) how damages would be measured under the PAGA claim.  On August 28, 2009, the Court issued an order holding that the  affirmative defenses of equitable estoppel and laches could not be asserted to defeat Plaintiffs' claims.

On September 2, 2009, the Court issued an order further defining an employer's duty to reimburse employees under § 2802 and precluding Defendant from taking depositions of class members and employees on specified issues.

The matter was set for trial several times throughout the pendency of the case, lastly to begin on October 13, 2009.  However, it became clear that the Court could proceed to determine the core liability upon stipulated facts. Thus, the parties worked out a set of stipulated facts intended to provide the Court with those necessary for a determination of liability without the need for trial, which were filed on or about September 22, 2009.

It was at this point that the matter settled.  The foregoing demonstrates that the settlement was forged in the fires of litigation and was the antithesis of collusion.

## II.    THE SETTLEMENT

The parties agreed to formal private mediations with Joel Grossman on July 7, 2008 and another formal private mediation session on December 22, 2008, with Michael Wolfram.  Neither of these efforts were successful. On July 20, 2009, the Court ordered the parties to an emergency settlement conference before the Honorable Joseph C. Spero.  The first session on August 12, 2009, was not successful although it was helpful in revealing that the parties had differing notions of the potential damages based on their

5

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1   analysis of the ICST data and which suggested a difference in their respective

2   methodologies for analyzing the data.  The parties were ordered to put

3   together analyses of mileage calculations.

4         On September 4, 2009, RadioShack provided mileage calculations for

5   some 270,000 ICSTs which it contended were for all potential transfers by

6   employees.  At that point, Plaintiffs had analyzed some 15,000 ICSTs.

7   Subsequent analyses allowed the parties to identify the differences in their

8   mileage calculations and so the potential damages under their respective

9   theories of liability.

10        The parties were ordered to an additional session on October 1, 2009

11  before Judge Spero.  This mediation effort was successful, and after having

12  negotiated through Judge Spero at arms-length and in good faith, the

13  principal terms of the Agreement were reached and placed on the record.

14        The Settlement Fund of $4.5 Million, after payment of attorney fees,

15  expenses and costs advanced, costs of administration and enhancements to

16  the Class Representatives provides a substantial recovery to the Class of

17  mileage expenses, penalties and interest.  (Brooks Decl. at ¶ 16.)  Class

18  Counsel conducted the negotiations with a view toward achieving substantial

19  benefits for the Class while avoiding the cost, delay and uncertainty of

20  further litigation, trial, and in particular, appellate review.  (Brooks Decl. at ¶

21  16.)  As the briefing ordered by the Court at during the litigation established,

22  there is scant authority on the legal issues involved and even with a trial on

23  stipulated facts, appellate proceedings were all but certain to be initiated

24  with the concomitant uncertainty of the outcome.  (Brooks Decl. at ¶ 16.)

25        As a result of the negotiations, and Class Counsel's investigation,

26  analysis and discovery, Plaintiffs and Class Counsel determined that it was in

27  the best interests of the Class to enter into the proposed Settlement.  (Brooks

28  Decl. at ¶ 17.)  Plaintiffs and Class Counsel believe the proposed Settlement

6

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1    to be fair, reasonable, adequate and in the best interests of Plaintiffs and the

2    other members of the Class, and that the proposed Settlement represents a

3    successful resolution of the disputed claims against Defendant.  (Brooks

4    Decl. at ¶ 17; Settlement Agreement at p. 26, ¶ 27.)

5         The proposed Notice to the Class Members informs Class Members of

6    the general terms of the Agreement with an addendum setting forth the

7    release language, their options in terms of responding to the proposed

8    settlement, including the right to make a claim or to file objections with the

9    Court and to be heard on such objections.  (See Notice, Exhibit A to

10   Settlement Agreement, Exhibit 1 to Brooks Decl.)   The parties further

11   propose a Claim Form, attached as Exhibit B to the Settlement Agreement.

**A.    Settlement Terms**

**1.    Definition of the Settlement Class**

12   The Class is defined in the Settlement Agreement as, "all persons

13   employed by RadioShack within the State of California, at any time from

14   June 3, 2003, to October 1, 2009, who drove their personal vehicles to and

15   from RadioShack stores to carry out ICSTs and who were not reimbursed for

16   mileage, and who did not opt out of the Litigation in response to the Notice

17   of Class Certification."  (Settlement Agreement at p. 4, ¶ 4.)

**2.    Settlement Benefits and Settlement Payment**
**Calculation**

18   Defendant is providing substantial compensation to Class Members in

19   exchange for a release narrowly tailored to only those claims pled in this

20   action.  The total settlement amount is $4.5 Million and the payment to each

21   Class Member will be a flat amount for each week each Class Member

22   worked during the Class Period.  This method is intended to balance the

23   interests of the entire Class as against the difficulties and costs in

27

28

7

1   determining the damages arising from hundreds of thousands of ICSTs, for

2   its near 14,000 members, especially where the task is complicated by

3   concerns over the accuracy and completeness of Defendant's records.  See

4   *e.g.*, Conte & Newberg, *Newberg on Class Actions* (4th ed.) § 10:12 at pp.

5   505-507.

6          Prior to and during the settlement negotiations, Plaintiffs obtained

7   extensive information and data regarding the ICSTs performed by the Class

8   during the Class Period.  This data included the computerized records of the

9   ICSTs with data fields showing the date of each transfer and the points of

10  travel from which the distances could be calculated.  And while there was a

11  data field for the identity of the person performing the transfer, the field was

12  not always completed, the data was fragmentary *e.g.*, a first name only, etc.

13  This latter data field became a point of dispute between the parties in their

14  efforts to identify the employee that performed the ICSTs.

15         The Class is compromised of approximately 14,278 current and former

16  employees who performed approximately 372,741 ICSTs during the Class

17  Period.  These same employees represent 1,003,012 work weeks during the

18  ///

19  ///

20  ///

21

22

23

24

25

26

27

28

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

8

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

Class Period.  Based on the sampling performed by the parties, the average

roundtrip mileage for an ICST was 13.86 miles.  The IRS rates during the

Class Period were:

| Date | IRS Rate | ICSTS |
|---|---|---|
| 2003 | 36¢ | 63,745 |
| 2004 | 37.5¢ | 52,690 |
| 1/1/05-8/31/05 | 40.5¢ | 48,509 |
| 9/1/05-12/31/05 | 48.5¢ | 29,296 |
| 1/12/06-12/31/06 | 44.5¢ | 78,785 |
| 1/1/07-12/31/07 | 48.5¢ | 57,957 |
| 1/1/08-6/30/08 | 50.5¢ | 28,285 |
| 7/1/08-12/31/08 | 58.5¢ | 13,474 |

Avg. Rate: 42¢      Total:  372,741

Using the average IRS mileage rate (calculated per month) of 42¢

multiplied by the average miles per ICST of 13.86 multiplied by the total

number of ICSTs of 372,741,[2] the total mileage expenses are $2,169,799.90.

Using the actual number of ICSTs during each of the discrete time periods

and the corresponding actual mileage rate in effect for the period, the total

mileage expenses are $2,243,883.27.  This would be the total estimated

damages for the Class.  The 10% simple interest on the latter is an additional

---

[2] The exact number of ICSTs performed by employees was a source of dispute between the parties and this analysis uses Plaintiffs' figure which is larger than Defendant's and so is more conservative *i.e.*, greater potential damages.  A smaller number of ICSTs would argue that the Class' recovery is even more substantial.

9

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1   $1,004,524.70 for a total potential damages for unpaid mileage expenses and

2   interest of $3,248,407.97.

3        The total amount to be paid to the Class Members would be as follows

4   Total Settlement Amount      $4,500,000

5   Fees and Costs               -$1,540,000[3]

6   Claim Admin. Costs           -$70,489.60

7   PAGA penalties to LWDA       -$50,000

8   <u>Class Rep. Enhancements</u>    <u>-$10,000</u>

9   To Be Paid To Class          =$2,829510.40

10   This amount represents 87% of the total potential damages and

11   interest.  While this does not account for penalties,[4] it still represents an

12   extremely substantial recovery for the Class.

13        The payments to the Class are based on the number of work weeks

14   each Class Member worked.  When divided by the number of work weeks,

15   the total amount to be paid to each Class Member per work week would be

16   $2.82 (=2,829510.40/1,003,012).

17        The average number of work weeks of the Class Members is 70.2.  At

18   $2.82 for each work week, the average pay out for the Class would be

19   $197.96 (=70.2 x $2.82).  The estimated average mileage expense per ICST

20   would be $5.82 (=13.86 x 42¢).  Thus, the average payout would provide

21   reimbursement for 34 ICSTs of average roundtrip mileage.

---

[3] For purposes of this analysis, Class Counsel has estimated costs and expenses at $40,000 which includes *e.g.*, $15,000 in notice costs.

[4] The amount of any penalties would be within the Court's discretion and so not easily determined.  Labor Code § 2699(e)(2).  Plaintiffs argued that Labor Code § 2699(f)(2) provides an initial $100 penalty and an additional $200 penalty per pay period for each violation.  With 14,000 employees in the Class, even a single violation per employee for one pay period could provide the basis for substantial penalties.

10

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

### 3.   Notice to Class Members And Estimated Costs of Notice

Notice and distribution of the settlement funds to Class Members shall be made by the claims administrator.  Plaintiffs propose Simpluris, Inc. in Irvine, California as the notice and claim administrator in this case, the same company which was approved by the Court and employed to send out the initial notice of certification.

Pursuant to the terms of the Settlement Agreement (see Settlement Agreement at p. 10, "Notice of Class Settlement"), within thirty (30) calendar days following the granting of preliminary approval, Defendants are to provide a list of the Class Members to Simpluris along with last known addresses and social security numbers from Defendants' records.

Within fifteen (15) calendar days thereafter, Simpluris will update the addresses information through the National Change of Address Database (NCOAD), or similar method(s) available to secure current address information, and mail the Notice and the Claim Form to the Class Members. Plaintiffs submit that because the contact information is taken from employment records and will be updated before mailing, this proposed notice program provides an adequate and suitable process well-aimed at providing actual notice to the Class in accordance with due process.  (*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 812–813.)

The Notice itself (Exhibit A to Settlement Agreement) is clear and written plainly, divided into sections to address potential questions by Class Members.  It advises the Class Members of all aspects of the settlement and the approval process, and includes an exemplar calculation of potential awards and all of the factors involved.  The format of the notice is derived from the model class notice used by the Federal Judicial Center (see,

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

www.fjc.gov).  Pursuant to the Agreement, the claim period is forty-five (45) days with 30 days to submit objections.

The estimated costs of Notice, which include updating addresses, various re-mailing requirements and processing all other aspects of the claims administration is expected to cost approximately $70,489.60. (Brooks Decl. at ¶ 18.)

### 4.    **Release of Claims**

The Settlement Agreement as well as the proposed Claim Form contain a narrow and limited release of claims being only those claims alleged in the complaint.  (Settlement Agreement at pp. 7-8, § III(3)(a-b).)  The release was negotiated and drafted so that it would <u>not</u> release other claims which the Class Members may have arising from their employment with Defendant. Therefore, while the release is intended to and does resolve all claims alleged in the complaint, including a waiver under California Code of Civil Procedure § 1542 (again limited to those claims being released), it will not affect other claims the Class Members may have arising from their work for Defendant.

### 5.    **Class Counsel's Fees and Expenses, and An Enhancement to the Named Plaintiffs**

Class Counsel will move the Court at the time of final approval for an award of fees of no more than forty percent (33.33%), or $1.5 million, and will also seek costs and expenses which are presently estimated at $40,000 and includes such items as the costs of mailing the initial notice.  This figure is consonant with the amount of attorney time and expense which have been expended in prosecuting the claims on behalf of Plaintiffs and the Class and achieving the substantial benefits provided by the Settlement.

The Settlement also takes into account a combined enhancement of not more than $10,000.00 ($5,000 each) to be paid to the two named

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

C07-04499 EMC
NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

representative plaintiffs.  This amounts are appropriate in this case, for Ms. Means and Mr. Vargas stepped forward after Mr. Stuart's demise to assist Class Counsel in the prosecution of the claims and so undertaking risks, the most notable being the risk that they would not prevail at all and so be subject to payment of costs, which could be substantial.  This was a risk that they bore alone, even though any benefits obtained on behalf of the Class through their efforts would be shared.

## III.   THE TWO STEP APPROVAL PROCESS

Pursuant to FRCP Rule 23(e) any settlement of class litigation must be reviewed and approved by the Court.  This is done in two steps: an earlier conditional review by the trial court and then a detailed review after the period during which notice is distributed to the class members for their comment or objections.  *Newberg on Class Actions* (4th Ed.), the "bible of class actions", discusses the process for approving the settlement a class action.  At §11:24 "Procedure for Submitting Class Settlement for Approval", *Newberg* states:

> When the parties to an action reach a monetary settlement, they will usually prepare and execute a joint stipulation of settlement which is submitted to the court for preliminary approval.  The stipulation should set forth the essential terms of the agreement, including but not limited to the amount of settlement, form of payment, manner of determining the effective date of settlement, and any recapture clause....  Usually the court will informally review these proposed settlement papers with counsel and then direct that notice of the proposed settlement and the hearing thereon be issued to all class members by mail, published notice, or a combination thereof.  Counsel for the class plaintiffs will ordinarily submit, contemporaneously with the motion for settlement approval in a common fund class or within a reasonable time thereafter, a

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

13

petition for allowance of fees and costs from the settlement amount. Often the court may require counsel to file such a petition along with or shortly after any proffered settlement proposals so that absent class members may be able to calculate or estimate their net recoveries in evaluating the settlement, and in order to permit the court to schedule a joint hearing for approval of both the settlement and the fee petitions. Alternatively, the plaintiff's counsel may agree at the time of submitting the settlement stipulation that they will petition for a reasonable fee not to exceed a given percentage of the common fund.

The next section of *Newberg*, §11:25 "Preliminary Court Approval", states:

Settling parties in a class action should submit a stipulation of settlement, together with supporting affidavits, to the court for its perusal. The court must preliminarily determine whether notice of the proposed settlement pursuant to Rule 23(e) should be given to class members 'in such manner as the court directs,' and an evidentiary hearing scheduled to determine the fairness and adequacy of the settlement. Because notice to the class, with its attendant expenses, and a hearing will be futile gestures if the court feels that some of the settlement terms are unacceptable at the outset, the parties are well advised to seek informally a preliminary court response in a pretrial conference that the proposed settlement is within the range of possible judicial approval.

*Newberg* goes on to cite to the *Manual for Complex Litigation* (3rd Ed.) which states at §30.41 "Procedure for Review and Approval":

Approval of class action settlements involves a two-step process. First, counsel submit the proposed terms of settlement and the court makes a preliminary fairness evaluation. In some cases this initial evaluation can be made on the basis of information already known to the court, supplemented as

14

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

necessary by briefs, motions, or informal presentations by the settling parties.  The court may want to hear not only from counsel but also from the named plaintiffs, from other parties, and from attorneys who did not participate in the negotiations. The judge may also, at this preliminary stage or later, hear the views of the parties' experts or seek the advice of a court-appointed expert or special master.  If the court has reservations, it may advise the parties, who may wish to resume negotiations in an effort to remove potential obstacles to approval.

If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the courts should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.  For economy, courts have in appropriate cases permitted the notice under Rule 23(c)(2) to be combined with the Rule 23(e) notice. Approval is required of the settlement of any action brought as a class action, regardless of whether the settlement occurs prior to certification, and even if the only claims being settled are those of the individual plaintiffs, with the class claims being dismissed without prejudice.  Notice is required of any settlement of class claims and is considered advisable even if only the individual claims of the named plaintiffs are settled.

Assuming the Court preliminarily approves the settlement, it should order notice to the class. *Manual for Complex Litigation* (3rd Ed.) at §30.41. In it, the class members should be apprised of its key terms, including provisions regarding attorneys' fees and costs.  In addition, class members should be informed they have the opportunity to file a claim, request for

1  exclusion and objections to the settlement.  *Id.*  Finally, it should inform the

2  class members of the time and place of the final fairness hearing.  *Id.*

3

4  **IV.   THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR**

5  **PRELIMINARY APPROVAL**

6      Under Federal Rule of Civil Procedure 23 (e), the Court must

7  "determine whether a proposed settlement is fundamentally fair, adequate,

8  and reasonable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.

9  1998).  To this end, the Court must consider a number of "fairness factors,"

10 including: (1) the strength of the plaintiffs' case; (2) the risk, expense,

11 complexity, and likely duration of further litigation; (3) the risk of

12 maintaining class action status throughout the trial; (4) the amount offered

13 in settlement; (5) the extent of discovery completed, and the stage of the

14 proceedings; (6) the experience and views of counsel; (7) the presence of a

15 governmental participant; and (8) the reaction of the class members to the

16 proposed settlement.  *Officers for Justice v. Civil Serv. Comm'n of City and

17 County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

18     Courts presume the absence of fraud or collusion in negotiation of

19 settlements unless evidence to the contrary is offered.  In short, there is a

20 presumption that the negotiations were conducted in good faith. *Newberg*

21 §11.51; see also *Mars Steel Corp. v. Continental Illinois Bank and Trust Co.*,

22 834 F.2d 677, 681 (7th Cir. 1987).  Courts do not substitute their judgment for

23 that of the proponents, particularly where settlement has been reached by

24 experienced counsel familiar with the litigation.  *Hammon v. Barry*, 752 F.

25 Supp 1087 (D.D.C. 1990).  While the recommendations of counsel proposing

26 the settlement are not conclusive, the court can properly take them into

27 account, particularly if they have been involved in litigation for some period

28

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

16

1  of time, appear to be competent, have experience with this type of litigation,

2  and significant discovery has been completed.  See *Newberg* §11.47.

### A.    The Experience And Views of Class Counsel and Defense Counsel

6  Class counsel, Law Offices of Stephen Glick, Law Offices of Ian Herzog

7  and Daniels, Fine, Israel, Schonbuch & Lebovits LLP, handle class actions

8  extensively and primarily litigate employment class actions such as the one

9  at bar.  (See Brooks Declaration at ¶¶ 2-8, filed in support of Plaintiffs'

10 motion for class certification.  See also *e.g.*, *Sav-On Drug Stores, Inc. v.*

11 *Superior Court*, (2004) 34 Cal.4th 319.)[5]

12 The experience of class counsel show that they are qualified to

13 determine the difficulty of going to trial and the appellate process in an

14 employment class actions, including the rewards and risks.  Class counsel

15 has taken many employment class actions through certification and beyond,

16 and although generally successful, we are well aware of the risks inherent in

17 litigating such cases.

18 Defense counsel Seyfarth Shaw LLP, is an international law firm well

19 versed in complex and class action litigation.  Mr. Paley is a partner in the

20 employment section and is well versed wage and hour class action litigation

21 as is his able and learned colleague Mr. Jacobson, and as has been

22 demonstrated in these proceedings.

---

26 [5] In October, 2009, these same Class Counsel obtained final approval of a
27 $47.5M settlement in the *Sav-on* case on behalf of a class of assistant
managers, in litigation that lasted just under a decade.

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

17

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

## B.   Discovery Conducted in the Case

This matter has been pending since June, 2007 and has been actively litigated over the course of the last two years, not settling until the parties had prepared the case for trial.  The parties conducted investigation and exchange of information through discovery, including, but not limited to, the depositions of Defendant's corporate representatives on the policies and procedures regarding mileage and reimbursement as well as the paper and computer records and databases.

Because of the relatively narrow nature of the claims *i.e.*, arising from a single type of expense from a discrete activity, the discovery was similarly focused.   In addition, the materials exchanged pursuant to statutory obligations, Plaintiffs deposed two persons most knowledgeable of Defendant.  The first PMK deposition was on a range of some 15 "master" topics, with myriad subcategories, from the ICST procedures to record retention.  The second PMK deposition focused entirely upon the ICST data which was uncovered immediately prior to filing the motion for class certification.   As the Court is aware, for it was the subject of much discussion, that data turned out to be voluminous and substantial covering literally hundreds of thousands of ICSTs over a period of years.  There were extensive law and motion briefings on issues relating to the claims and defenses, much of which was ordered by the Court, discovery issues in which the Court was intimately involved in the management, along with class certification briefing.  Counsel for the parties have further invested extensive time investigating the applicable law as applied to the facts discovered regarding the alleged claims of Plaintiffs and potential defenses thereto, and the damages claimed by Plaintiffs.   Plaintiffs' Counsel is aware of the defenses and legal positions of RadioShack, much of which again, came

18

1   about at the Court's directions to the parties to brief issues, but believes
2   Plaintiffs would ultimately succeed.   RadioShack, on the other hand,
3   contends Plaintiffs either legally waived, or were provided the opportunity to
4   obtain the reimbursement had they followed company policy, and believes
5   RadioShack would ultimately succeed on the merits.

6   ## C.   The Risks Inherent In Trial And Appeal and Attendant
7   ## Delays

8   The matter was prepared for trial on stipulated facts when it settled.
9   Given the Court's rulings on the defenses and legal issues, Plaintiffs believe
10  that they would have prevailed but even that confidence must be weighed
11  against the uncertainty attendant in any trial.   Although Plaintiffs steadfastly
12  maintained that the law is clear, there are very few cases dealing with Labor
13  Code § 2802, and it cannot be doubted that the risks on appeal certainly
14  weighed heavily.   In fact, this Court suggested at several points that there
15  was a lack of clear authority in this area of the law, hence the requests for
16  briefing on various issues.

17  The potential of obtaining no monetary relief particularly *e.g.*, if
18  Plaintiffs had not prevailed on appeal, for the proposed settlement class had
19  to be weighed against the savings of settling before trial.   In this case,
20  defendant offered significant monetary relief for the settlement class.   The
21  risks associated with litigating this matter through trial were considered,
22  although frankly those risks were not as great as those posed by the appellate
23  process and the delays, the potential for having to retry issues, etc.   A very
24  real possibility existed that Plaintiffs would not recover anything for their
25  claims even assuming they initially prevailed at trial.   Additionally, the costs
26  associated with litigation of this case through trial were considered as well.

27
28

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

19

The defendant was inclined to settle for a number of reasons as well. Certain parts of this case were very strong. For example, the plain reading of § 2802 combined with th4e Court's ruling regarding potential equitable defenses made Plaintiffs' chances of prevailing at trial quite strong. It was clear that the defendant maintained records of the ICSTs and had serious issues concerning its ability to demonstrate that the Class Members were aware of their right to reimbursement as required under the law. Significantly, after the filing of the lawsuit, defendant has changed its reimbursement policy.

### D.    The Settlement Is Fair and Reasonable

As discussed in detail above, the amount offered in settlement, although not staggering, appears to be fair and reasonable and will provide significant monetary remuneration to the Class. Furthermore, many class action settlements are "claims made" settlements with a reversion, meaning that the defendant only pays out the actual amount claimed by class members and gets to keep any remaining monies (*i.e.,* if a class member did not timely submit a valid claim, the defendant did not have to pay that claim). Here, there is a guaranteed payout made available to all Class Members who timely submit valid claims. Thus, instead of RadioShack recouping whatever money is not claimed, the class members who do timely file valid claims will get the entirety of their pro rata portion and any remaining will be in the nature of cy pres relief.

Class Counsel believes that the settlement is fair and reasonable as it provides adequate monetary relief to a large number of current and former employees of defendant. Furthermore Class Counsel believes that all discovery necessary to make such a determination was made prior to settlement. Going forward with trial and the certain appeal carried with it

the risk of the class members receiving absolutely no monetary relief.  Even if Plaintiffs prevailed at trial and in any appeal, the costs involved in continued litigation would increase dramatically and the payment of any monies would be delayed possibly for years.

Based on conversations to date with class members and experience in other wage and hour class actions, Class Counsel expects that the class members will favorably react to the settlement; most Class Members were not aware of their right to reimbursement under California law.  However, it will not be until after notice is sent out and class members are given the opportunity to object or submit a claim form that the reaction of the class members will be correctly gauged.

### E.    The Court  Should Schedule A Hearing On Final Settlement Approval

To set the procedure in motion to obtain final approval of the settlement, Plaintiffs now move for an order (1) preliminarily approving the Settlement; (2) approving a form and method of service of notice of this action and the proposed settlement; (3) approving a form and method for class members to submit a claim form and/or object; and (4) scheduling a hearing regarding final approval of the settlement.  Following adequate notice to the class members, a hearing will be held on the proposed settlement. *Manual for Complex Litigation*, Third, § 30.41.

Accordingly, it is requested that the Court enter an Order of Preliminary Approval which includes scheduling a hearing on final approval of the settlement and setting a cut-off date for Class Members to object and submit a Claim Form.  The hearing on final settlement approval should be scheduled now so that the date can be disclosed in the Class Notice.  Cut-off

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

21

1   dates for submission of objections, and Claim Forms must be established so

2   that the parties can determine, at some specified date, the members of the

3   class and which members are entitled to share in the settlement.

4       The Claims Administrator is prepared to mail the Class Notice and

5   Claim Form to the potential members of the class within forty (45) days of

6   entry of the Preliminary Approval order of this Settlement as provided in the

7   Settlement Agreement.  Further, because the Motion will be unopposed, the

8   Plaintiffs request the Plaintiffs' Motion for Final Approval of the settlement

9   be submitted twenty (20) Court days before the Final Approval hearing.

10

11   **V.    CONCLUSION**

12       For the reasons stated above, the Court should: (1) preliminarily

13   approve a settlement of the action only; (2) approve the Form and method of

14   service of notice; (3) establish a procedure for Class Members to object and

15   submit a "Claim Form"; and (4) schedule a hearing on final approval of the

16   settlement at a date and time designated by the Court.

17       The Proposed timetable for settlement approval process is as follows:

18

19

| Event | Timing |
|---|---|
| Defendant provides list of Class Members to the Claims Administrator.  Agreement p. 10, § III(5)(d)(i). | 30 days after Preliminary Approval |
| Claims Administrator Updates Class List and Mails Class Notice and Claim Form to Class Members.  Agreement p. 10, § III(5)(d)(ii). | 45 days after Preliminary Approval |
| Deadline to file claims. Agreement p. 11, § III(5)(d)(iii). | 45 days after mailing by Claims Administrator |

22

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

| Deadline to Object.  Agreement, p. 11, § III(5)(d)(iv). | 30 days after mailing by Claims Administrator |
| Plaintiffs file Motion for Final Approval.  Agreement, p. 13, § III(5)(e). | 20 days before Final Approval Hearing |
| Claims Administrator provides checks to Claimants.  Agreement p. 18, § III(12)(a). | Within 35 days of Judgment becoming final |

Date: 2/24/2010

Respectfully submitted,

LAW OFFICES OF IAN HERZOG

LAW OFFICES OF STEPHEN GLICK

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP

By: _____
                Scott A. Brooks
        Class Counsel and Attorneys For
                    Plaintiffs

23

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

# PROOF OF SERVICE

State of California       )
County of Los Angeles    )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 1801 Century Park East, Ninth Floor, Los Angeles, California 90067.  On February 24, 2010, I served the within document(s):

    NOTICE OF MOTION AND MOTION FOR ORDER (1) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT; (2) APPROVING FORM AND METHOD OF NOTICE; (3) ESTABLISHING OBJECTION AND CLAIM PROCEDURES; AND (4) SCHEDULING FINAL FAIRNESS HEARING

by placing a true copy thereof in sealed envelopes as stated on the attached mailing list.

| XX | **BY MAIL**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice a true copy would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |

|   | **BY PERSONAL SERVICE**  I caused personal delivery by ATTORNEY SERVICE of  said document(s) to the offices of the addressee(s) as set forth on the attached mailing list. |

|   | **BY OVERNIGHT DELIVERY SERVICE**  I caused such envelope to be deposited with an overnight delivery service (Overnite Express/Federal Express) for delivery the next court day, or at most, within two court days of the above date. |

| XX | **BY E-MAIL OR ELECTRONIC TRANSMISSION.**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed on the service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |

| XX | (State)  I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |

|   | (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. |

Executed on February 24, 2010, at Los Angeles, California.

                                  _Christine_
                                  Christine Tucker

## SERVICE LIST

1  Ian Herzog, Esq.
   Law Offices of Ian Herzog
2  233 Wilshire Boulevard
   Suite 550
3  Santa Monica, California 90401

4  Stephen Glick, Esq.
   Law Offices of Stephen Glick
5  1055 Wilshire Boulevard
   Suite 1480
6  Los Angeles, California 90017

7  Andrew M. Paley, Esq.
   David D. Jacobson, Esq.
8  Seyfarth Shaw, LLP
   2029 Century Park East
9  Suite 3500
   Los Angeles, CA 90067-3063
10

11
   2637-002
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28