1
2
3
4

Law Offices Of Stephen Glick
Stephen Glick (SBN 59404)
*sglick@glicklegal.com*
1055 Wilshire Blvd., Suite 1480
Los Angeles, CA 90017
Telephone:   (213) 387-3400
Facsimile:   (213) 387-782

5
6
7
8

Daniels, Fine, Israel, Schonbuch & Lebovits, LLP
Scott A. Brooks (SBN 160115)
*brooks@dfis-law.com*
1801 Century Park East, Ninth Floor
Los Angeles, California 90067
Telephone (310) 556-7900
Facsimile (310) 556-2807

9
10
11
12

Law Offices Of Ian Herzog
Ian Herzog (SBN 41396)
*IH@avlaw.info*
233 Wilshire Boulevard, Suite 550
Santa Monica, California 90405
Telephone (310) 458-6660
Facsimile (310) 458-9065

13

Class Counsel and Attorneys for Plaintiffs

14

15          UNITED STATES DISTRICT COURT

16      NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

17

18
19

RICHARD STUART, individually, and
on behalf of all others similarly situated
and the California general public; and
DOES 1 through 1000, inclusive,

20

21                    Plaintiffs,
                v.

22
23

RADIOSHACK CORPORATION, a
Delaware corporation; and DOES 1
through 100, inclusive,

24

25                    Defendants.

26

27

28

Case No. C07-04499 EMC

[Assigned to Magistrate Judge Edward
M. Chen, Courtroom C]

**NOTICE OF MOTION AND
MOTION FOR ORDER OF
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

Date:  August 6, 2010
Time:  10:00 a.m.
Courtroom:  C

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE THAT** on August 6, 2010 commencing at 10:00 a.m. in Courtroom C of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Edward M. Chen, Plaintiffs Kimberla Means and Ramon Vargas and the Class will and hereby do move the Court for an order granting final approval of the proposed class action settlement in this matter and entry of the judgment, all as more particularly set forth in the Memorandum of Points and Authorities that follows.

This motion will be made pursuant to Federal Rule of Civil Procedure 23 and the Court's inherent power to supervise class action litigation and the settlement of class action cases, on the ground that, after protracted litigation, Plaintiffs reached a proposed settlement with Defendant RadioShack Corporation ("Defendant"), which was given preliminary approval by the Court and which the parties believe provides fair, just, and reasonable compensation to unnamed members of the settlement class who allegedly were not provided reimbursement for expenses incurred in performing inter-company stock transfers.

This motion is based on the Memorandum of Points and Authorities, the Declaration of Scott A. Brooks and all other records and papers on file in this action.

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

1

2    July 21, 2010          LAW OFFICES OF IAN HERZOG

3                          LAW OFFICES OF STEPHEN GLICK

4
                          DANIELS, FINE, ISRAEL,
5                          SCHONBUCH & LEBOVITS, LLP

6

7                          By: _____
8                                     Scott A. Brooks
                              Class Counsel and Attorneys For Plaintiffs
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                      3
                                                        C07-04499 EMC
NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT

F:\SAB\PLDG\2637.002\2637.002.Motion for Final Approval.Rev.doc

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 1

I.    FACTUAL AND PROCEDURAL BACKGROUND ............................... 1

II.   DISCUSSION ........................................................................ 2

    A.    Legal Standard.......................................................... 2

    B.    Terms Of The Settlement Agreement........................................ 4

        1.    Class Definition ..................................................... 4

        2.    Settlement Amount ................................................. 4

        3.    Deductions ........................................................ 4

        4.    Award Allocations ................................................. 5

    C.    Factors Analysis.......................................................... 7

        1.    Strength of the Plaintiffs' Case.................................... 4

        2.    Risk, Expense, Complexity, and Likely
            Duration of Further Litigation .................................... 8

        3.    Reaction of the Class Members to the Proposed
            Settlement ......................................................... 9

    D.    The Settlement Guarantees Payout
        With No Reversion ..................................................... 10

    E.    Reasonableness of Attorneys' Fees.................................... 11

    F.    Named Class Representatives Are Entitled To
        Incentive Awards For Their Services To The Class ................... 12

i

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

G.    Administrative Expenses Are Reasonable ................................... 13

III.    CONCLUSION ......................................................................... 14

ii

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

F:\SAB\PLDG\2637.002\2637.002.Motion for Final Approval.Rev.doc

## **TABLE OF AUTHORITIES**

### **Cases**

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).................... 2

*Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401 (9th Cir. 1989).......... 2

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................... 2, 3

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ................................................ 3

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)................................................................ 3

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319 (2004) ........... 13

*Staten v Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)........................................ 2

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)..................... 2

### **Statutes**

Labor Code § 2802 ...................................................................................... 1, 8

### **Rules**

Fed. R. Civ. P. 23 ............................................................................................. 2

iii

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

F:\SAB\PLDG\2637.002\2637.002.Motion for Final Approval.Rev.doc

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This action involves claims that Defendant RadioShack Corporation ("RadioShack" or "Defendant" herein) failed to reimburse employees for mileage expenses incurred in performing Inter-Company Stock Transfers ("ICSTs").  Plaintiff Dick Stuart filed this action on June 7, 2007 in Alameda County Superior Court on behalf of RadioShack employees in California, alleging that RadioShack violated California's Labor Code § 2802 and the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) by failing to reimburse its employees for mileage they incurred in performing ICSTs, seeking damages, penalties, interest, disgorgement of profits, equitable and injunctive relief, and attorneys' fees and costs.  Defendant removed the matter to federal court.  Following certification, Mr. Stuart passed away and Named Plaintiffs Kimberla Means and Ramon Vargas stepped forward to act as Named Plaintiffs and representatives of the Class.

Plaintiffs worked with Defendant to resolve the case and participated in formal private mediations with Joel Grossman on July 7, 2008 and on December 22, 2008 with Michael Wolfram, neither of which was successful. On July 20, 2009, the Court ordered the parties to an emergency settlement conference before the Honorable Joseph C. Spero.  After analysis of ICST data regarding potential damages, the parties were ordered to an additional session on October 1, 2009 before Judge Spero, almost literally on the eve of trial.  This mediation effort was successful, and after having negotiated through Judge Spero at arms-length and in good faith, the principal terms of the Agreement were reached which was given preliminary approval by this Court on April 9, 2010.  Docket No. 176.

1

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

Having met the requirements for the granting of preliminary approval and having complied with the Court's order regarding notice to the class and other related claims procedures, as set forth in the Court's preliminary approval order, Plaintiffs are now before the Court seeking final approval of the class action settlement.

## II.   DISCUSSION

### A.   Legal Standard

The Ninth Circuit has declared that a strong judicial policy favors settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "There is an overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Nevertheless, where "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staten v Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Having conducted the first inquiry regarding the propriety of certification, the "court must carefully consider 'whether a proposed settlement is fundamentally fair, adequate, and, reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . .'" *Id.* at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); see also Fed. R. Civ. P. 23(e).

At the fairness hearing, the Court should entertain any objections by class members to: (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement. *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that prior to approving the

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

dismissal or compromise of claims containing class allegations, district courts must, pursuant to Rule 23(e), hold a hearing to "inquire into the terms and circumstances of any dismissal or compromise to ensure that it is not collusive or prejudicial"). Following the fairness hearing, the court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

In determining whether the terms of the parties' settlement are fair, adequate, and reasonable, the court must balance several factors, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. But see *Molski v. Gleich*, 318 F.3d 937, 953-54 (9th Cir. 2003) (noting that a district court need only consider some of these factors -- namely those designed to protect absentees).

## B.   Terms Of The Settlement Agreement

The key terms of the stipulation and settlement are as follows:

### 1. Class Definition

The Class is defined in as, "All persons employed by RadioShack within the State of California, at any time from June 3, 2003, to October 1, 2009, who drove their personal vehicles to and from RadioShack stores to carry out

3

ICSTs and who were not reimbursed for mileage, and who did not opt out of the Litigation in response to the Notice of Class Certification." (Order, Docket No. 176, at p.p. 1-2; Settlement Agreement at p. 4, ¶ 4.)

## 2. Settlement Amount

Defendant agrees to make available to settle the claims in this case the sum of four million five hundred thousand dollars ($4,500,000.00).

## 3. Deductions

Attorneys' fees of up to $1,500,000 (33%) and costs ($78,436.69), "service payments" to the Named Plaintiffs ($5,000 each), penalties under the Private Attorney General's Act of 2004 ("PAGA") of $50,000[1] and Settlement Expenses (claims administration costs) (presently $65,000) will be deducted from Defendant's total liability of $4,500,000.

## 4. Award Allocations

Class members who file timely claims to receive a proportionate share of the net settlement amount (*i.e.*, after deductions for approved costs, fees, notice/administration and service payments). Each participating class member's share will be based on the number of weeks s/he worked for defendant during the class period according to Defendant's records. As set forth below, the parties estimate that the class members would receive, assuming 100% participation by class members, approximately $2.82 per week worked during the class period with the average pay out for the Class at $205.86.

---

[1] The total PAGA penalties is actually $66,666 per the Settlement Agreement at p. 16, however under Labor Code § 2699, three-quarters ($50,000) is paid to the State and the remaining 25% is paid to the Class as a portion of their recovery.

4

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

The Class is compromised of approximately 14,992 current and former employees who performed approximately 372,741 ICSTs during the Class Period. These same employees represent 1,096,660 work weeks during the Class Period. Based on the sampling performed by the parties, the average roundtrip mileage for an ICST was 13.86 miles. The IRS rates during the Class Period were:

| Date | IRS Rate | ICSTS |
|---|---|---|
| 2003 | 36¢ | 63,745 |
| 2004 | 37.5¢ | 52,690 |
| 1/1/05-8/31/05 | 40.5¢ | 48,509 |
| 9/1/05-12/31/05 | 48.5¢ | 29,296 |
| 1/12/06-12/31/06 | 44.5¢ | 78,785 |
| 1/1/07-12/31/07 | 48.5¢ | 57,957 |
| 1/1/08-6/30/08 | 50.5¢ | 28,285 |
| 7/1/08-12/31/08 | 58.5¢ | 13,474 |

Avg. Rate: 42¢    Total: 372,741

Using the average IRS mileage rate (calculated per month) of 42¢ multiplied by the average miles per ICST of 13.86 multiplied by the total number of ICSTs of 372,741,[2] the total mileage expenses are $2,169,799.90. Using the actual number of ICSTs during each of the discrete time periods and the corresponding actual mileage rate in effect for the period, the total mileage expenses are $2,243,883.27. This would be the total estimated damages for the Class. The 10% simple interest on the latter is an additional

---

[2] The exact number of ICSTs performed by employees was a source of dispute between the parties and this analysis uses Plaintiffs' figure which is larger than Defendant's and so is more conservative *i.e.*, greater potential damages. A smaller number of ICSTs would argue that the Class' recovery is even more substantial.

5

$1,004,524.70 for a total potential damages for unpaid mileage expenses and interest of $3,248,407.97.

The total amount to be paid to the Class Members would be as follows

| | |
|---|---|
| Total Settlement Amount | $4,500,000 |
| Fees and Costs | -$1,578,436.69 |
| Claim Admin. Costs | -$65,000[3] |
| PAGA penalties to LWDA | -$50,000 |
| Class Rep. Enhancements | -$10,000 |
| To Be Paid To Class | =$2,796,563.31 |

**This *net* amount represents 86% of the total potential damages and interest.** While this does not account for penalties, it still represents an extremely substantial recovery for the Class. The amount of any penalties would be within the Court's discretion and so not easily determined. Labor Code § 2699(e)(2). Plaintiffs argued that Labor Code § 2699(f)(2) provides an initial $100 penalty and an additional $200 penalty per pay period for each violation. With 14,992 employees in the Class, even a single violation per employee for one pay period could provide the basis for substantial penalties.

The average number of work weeks of the Class Members is 73 (73.15). At $2.82 for each work week, the average pay out for the Class would be $205.86 (=73 x $2.82). The estimated average mileage expense per ICST would be $5.82 (=13.86 x 42¢). Thus, the average payout would provide reimbursement for 35 ICSTs of average roundtrip mileage.

**C.   Factor Analysis**

---

[3] The estimated cost was $70,489.60. The actual cost is $65,000 up to a 35% response rate and $12.00 per response above 35%.

6

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

### 1.   Strength of the Plaintiffs' Case

The history of these proceedings including the Court-ordered briefing on issues such as the exhaustion defense and equitable/affirmative defenses, and discussion at hearings, have already highlighted the considerable legal uncertainties in this area of law, particularly given the dearth of case law.  To recap, counsel for both parties have been actively engaged in this litigation-for several years and have diligently pursued the necessary discovery and investigation.  The parties conduct extensive investigation and exchange of information through discovery, including, but not limited to, data mining of all of the available computer records of the ICST.  The parties consulted with consultants and vendors (in the areas of subject matter, survey and statistics) to review the evidence and legal issues with an eye toward determining if there existed appropriate scientifically approved methods for studying the class claims (such as survey and statistical sampling) in order to develop an appropriate class wide trial methodology that meets due process standards.  There were extensive law and motion briefings and arguments both on merits issues and discovery issues — along with class certification briefing.  Counsel for the parties have further invested extensive time investigating the applicable law as applied to the facts discovered regarding the alleged claims of Plaintiffs and potential defenses thereto, and the damages claimed by Plaintiffs.  Plaintiffs' Counsel is aware of the defenses and legal positions of RadioShack and while Plaintiffs believed they would ultimately succeed in the action, there were considerable risks as discussed in the preliminary approval motion and supporting declarations. RadioShack of course, believed it would ultimately succeed in the action on

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

7

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1   the merits and already sought appellate review of what are unsettled legal

2   issues. (Docket No. 104).

3        During the discovery process and as part of the settlement discussions

4   overseen by Judge Spero, Plaintiffs' counsel were given access to

5   RadioShack's ICST data. Since the records produced by RadioShack were so

6   voluminous (hundreds of thousands of transactions), for purposes of

7   settlement (and, for Plaintiffs, certification), the parties performed sampling

8   as well put together different damage models. The evaluations were

9   discussed with Judge Spero as part of the negotiations and Plaintiffs'

10  calculations were provided to the Court as part of the preliminary approval

11  process wherein the Court determined that the settlement was fair and

12  reasonable and the product of arms-length negotiations. (See, Order, Docket

13  No. 176.)

14       **2.     Risk, Expense, Complexity, and Likely Duration of**

15              **Further Litigation**

16       Despite having significantly developed the facts in the case, there is no

17  question but that both sides faced significant uncertainty because the claims

18  encompass unsettled legal issues arising from statutes that have not been

19  subject to a substantial body of interpretation and appellate opinions. For

20  instance, the Court ordered briefing on (1) what has been referred to as

21  "exhaustion of remedies" *i.e.*, defining an employer's obligation to reimburse

22  employees for mileage; (2) whether due diligence is sufficient to constitute a

23  defense; and, (3) what equitable defenses could be asserted against the claim

24  for violation of § 2802. While Plaintiffs contend that they largely prevailed

25  on these issues, the Court did not accept their legal theories in their entirety

26  and there can be no reasonable doubt but that significant legal issues, and

27

28

8

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

attendant litigation risks, lay ahead in any appeal.  As a consequence, Plaintiffs faced a serious risk of non-recovery.  For instance, the issue of the employer's obligation to reimburse vis-a-vis the employee's obligations to seek reimbursement, were issues on which there is decidedly little written, which were significant factors in evaluating the litigation risk in this case. For its part, Defendant signaled its intention to take these issues up when it sought leave to appeal (Docket No. 104), prior to settlement.

### 3.   Reaction of the Class Members to the Proposed Settlement

At preliminary approval, the Court found that the proposed notice sent to class members is the best practicable under the circumstances. FRCP23(c)(2)(B). The Court further found that the notice (revised per the Court's directions) adequately apprises class members of their rights under the settlement.  Following preliminary approval, Defendant provided the claims administrator, Simpluris, Inc., with the names and last known contact information for the class members.  Accordingly, Simpluris mailed out the notice pursuant to the procedure outlined for the court and which the court deemed acceptable.

Specifically, on June 9, 2010, Simpluris sent notice to 14,990 individuals.  Of these, 13,543 individuals were sent the notice and claim form and 1,444 were mailed the notice and claim for with the right to opt out. Following the mailing of the notice and as of July 16, 2010, Simpluris received 500 notices undeliverable, following the remailing of 1,842.

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

9

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

As of July 16, 2010, there are 1,879 class members who have filed valid timely claims.[4] The settlement amount claimed by the class members who have made timely and valid claims represents 12.54% of the Class. There were a total of three opt-outs, one of them invalid. There has not been any objection, timely or otherwise. Class Members are provided with the right to dispute RadioShack's records of the number of weeks worked and there have been 14 disputed claims.

The fact that there has not been a single objection and only a scant 3 opt outs (only two of them valid) from the opt-out sub-class of 1,444 confirms the Court's findings on preliminary approval as to the fairness and reasonableness of the settlement.

## D.   The Settlement Guarantees A Pay Out With No Reversion

The parties' settlement agreement provides for a payout of 86% of the estimated damages with no reversion to the Defendant. The estimated damages are based on analysis of hard data i.e., the actual records of the ICSTs performed by the Class Members during the class period. There is a guaranteed payout made available to all Class Members who timely submit valid claims. Thus, instead of RadioShack recouping whatever money is not claimed, the Class Members who do timely file valid claims receive the entirety of their pro rata portion and any remaining will be in the nature of cy pres relief.

## E.   Reasonableness Of Attorneys Fees

---

[4] This information is taken from Simpluris' Weekly Report for the period ending July 16, 2010. Exhibit 2 to Brooks Decl. The claim period ends on July 24, 2010 and the final figures will be provided with a supporting declaration in advance of the hearing.

10

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1    "Attorneys' fees provisions included in proposed class action

2    settlement agreements are, like every other aspect of such agreements,

3    subject to the determination whether the settlement is 'fundamentally fair,

4    adequate, and reasonable.'"  *Staton v. Boeing Co*, 327 F3d 938, 963 (9th Cir

5    2003), quoting FRCP 23(e).

6    Class Counsel are entitled reasonable fees and costs pursuant to the

7    statute sued upon, Labor Code § 2802(c).  The fees sought is this case (see

8    the accompanying motion and supporting declarations) are reasonable and

9    it is important to note that the 86% recovery if estimated damages to the

10   Class is after the fees and expenses have been deducted.  The fees requested

11   are part of the settlement terms which Judge Spero, as the settlement officer,

12   thought a fair and reasonable result for the Class.  Moreover, Class Counsel

13   have incurred and will incur more fees and expenses than are sought and

14   have not asked for any multiplier.  In short, they ask only to be paid for the

15   work actually performed and billed.   The fees are based on hourly rates

16   which are commensurate with the prevailing fees nin the community and for

17   this type of work and the requested fee award is fair, as the Court

18   determined at preliminary approval.  No class member has objected to the

19   requested fee and the fee request should be approved.

20   ///

21   ///

22   ///

23   **F.     Named Class Representatives Are Entitled To Incentive**

24   **        Awards For Their Services To The Class**

25   Representative Plaintiffs are entitled to -receive appropriate

26   reimbursement for their efforts.  (*Van Vranken v. Atlantic Richfield Co.*, 901

27

28

11

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1  F. Supp. 294 (N.D. Cal. 1995). The payments to the Class Representatives are

2  intended to recognize the critical role they played in this case and the

3  substantial time, effort, and risks undertaken by each representative in

4  helping to secure the exceptional result obtained on behalf of the Class.

5  "Courts routinely approve incentive awards to compensate named, plaintiffs

6  -for the services they provide and the risks they incurred during the course

7  of class action litigation." (*Ingram v. The Coca-Cola Co.*, 200 F.RD 685, 694

8  (N.D. Ga. 2001) (quoting *In Re S. Ohio Correctional Facility*, 175 F.R.D. 270,

9  272 (SD. Ohio 1.997) (approving $303,000 payment to each class

10  representative plaintiff in employment case settling before class

11  certification); *Martens v. Smith Barney*, 1998 WL 1661385 *4 (S.D.N.Y. July

12  1998) and 181 F.R.D. 243, 262 (S.D.N.Y. 1998) (approving payments of up to

13  $150,000 for named plaintiffs, for a total of $1.9 million in incentive

14  payments for employment case settling prior to class certification); *Roberts

15  v. Texaco,* 979 F.Supp. 185 (S.D.N.Y. 1997) (approving incentive payments

16  up to $85,000 for named plaintiffs in employment case settling prior to class

17  certification); Manual for Complex Litigation, Fourth '21.62n. 973 (2004)

18  (noting that service awards are warranted).

19      Class Counsel will request that the Court approve incentive awards in

20  any amount not to exceed Five Thousand Dollars ($5,000) to each of the two

21  Named Plaintiffs, Kimberla Means and Ramon Vargas.  Defendant will not

22  oppose such requests.

23      The factors discussed above for incentive awards supports Plaintiffs'

24  request for the incentive awards sought here.  The Class Representatives

25  stepped forward following the passing of the initial plaintiff, Dick Stuart, and

26

27

28

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1   provided invaluable assistance to Class Counsel and the Class in this case.

2   (Brooks Decl. at ¶ 21; Glick Decl. generally.)

3        By bringing this action, all, of the Class Representatives also furthered

4   the twin public policy goals of employment class actions, as recognized by

5   the California Supreme Court in *Sav-On Drug Stores, Inc. v. Superior Court*,

6   34 Cal.4th 319, 340 (2004) (recognizing remedial nature of overtime laws

7   and public policy encouraging use of the class action device). Additionally,

8   the Class Representatives took on significant financial risks of having to pay

9   Defendant's costs had they not prevailed.

10       Finally, the Class Notice sent to all class members disclosed the

11  incentive awards.  No Class Members objected to any of these proposed

12  awards.  (Brooks Decl.)  Accordingly, the requested incentive awards are

13  appropriate and justified as part of the overall Settlement, and should be

14  awarded by the Court.

15   **G.    Administrative Expenses Are Reasonable**

16       The Settlement Agreement provides for payment of the expenses of the

17  settlement administration, including notice and claim administration by

18  Simpluris, the third-party claims administrator.  (Settlement Agreement at

19  p. 19.)  As part of the preliminary approval motion, the estimated expenses

20  were $70,489.60.  The expenses are now expected to be $65,000 due to a

21  smaller claim rate.  The estimate is within the parameters earlier approved

22  by this Court.  Class Counsel therefore requests that the Court approve

23  Simpluris for payment by RadioShack.

24   **III   CONCLUSION**

25       The Settlement Agreement provides substantial benefits to the Class

26  Members that are fair, reasonable, and adequate.  The final approval meets

13

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1    the standards required for the Court to grant final approval.  Accordingly,

2    Class Counsel respectfully request that the Court grant final approval of the

3    Settlement and enter judgment accordingly.

4

5    July 21, 2010                        Respectfully submitted,

6                                  LAW OFFICES OF IAN HERZOG

7

8                                  LAW OFFICES OF STEPHEN GLICK

9                                  DANIELS, FINE, ISRAEL,

10                                SCHONBUCH & LEBOVITS, LLP

11

12                          By:_____

13                                 Scott A. Brooks

14                         Class Counsel and Attorneys For

15                                  Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27                         14

28

**DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP**
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1   Law Offices Of Stephen Glick
    Stephen Glick (SBN 59404)
2   sglick@glicklegal.com
    1055 Wilshire Blvd., Suite 1480
3   Los Angeles, CA 90017
    Telephone:   (213) 387-3400
4   Facsimile:   (213) 387-782

5   Daniels, Fine, Israel, Schonbuch & Lebovits, LLP
    Scott A. Brooks (SBN 160115)
6   brooks@dfis-law.com
    1801 Century Park East, Ninth Floor
7   Los Angeles, California 90067
    Telephone (310) 556-7900
8   Facsimile (310) 556-2807

9   Law Offices Of Ian Herzog
    Ian Herzog (SBN 41396)
10  IH@avlaw.info
    233 Wilshire Boulevard, Suite 550
11  Santa Monica, California 90405
    Telephone (310) 458-6660
12  Facsimile (310) 458-9065

13  Class Counsel and Attorneys for Plaintiffs

14

UNITED STATES DISTRICT COURT

15

NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

16

17

| | |
|---|---|
| 18  RICHARD STUART, individually, and on behalf of all others similarly situated and the California general public; and 19  DOES 1 through 1000, inclusive, | Case No. C07-04499 EMC |
| 20           Plaintiffs, | [Assigned to Magistrate Judge Edward M. Chen, Courtroom C] |
| 21      v. | **DECLARATION OF SCOTT A. BROOKS IN SUPPORT OF MOTION FOR ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| 22  RADIOSHACK CORPORATION, a Delaware corporation; and DOES 1 23  through 100, inclusive, | Date:  August 6, 2010 |
| 24           Defendants. | Time:  10:00 a.m. Courtroom:  C |
| 25 | |

26

27

28

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

Scott A. Brooks, declare as follows:

1.    Attached hereto as Exhibit 1 is a true and correct copy of the Class Action Settlement Agreement signed by all parties and their counsel of record.

**Litigation History**

2.    On June 7, 2007, plaintiff Richard Stuart filed a putative class action lawsuit against RadioShack Corporation in Alameda County Superior Court, *Richard Stuart, et al. v. RadioShack Corporation*, Case No. RG07329680, alleging that RadioShack violated California's Labor Code § 2802 and Unfair Competition Law by failing to reimburse its employees for mileage they incurred in performing Inter-Company Stock Transfers, and seeking damages, penalties, interest, disgorgement of profits, injunctive relief, and attorneys' fees and costs.

3.    On August 8, 2007, RadioShack removed the action to this Court.  In accordance with the Federal Rules of Civil Procedure, the parties exchanged data and documents regarding the ICSTs.

4.    By Order dated February 5, 2009, the Court certified a class of "all persons employed by RadioShack within the State of California, at any time from June 3, 2003, to the present, who drove their personal vehicles to and from RadioShack stores and who were not reimbursed for mileage."  On February 12, 2009, the Court modified the February 5 Order, redefining the class as:  "all persons employed by RadioShack within the State of California, at any time from June 3, 2003, to the present, who drove their personal vehicles to and from RadioShack stores to carry out ICSTs and who were not reimbursed for mileage."

5.    During the course of the Litigation, Richard Stuart passed away. On October 6, 2009, Plaintiffs Kimberla Means and Ramon Vargas were

16

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

substituted in place of Richard Stuart as class representatives.  Kimberla Means was substituted as a class representative as to the Labor Code section 2802 claim and the Unfair Competition Law claim.  Ramon Vargas was substituted as a class representative as to all claims.

6.    Throughout this period, the issue of the ICST data was addressed by counsel through formal discovery, including the depositions of persons most knowledgeable designated by Defendant on issues such as the records of ICSTs maintained on computer, as well as the policies, practices and procedures regarding reimbursement, record-keeping, and performance of ICSTs.

7.    In addition, the parties engaged in substantial briefing on the core issues raised by the claims and defenses, at the Court's invitation and direction.  On April 1, 2009, the parties filed cross-motions regarding "exhaustion of remedies" *i.e.*, defining an employer's obligation to reimburse employees for mileage.  On April 30, 2009, the Court filed its Order Re Cross-Motions Re Exhaustion Defense holding that the exhaustion defense was not viable but that Plaintiff had not set forth sufficient evidence to obtain judgment on the issue.

8.    The Court also ordered the parties to submit briefing on the issues (1) whether due diligence is sufficient to constitute a defense;  and, (2) what equitable defenses could be asserted against the claim for violation of § 2802.

9.    On July 9, 2009, following briefing by the parties regarding the form and content of the notice to the class, the Court ordered notice to issue by July 24, 2009.

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

10.    On August 18, 2009, the Court ordered that the parties brief the issues of 1) whether equitable defenses could be asserted against Plaintiffs' claim under the Private Attorneys General Act of 2004 and 2) how damages would be measured under the PAGA claim.  On August 28, 2009, the Court issued an order holding that the  affirmative defenses of equitable estoppel and laches could not be asserted to defeat Plaintiffs' claims.

11.    On September 2, 2009, the Court issued an order further defining an employer's duty to reimburse employees under § 2802 and precluding Defendant from taking depositions of class members and employees on specified issues.

12.    The matter was set for trial several times throughout the pendency of the case, lastly to begin on October 13, 2009.  However, it became clear that the Court could proceed to determine the core liability upon stipulated facts.  Thus, the parties worked out a set of stipulated facts intended to provide the Court with those necessary for a determination of liability without the need for trial, which were filed on or about September 22, 2009.  It was at this point that the matter settled.

**The Settlement**

13.    The parties agreed to formal private mediations with Joel Grossman on July 7, 2008 and another formal private mediation session on December 22, 2008, with Michael Wolfram.  Neither of these efforts were successful.  On July 20, 2009, the Court ordered the parties to an emergency settlement conference before the Honorable Joseph C. Spero.  The first session on August 12, 2009, was not successful although it was helpful in revealing that the parties had differing notions of the potential damages based on their analysis of the ICST data and which suggested a difference in

18

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1  their respective methodologies for analyzing the data. The parties were

2  ordered to put together analyses of mileage calculations.

3      14.   On September 4, 2009, RadioShack provided mileage

4  calculations for some 270,000 ICSTs which it contended were for all

5  potential transfers by employees. At that point, Plaintiffs had analyzed some

6  15,000 ICSTs. Subsequent analyses allowed the parties to identify the

7  differences in their mileage calculations and so the potential damages under

8  their respective theories of liability.

9      15.   The parties were ordered to an additional session on October 1,

10 2009 before Judge Spero. This mediation effort was successful, and after

11 having negotiated through Judge Spero at arms-length and in good faith, the

12 principal terms of the Agreement were reached and placed on the record.

13     16.   The Settlement Fund of $4.5 Million, after payment of attorney

14 fees, costs and expenses, costs of administration and enhancements to the

15 Class Representatives provides a substantial recovery to the Class of mileage

16 expenses, penalties and interest. As Class Counsel, we conducted the

17 negotiations with a view toward achieving substantial benefits for the Class

18 while avoiding the cost, delay and uncertainty of further litigation, trial, and

19 in particular, appellate review. As the briefing ordered by the Court during

20 the litigation showed, there is scant authority on the legal issues involved

21 and even with a trial on stipulated facts, appellate proceedings were all but

22 certain to be initiated with the concomitant uncertainty of the outcome.

23     17.   As a result of the negotiations, and our investigation, analysis

24 and discovery, Plaintiffs and Class Counsel determined that it was in the best

25 interests of the Class to enter into the proposed Settlement. Plaintiffs and

26 Class Counsel believe the proposed Settlement to be fair, reasonable,

27 adequate and in the best interests of Plaintiffs and the other members of the

19

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

Class, and that the proposed Settlement represents a successful resolution of the disputed claims against Defendant.

18.   I believe that my background gives me the experience and knowledge necessary to evaluate the claims, defenses and risks presented by this case.   I have been co-lead counsel in this case since its inception and I am intimately familiar with the facts and evidence in this case.  The recovery for each Class Member is on very fair and reasonable terms taking into consideration the number of ICSTs performed by the class, the average mileage of each ICST, the risks inherent in the litigation of this genre (and the particular risks proposed by this case) and the reasonable tailoring of each Class Member's claim to the amount received.  Further, the non-monetary relief achieved through this lawsuit is of substantial value and goes well beyond the cash payments.[5]  I believe this settlement is unquestionably fair, adequate, reasonable and in the best interest of the Class.  The Class Members have shown support for the settlement through their participation and not one Class Member has objected to the settlement.

19.   I obtained an estimate for all costs of the claim administration as outlined in the Settlement Agreement, from Simpluris, Inc., the same company that handled the notice to the class following certification.  The estimated cost was $70,489.60.  The estimated costs is now $65,000 given that a flat fee of $65,000 is to be charged for c claim response rate of less than 35% with $12 for each response above that level.  As of this writing, the response rate is just above 12% and so it appears that the expense will be $65,000.

_____

[5] RadioShack has represented that is has changed its reimbursement policy for ICSTs to comply with California law. This alone is a substantial benefit to those class members who are current employees as well as the general public.

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

20

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

20.   This matter has been pending since June, 2007 and has been actively litigated over the course of the last two years, not settling until the parties had prepared the case for trial.  The parties conducted investigation and exchange of information through discovery, including, but not limited to, the depositions of Defendant's corporate representatives on the policies and procedures regarding mileage and reimbursement as well as the paper and computer records and databases.  Because of the relatively narrow nature of the claims *i.e.*, arising from a single type of expense from a discrete activity, the discovery was similarly focused.  In addition, the materials exchanged pursuant to statutory obligations, Plaintiffs deposed two persons most knowledgeable of Defendant.  The first PMK deposition was on a range of some 15 "master" topics, with several subcategories, from the ICST procedures to record retention.  The second PMK deposition focused entirely upon the ICST data which was uncovered immediately prior to filing the motion for class certification.  There were extensive law and motion briefings on issues relating to the claims and defenses, much of which was ordered by the Court, discovery issues in which the Court was intimately involved in the management, along with class certification briefing.  Counsel for the parties have further invested extensive time investigating the applicable and quickly evolving law as applied to the facts discovered regarding the alleged claims of Plaintiffs and potential defenses thereto, and the damages claimed by Plaintiffs.  Plaintiffs' Counsel is aware of the defenses and legal positions of RadioShack, much of which again, came about at the Court's directions to the parties to brief issues, but believes Plaintiffs would ultimately succeed.  RadioShack, on the other hand, contends Plaintiffs either legally waived, or were provided the opportunity to obtain the reimbursement had they

21

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1  followed company policy, and believes RadioShack would ultimately succeed

2  on the merits.

3        21.   Given the goal behind Labor Code section 2802 there is little

4  question that the results achieved in this litigation are fair and reasonable.

5  For those Class Members making claims (and even those who wished their

6  portion of the recovery to go to charity) will have received something of a

7  windfall in that the Class Members never even knew they could be entitled to

8  reimbursement for the expenses they incurred, which plaintiffs alleged was

9  due to both an unlawful written policy and the defendant's failure to

10  reimburse employees as it was obligated to do so.   As the average Class

11  Member will receive over $200 which represents some 35 ICSTs, the amount

12  that has been recovered is truly meaningful.   The average Class Member's

13  recovery is an amount that in no way can be characterized as merely

14  "symbolic" or "paltry" particularly given that the recovery is based on IRS

15  rates for the mileage incurred.   Further, the claim form process allocates

16  more funds to those who worked more weeks in order to achieve an

17  equitable division of the settlement proceeds.   Also the court is aware that

18  not even one Class Member filed an objection to the settlement.

19        22.   I am informed and believe, and on such basis state, that notices

20  and claim forms, including some notices with the right to opt-out, were

21  mailed to the Class via fist class mail at the addresses provided by

22  Defendant, as updated, on June 9, 2010, in accordance with the Court's

23  order granting preliminary approval.   No objections or intentions to appear

24  were submitted, either timely or untimely, prior to the July 9, 2010 deadline

25  for objections.   Attached hereto as Exhibit 2 is a true and correct copy of the

26  Weekly Report from the Notice and Claim administrator, Simpluris, Inc. for

27

28

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

the period ending July 16, 2010. A further declaration with the final results and data will be provided to the Court following the close of the claim period on July 24, 2010 and in advance of the hearing. The Weekly Report shows a class size of 14,990 individuals, that notices with claims forms were mailed to 13,543 persons and notices with the right to opt out were mailed to 1,444 persons. 2,334 notices were returned 1,842 were remailed. 500 notices were undeliverable. Only 2 persons opted out and one more person's effort to opt-out was invalid. There has been no objection or intention to appear submitted, either timely or untimely. Of the 1,882 claims received (12.56%), two were invalid and deficient and 14 were disputed (the Class Members were given the right to dispute the number of work weeks provided by Defendant's records). It is my understanding, on information and belief, that two additional persons contacted the claim administrator seeking to make a claim and they have been permitted to do so.

I declare under penalty of perjury according to the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed in Los Angeles, California on the 21st of July, 2010.

_____

Scott A. Brooks

C07-04499 EMC

NOTICE OF MOTION AND MOTION FOR ORDER OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

**EXHIBIT 1**

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (hereinafter, the "Agreement") is
made by Plaintiffs Ramon Vargas and Kimberla Means (collectively, "Plaintiffs"),
substituted as plaintiffs/class representatives in place of original plaintiff/class
representative Richard Stuart and RadioShack Corporation ("RadioShack").
Plaintiffs and RadioShack will at times be referred to collectively herein as "the
Parties."

## I.     THE LITIGATION

1.      On June 7, 2007, Richard Stuart filed a Complaint against RadioShack
in the Superior Court of California for the County of Alameda, Case No.
RG07329680, seeking to represent a class of all persons employed by RadioShack
in the State of California during the four years preceding the filing of the
Complaint who drove their personal vehicles less than 25 miles to and from
RadioShack stores and who were not reimbursed for mileage (the "Litigation").  In
the Complaint, Plaintiff alleged claims of (1) failure to reimburse for mileage
(Labor Code section 2802) and violation of the Unfair Competition Law (Business
& Professions Code sections 17200 et seq.).  On July 27, 2007, Richard Stuart filed
a First Amended Complaint, which added a claim for recovery of penalties under
the Labor Code Private Attorneys General Act of 2004 (Labor Code sections 2699
*et seq*) ("PAGA").  Richard Stuart subsequently filed two additional amended
complaints—a Second Amended Complaint on or about February 6, 2009 and a
Third Amended Complaint on or about February 25, 2009.  The claims alleged in
the Second and Third Amended Complaints are the same as previously alleged in
the First and Second Amended Complaints (violation of Labor Code section 2802,
unfair business practices and recovery of PAGA penalties), but the allegations
were revised and expanded to cover "all persons who were employed at
RadioShack retail stores in the State of California at any time between June 7,

2003 through the present who transported materials including store merchandise from one RadioShack store to another and were not reimbursed for expenses." The Complaint and the First, Second and Third Amended Complaints will be referred to collectively herein as "the Complaint."

2.     On August 30, 2007, RadioShack removed the action to the United States District Court, Northern District of California, Case No. C07-04499.

3.     By Order dated February 5, 2009, the Court certified a class of "all persons employed by RadioShack within the State of California, at any time from June 3, 2003, to the present, who drove their personal vehicles to and from RadioShack stores and who were not reimbursed for mileage."

4.     By Order dated February 12, 2009, the Court modified the February 5 Order, redefining the class as: "all persons employed by RadioShack within the State of California, at any time from June 3, 2003, to the present, who drove their personal vehicles to and from RadioShack stores *to carry out ICSTs* and who were not reimbursed for mileage."

5.     During the course of the Litigation, Richard Stuart passed away. By Court Order dated October 6, 2009, Plaintiffs Kimberla Means and Ramon Vargas were substituted in place of Richard Stuart as class representatives. Kimberla Means was substituted as a class representative as to the Labor Code section 2802 claim and the Unfair Competition Law claim. Ramon Vargas was substituted as a class representative as to all claims.

6.     RadioShack contends that it has at all relevant times complied with California law, and that it has specifically complied with the law relating to reimbursement of expenses. RadioShack therefore disputes all claims for damages and other relief made by Plaintiffs.

7.     The Parties have engaged in substantial investigation in connection with the Litigation. RadioShack has provided extensive documents and detailed

2

information to Plaintiffs' attorneys to review and analyze with respect to RadioShack's policies and procedures regarding transfers of merchandise between stores, records reflecting all transfers during the class period, and the location of and distance between RadioShack's California stores.

8.      The Parties have participated in several mediation sessions. The parties reached a settlement of the Litigation at a mediation session before Magistrate Judge Joseph C. Spero on October 1, 2009 which was placed upon the record.

9.      This Agreement and the Settlement is made in compromise of disputed claims. Because this is a class action, this Agreement must receive preliminary and final approval by the Court. Accordingly, the Parties enter into this Agreement on a conditional basis. In the event that the Court does not execute and file a final Judgment, or the terms of this Agreement are modified in any material respect, or in the event that the Effective Date, as defined herein, does not occur, this Agreement shall be deemed null and void *ab initio* and shall be of no force or effect. RadioShack and the other Releasees as defined below deny all of Plaintiffs' claims as to liability and damages as well as Plaintiffs' class allegations, and do not waive, but rather expressly reserve, all rights to challenge all such claims and allegations upon all procedural and factual grounds, including the assertion of any and all defenses, if the Judgment does not become Final for any reason, or in the event that the Effective Date does not occur.

## II.    DEFINITIONS

The following are certain definitions applicable to this Agreement. Definitions contained elsewhere in the body of this Agreement shall also be applicable.

3

1.      "Authorized Claimant" means any Class Member who submits a timely and valid Claim Form and is entitled to a Settlement Payment from the Settlement Proceeds.

2.      "Authorized Claim" means the claim of an Authorized Claimant in the amount to which the Authorized Claimant is entitled.

3.      "Claim Administrator" means Simpluris, Inc., and any successors designated by Plaintiffs and RadioShack to effectuate the Settlement.

4.      "Class" means all persons employed by RadioShack within the State of California, at any time from June 3, 2003, to October 1, 2009, who drove their personal vehicles to and from RadioShack stores to carry out ICSTs and who were not reimbursed for mileage, and who did not opt out of the Litigation in response to the Notice of Class Certification.

5.      "Class Member" means a member of the Class.

6.      "Class Representative Enhancement" means the sums to be paid to the named Plaintiffs for serving as Class Representatives, which shall be paid from the Settlement Amount.

7.      "Effective Date" means the date on which both of the following have occurred: (i) final approval of the Settlement is granted by the United States District Court, Northern District of California, or other court taking jurisdiction of this matter, and (ii) the Court's Judgment becomes Final.

8.      "Final" means the latest of: (i) if there is an appeal of the Court's Judgment, the date the Judgment is affirmed on appeal, the date of dismissal of such appeal, or the expiration of the time to file a petition for writ of *certiorari* to the United States Supreme Court, or, (ii) if a petition for writ of *certiorari* to the United States Supreme Court is filed, the date of denial of the petition for writ of *certiorari*, or the date the Judgment is affirmed pursuant to such petition; or (iii) if

4

no appeal is filed, the expiration date of the time for filing or noticing any appeal
of the Judgment.

9.      "Judgment" refers to the Judgment and Order Approving Class
Settlement and Dismissing the Class Action With Prejudice, substantially in the
form attached hereto as Exhibit E, or as determined by the Court.

10.     "Notice" refers to the Notice, Proposed Settlement and Proposed
Hearing Date for Court Approval, substantially in the form attached hereto as
Exhibit A.

11.     "Plaintiffs' Attorneys' Fees" refers to the amount awarded to the
Plaintiffs' Attorneys by the United States District Court, Northern District of
California, or other court taking jurisdiction of this matter, for prosecuting the
Litigation.

12.     "Plaintiffs' Expenses" refers to the expenses incurred by Plaintiffs and
Plaintiffs' Attorneys in connection with prosecuting the Litigation, as approved by
the United States District Court, Northern District of California, or other court
taking jurisdiction of this matter.

13.     "Claim Form" refers to the Claim Form, substantially in the form
attached hereto as Exhibit B.

14.     "Settlement" means the settlement of the Litigation and related claims
effectuated by this Agreement.

15.     "Settlement Amount" refers to the agreed settlement amount of Four
Million Five Hundred Thousand Dollars ($4,500,000), which is the total amount
RadioShack has agreed to pay under this Agreement. The $4,500,000 Settlement
Amount is intended to cover any and all payments made in connection with the
Settlement, including the following: (i) all Settlement Payments; (ii) all Class
Representative Enhancements as ordered by the Court and as described in this
Agreement; (iii) Plaintiffs' Expenses as ordered by the Court and as described in

5

this Agreement; (iv) Plaintiffs' Attorney's Fees as ordered by the Court and as described in this Agreement; (v) all Settlement Expenses as defined in this Agreement; (vi) all payments for PAGA penalties and (vii) all Settlement Payments which are not claimed, which amounts shall be donated to charity as provided in this Agreement.

16.    "Settlement Expenses" means those expenses paid to effectuate and administer the Settlement, including, but not limited to, all costs incurred by the Claim Administrator, all costs of giving Notice to the Class, all costs of administering and disbursing the Settlement Payments, as approved by the Court.

17.    "Settlement Payment" means the amount to be paid to an individual Authorized Claimant.

18.    "Settlement Period" means June 3, 2003, up to and including October 1, 2009.

19.    "Settlement Proceeds" means the Settlement Amount, less all of the following:  Class Representative Enhancements, Plaintiffs' Attorneys' Fees, Plaintiffs' Expenses, Settlement Expenses, and seventy-five percent of the amount allocated to PAGA penalties.

## III.    SETTLEMENT TERMS

Plaintiffs and RadioShack hereby agree as follows:

1.    **Scope of Settlement:**

The Settlement described herein will resolve fully and finally all Class Members' Released Claims as described in Section III, Paragraph 3.

2.    **Maximum Consideration:**

Subject to Court approval, and in consideration of the release and settlement described in this Agreement, RadioShack shall pay the Settlement Amount in the manner described in this Agreement.  Payment of the Settlement Amount in the manner described in this Agreement shall be the sole financial obligation of

6

RadioShack. The Settlement Amount shall be used (1) to satisfy the claims of all Class Members, as specified herein; (2) to satisfy all of Plaintiffs' Expenses; (3) to satisfy all of Plaintiffs' Attorneys' Fees; (4) to satisfy all Class Representative Enhancements; (5) to satisfy all claims for PAGA penalties as specified in this Agreement and (6) to pay all Settlement Expenses. The Settlement Amount shall be paid in accordance with the terms of this Agreement. Any Settlement Proceeds not claimed by Class Members under the terms of this Agreement shall be in the nature of cy pres relief and donated to charity as provided in Section III, Paragraph 12(f) of this Agreement.

3.     **Release of Claims by Class Members:**

(a)     For, and in consideration of, the mutual promises contained herein, Plaintiffs and the Class Members fully and finally release, as of the date of preliminary approval of the Settlement, RadioShack, and its parents, subsidiaries, affiliated companies and successors, and all of their respective shareholders, officers, directors, employees, administrators, fiduciaries, trustees, and agents (collectively the "Releasees"), from any and all Released Claims. For the purposes of this Agreement, "Released Claims" is defined as:

> All claims, demands, rights, liabilities, and causes of action alleged in the Complaint, including (1) any and all claims that RadioShack or any Releasee failed to reimburse the Class Members for mileage and/or other expenses arising from the use of their personal vehicles to carry out ICSTs during the Settlement Period; and (2) any and all claims that RadioShack or any Releasee owes the Class Members any penalties pursuant to the California Private Attorneys General Act of 2004, California Labor Code sections 2699 *et seq.*, interest, attorneys' fees, arising from the claims alleged in the Complaint.

(b)     With respect to the Released Claims defined above, Plaintiffs and the Class Members shall be deemed to have, and by operation of the Final

7

Judgment shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of section 1542 of the California Civil Code to the extent it is applicable (or any other similar provision under any federal, state or local law to the extent any such provision is applicable). Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Thus, subject to and in accordance with the provisions of this Agreement, even if Plaintiffs and/or the Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the facts alleged in the Complaint or the Released Claims, each Plaintiff and Class Member, upon the Effective Date, shall be deemed to have and by operation of the Final Judgment shall have, fully, finally, and forever settled and released all of the Released Claims. This is true whether such Released Claims are known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of different or additional facts.

8

4. **Denial of Liability:**

RADIOSHACK DENIES THAT IT OR ANY OF ITS PARENTS,
SUBSIDIARIES OR AFFILIATES OR ANY OTHER RELEASEE HAS
ENGAGED IN ANY UNLAWFUL ACTIVITY, FAILED TO COMPLY WITH
THE LAW IN ANY RESPECT, OR IS LIABLE TO ANYONE FOR THE
CLAIMS ASSERTED IN THE COMPLAINT OR THE LITIGATION. The
Parties expressly acknowledge that this Agreement is entered into for the purpose
of compromise of highly disputed claims and that nothing herein is an admission of
liability or wrongdoing by RadioShack or any of the Releasees. Neither this
Agreement nor any document prepared in connection with the Settlement may be
admitted in any proceeding as an admission by any of the Parties. However, this
paragraph and all other provisions of this Agreement notwithstanding, any and all
provisions of this Agreement may be admitted into evidence and otherwise used in
any and all proceedings to enforce any term of this Agreement, or in defense of
any claims released or barred by this Agreement.

5. **Approval of Settlement:**

(a)      Plaintiffs shall apply to the Court for approval of the Settlement
for purposes of effectuating the Settlement. The amounts of Plaintiffs' Attorneys'
Fees, Plaintiffs' Expenses, the Class Representative Enhancements and the
Settlement Expenses shall be determined by the Court, and such determination
shall be final and binding. The parties agree that the Court's approval or denial of
any amount requested for Plaintiffs' Attorneys' Fees, Plaintiffs' Expenses, the
Class Representative Enhancements or the Settlement Expenses are not conditions
of this Agreement and, except as deemed necessary by the Court, are to be
considered by the Court separate from the fairness, reasonableness, and adequacy
of the Settlement. Any order or proceeding relating to an application for Plaintiffs'
Attorneys' Fees, Plaintiffs' Expenses, Class Representative Enhancements or

9

Settlement Expenses shall not operate to terminate or cancel this Agreement.

(b)   Should the Court decline to approve this Agreement in any material respect, except for the award of Plaintiffs' Attorneys' Fees, Plaintiffs' Expenses, Class Representative Enhancements, or Settlement Expenses, or fail to dismiss the Litigation with prejudice, RadioShack shall have no obligation to make any payment under this Agreement, and in the event that RadioShack has made any payment, such monies shall be returned promptly to RadioShack (less RadioShack's one-half share of any Settlement Expenses already reasonably incurred by the Claim Administrator; the other one-half share of any Settlement Expenses to be paid by Plaintiffs' counsel).

(c)   **Motion for Preliminary Approval**:  As soon as practicable following execution of this Agreement by the Parties, Plaintiffs shall file a Motion for Preliminary Approval of the Settlement with a Proposed Order Granting Preliminary Approval of the Settlement and the supporting papers.

(d)   **Notice of Class Settlement**:  Following the entry of the Order Granting Preliminary Approval of the Settlement, a Notice, including a Claim Form, substantially in the forms attached hereto as Exhibits A and B, shall be mailed to each Class Member by the Claim Administrator.

(i)   Within thirty (30) calendar days of the date of preliminary approval, RadioShack shall provide the Claim Administrator with the full name, address, telephone number and social security number of each Class Member, as well as the number of weeks worked by each Class Member during the Settlement Period, based upon its records.  This information shall remain confidential and shall not be disclosed by the Claim Administrator to anyone else other than counsel for the Parties and the Court except as required to carry out the Claim Administrator's duties under this Agreement.

10

(ii)     Within fifteen (15) calendar days following receipt of the information described above, the Claim Administrator shall update the Class Members' addresses through the National Change of Address database (NCOA) or similar methods to ensure the most complete and accurate mailing reasonably possible, based on updated address information reasonably available and mail the Notice and Claim Form to each Class Member via U.S. Mail using the address information provided by RadioShack or a more current address from the NCOA or similar methods to ensure the most complete and accurate mailing reasonably possible, based on updated address information reasonably available.

(iii)     The Notice shall provide that as a condition of receiving any Settlement Payment, a Class Member must submit a valid and timely Claim Form.  The deadline for returning all Claim Forms shall be forty-five (45) calendar days from the date of mailing by the Claim Administrator.  (This deadline shall be referred to as the "Proof of Claim Deadline").

(iv)     The Notice shall provide that Class Members who wish to object to the Settlement must file with the Court and serve on counsel for the Parties either a written statement objecting to the Settlement or a written notice of intention to appear at the Final Settlement Hearing and object.  Such written statement or notice must be filed with the Court and served on counsel for the Parties no later than thirty (30) calendar days following the date of mailing of the Notice.  Class Members who fail to file and serve timely written objections or notice of intention to appear and object in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.  The Parties agree that neither they nor their counsel will solicit, or otherwise encourage, directly or indirectly, Class Members to object to the Settlement or appeal the Final Judgment.

11

(v)     On the same date the Claim Administrator mails the Notice and Claim Form to Class Members, the Claim Administrator also shall send a separate notice to the State of California, in substantially the form attached hereto as Exhibit C, notifying the Labor and Workforce Development Agency (LWDA) of the State of California of the Settlement and the amount allocated under this Agreement for PAGA penalties.  This separate notice shall advise that any notice of objection to the Settlement by the State of California must be postmarked no later than thirty (30) calendar days from the date of mailing of the notice to the State of California.

If a Notice is returned as undeliverable because of an incorrect address, the Claim Administrator shall conduct a Social Security number search to attempt to identify a more current address for the Class Member and re-mail the Notice in the event a more current address is identified.  If a Notice is returned with a forwarding address, the Claim Administrator shall promptly forward the Notice to the forwarding address, indicating on the Notice the date it was re-mailed. The Claim Administrator shall include a list of Notices which were returned and those which were re-mailed, including the date of each re-mailing, in its regular reports to counsel for the Parties.  Neither the Proof of Claim Deadline nor the deadline for filing objections shall not be extended for Class Members whose Notices are re-mailed pursuant to this paragraph.

(vi)    Neither RadioShack nor Class Counsel shall be responsible for the loss of, untimely delivery of, or failure to deliver Claim Forms or Settlement Payments or lost, stolen, damaged or destroyed bank checks constituting Settlement Payments.

(e)     **Final Settlement Hearing**:  A hearing to determine final approval of the Settlement shall be conducted subject to the calendar of the Court ("Final Settlement Hearing").  No later than thirty (30) calendar days prior to the

12

Final Settlement Hearing, the Claim Administrator shall provide Plaintiffs'
attorneys with a Declaration of Compliance to be filed by Plaintiffs' attorneys with
the Court.  No later than twenty (20) calendar days before the Final Settlement
Hearing, Plaintiffs shall file a Motion for Final Approval, Memorandum of Points
and Authorities in Support of the Settlement, and Motion(s) for Plaintiffs'
Attorneys' Fees, Plaintiffs' Expenses, Class Representative Enhancements and
Settlement Expenses.  Upon final approval of the Settlement by the Court, the
Parties shall present the proposed Order Approving Class Settlement and
Dismissing Class Action with Prejudice and Judgment, substantially in the form
attached hereto as Exhibits D and E, to the Court for its approval and entry.

      (f)    **Motion for Plaintiffs' Attorneys' Fees and Plaintiffs'**
**Expenses:**  Plaintiffs' attorneys shall file a motion for approval of Plaintiffs'
Attorneys' Fees and Plaintiffs' Expenses as set forth above.  Plaintiffs' counsel
agree that they will not request more than One Million Five Hundred Thousand
Dollars ($1,500,000) for Plaintiffs' Attorneys' Fees.  RadioShack agrees that it will
not object to any request for Plaintiffs' Attorneys' Fees which does not exceed One
Million Five Hundred Thousand Dollars ($1,500,000).  The Parties agree that they
will accept the determination of the Court with respect to the amount of Plaintiffs'
Attorneys' Fees and Plaintiffs' Expenses awarded.  Plaintiffs' Attorneys' Fees and
Plaintiffs' Expenses shall be paid exclusively from the Settlement Amount.

      (g)    **Request for Class Representative Enhancements:**  Plaintiffs
Ramon Vargas and Kimberla Means shall be paid a Class Representative
Enhancement as determined by the Court.  Plaintiffs' attorneys agree that they will
not seek more than Five Thousand Dollars ($5,000) for each of the two class
representatives as a Class Representative Enhancement.  RadioShack agrees that it
will not object to any request for Class Representative Enhancements which does
not exceed Five Thousand Dollars ($5,000) to each of the two class

13

representatives. The Parties agree that they will accept the determination of the Court with respect to the amount of the Class Representative Enhancements awarded to the two class representatives. The Court-approved Class Representative Enhancement shall be paid exclusively from the Settlement Amount.

6.   **Final Order and Judgment:**

Upon final approval of the Settlement, a final Order and Judgment shall be entered by the Court substantially in the forms attached hereto as Exhibits D and E, which shall, among other things:

(a)   Grant final approval to the Settlement as fair, reasonable, adequate, in good faith and in the best interests of the Class as a whole, and order the Parties to carry out the provisions of this Agreement.

(b)   Adjudge that the Class Members are conclusively deemed to have released RadioShack and the Releasees as set forth in Section III, Paragraph 3 of this Agreement.

(c)   Bar and permanently enjoin each Class Member from prosecuting against RadioShack and/or the Releasees any and all of the Released Claims.

(d)   Reserve continuing jurisdiction as provided herein.

7.   **Proof of Claim:**

The Claim Form shall inform the Class Members of the Released Claims and of the steps the Class Members must take to obtain a Settlement Payment , including all applicable deadlines. The Claim Form shall provide that the Class Member has the option to request that the Claim Administrator donate his/her Settlement Payment to charity as set forth in Section III, Paragraph 12(f).

If a timely but incomplete or defective Claim Form is received by the Claim Administrator, the Claim Administrator shall, as promptly as reasonably possible,

14

but in no event later than fourteen (14) calendar days after such receipt, notify the Class Member in writing of the defects in the Claim Form, and give the Class Member an additional fourteen (14) calendar days from the date of such written notification to complete any missing information or cure any defect.

8.   **Dispute Procedure:**

(a)   Each Class Member shall be entitled to dispute the number of weeks worked at a RadioShack store in California during the Settlement Period as indicated on the Claim Form.

(b)   Any such dispute must be made in writing and mailed by U.S. mail to the Claim Administrator, postmarked no later than the Claim/Objection Deadline. Notice of any dispute must specify the grounds for the dispute and include any supporting documentation. Upon receipt of notice of a dispute, the Claim Administrator shall promptly serve Plaintiffs' counsel and RadioShack's counsel with copies of the notice of dispute and any accompanying supporting documentation. No notice of dispute shall be effective or considered for any purpose unless it is timely mailed by U.S. mail to and received by the Claim Administrator as provided above.

(c)   RadioShack shall have ten (10) calendar days after the receipt of a notice of dispute to respond and submit any relevant information.

(d)   RadioShack shall have the right to dispute the validity of any Claim Form which RadioShack believes to be fraudulent or to contain inaccurate information.

(e)   All disputes by Class Members to the information contained or submitted on the Claim Form or by RadioShack regarding the validity of a Claim Form, shall be determined by the Claim Administrator. The decision of the Claim Administrator shall be final, binding and non-appealable. The only disputes by Class Members that shall be permitted are those which dispute the number of

15

weeks worked by a Class Member during the Settlement Period.

In resolving any dispute, the Claim Administrator will review any documentation submitted by the Class Member and by RadioShack and may talk to the Class Member and/or authorized representatives of RadioShack prior to making a decision.  The burden shall fall on the person or entity initiating the dispute to produce information and/or documents affirmatively rebutting the information which is disputed.   There shall be no discovery conducted under this Agreement.

(f)     All fees and costs charged by the Claim Administrator to resolve disputed claims are Settlement Expenses and shall be deducted from the Settlement Amount.

(g)     The Claim Administrator shall be neutral and unbiased.  The Claim Administrator shall render a decision within thirty (30) calendar days after receiving notice of a dispute, but in no event later than thirty (30) calendar days prior to the Final Settlement Hearing.

9.     **Allocation of Settlement Amount:**

The Settlement Amount shall be allocated as follows:

(a)     Sixty Six Thousand Six Hundred Sixty Six Dollars ($66,666) of the Settlement Amount shall be allocated to payment of PAGA penalties.  Seventy-five percent of the total amount allocated to PAGA penalties ($50,000) shall be paid to the State of California.  Twenty-five percent of the total amount allocated to PAGA penalties ($16,666) shall be included as part of the Settlement Proceeds, and distributed as provided in this Agreement.

(b)     To the extent the Court does not approve the full amount requested by Plaintiffs' counsel for Plaintiffs' Attorneys' Fees, Plaintiffs' Expenses, Class Representative Enhancements, or Settlement Expenses, the amounts not approved will be included as part of the Settlement Proceeds, and

16

distributed as provided in this Agreement.

(c)     The Settlement Proceeds shall be allocated to the Class Members for the settlement of all Released Claims. The Settlement Payments shall not be subject to withholding. Each Authorized Claimant shall be responsible for remitting to federal, state and/or local taxing authorities any applicable taxes which may be owed on his or her Settlement Payment.

10.   **Method of Allocation of Settlement Proceeds:**

The Parties recognize and agree that the potential damages and penalties in the Litigation are difficult to quantify, and are subject to differing calculations and formulas. The Parties hereby agree that the formula for allocating the Settlement Proceeds to Class Members provided herein is fair and reasonable. The Parties have agreed that the distribution to each Class Member submitting a valid and timely claim shall be determined as follows:

(a)     Each Class Member shall be assigned a percentage of the Settlement Proceeds based upon his/her length of employment with RadioShack. Each Class Member's percentage share of the total Settlement Proceeds will be calculated based upon the total number of weeks worked by the Class Member in relation to the total number of weeks worked by all Class Members collectively after resolution of all disputes as set forth in Section III, Paragraph 8.

(b)     The number of weeks worked by each Class Member shall be determined based upon the records of RadioShack, subject to the dispute procedure set forth in Section III, Paragraph 8 of this Agreement.

11.   **Claims Administration:**

The fees and costs incurred by the Claim Administrator, upon order of the Court shall be paid from the Settlement Amount and shall be considered part of the Settlement Expenses. Any dispute relating to the Claim Administrator's ability or the manner in which it is performing its duties shall be referred to the Court if it

cannot be resolved by the Parties. The Claim Administrator shall regularly and accurately report to the Parties, in writing, the substance of the work it performs, including the amounts payable and paid to Authorized Claimants, and the basis for any denial of a claim. In addition, within five (5) business days after expiration of the time to object, the Claim Administrator shall report to counsel for Plaintiffs the names and contact information of any persons that have not yet submitted a Claim Form and shall furnish additional reports upon request through the conclusion of the claim period.

12.   **Funding and Distribution of Settlement Amount:**

Within twenty (20) calendar days after the Judgment becomes Final, RadioShack will pay to the Claim Administrator the Settlement Amount of $4.5 million ($4,500,000). The Claim Administrator will distribute the Settlement Amount as follows:

(a)   **Payment of Authorized Claims:**  The Claim Administrator will pay from the Settlement Proceeds all Authorized Claims, as certified in writing by the Claim Administrator, to include all claims that have not been disputed by the Class Members or RadioShack, and all claims that have been disputed but which have been resolved by the Claim Administrator as set forth in Section III, Paragraph 8. The Claim Administrator shall mail the Settlement Payments to each Authorized Claimant within fifteen (15) business days after receipt of the Settlement Amount by the Claim Administrator.

(b)   **Payment of Court-Approved Plaintiffs' Attorneys' Fees and Plaintiffs' Expenses:**  The amount of Court-awarded Plaintiffs' Attorneys' Fees and Plaintiffs' Expenses shall be paid by the Claim Administrator to Plaintiffs' attorneys within fifteen (15) business days after receipt of the Settlement Amount by the Claim Administrator. The check for payment of Plaintiffs' Attorneys' Fees and Plaintiffs' Expenses shall be made payable to Daniels, Fine, Israel, Schonbuch

18

& Lebovits, LLP and shall be delivered to the offices of Daniels, Fine, Israel, Schonbuch & Lebovits, LLP.  Daniels, Fine, Israel, Schonbuch & Lebovits, LLP shall be responsible for disbursement of any Plaintiffs' Attorneys' Fees and Plaintiffs' Expenses to the Law Offices of Stephen Glick and the Law Offices of Ian Herzog.  RadioShack shall have no liability for any failure by Daniels, Fine, Israel, Schonbuch & Lebovits, LLP to disburse any of Plaintiffs' Attorneys' Fees or Plaintiffs' Expenses to the Law Offices of Stephen Glick and the Law Offices of Ian Herzog, or for any dispute between Plaintiffs' counsel as to the proper allocation of Plaintiffs' Attorneys' Fees or Plaintiffs' Expenses.

(c)     **Payment of Class Representative Enhancements**:  The Court-approved Class Representative Enhancements shall be paid by the Claim Administrator to the Law Offices of Stephen Glick within fifteen (15) business days after receipt of the Settlement Amount by the Claim Administrator.

(d)     **Payment of PAGA Penalties to State of California:**  Seventy-five percent (75%) of the portion of the Settlement Amount allocated to PAGA penalties shall be paid by the Claim Administrator to the Labor Workforce Development Agency of the State of California within fifteen (15) business days after receipt of the Settlement Amount by the Claim Administrator.

(e)     **Payment of Settlement Expenses:** Within fifteen (15) business days after receipt of the Settlement Amount, the Claim Administrator shall withdraw the Court-approved Settlement Expenses from the Settlement Amount. The Court-approved Settlement Expenses shall be paid exclusively from the Settlement Amount.  The Claim Administrator shall not withdraw the Court-approved Settlement Expenses until it has first distributed all other payments required under this Agreement.

(f)     **Payment of Unclaimed and Donated Funds to Cy Pres Charities**:  Within fifteen (15) business days after receipt of the Settlement

19

Amount, the Claim Administrator shall pay all unclaimed funds, including unclaimed Settlement Payments from the Settlement Proceeds; and all Settlement Payments which Class Members have indicated on their Proof of Claim Form that they wish to donate to the cy pres charities, to the following cy pres charities as set forth below:

(i)     Twenty-five percent (25%) shall be donated to City of Hope, 1055 Wilshire Boulevard, 13th Floor, Los Angeles, California 90017. Attention: Mary Koenig;

(ii)    Twenty-five percent (25%) shall be donated to the American Cancer Society, P.O. Box 22718, Oklahoma City, Oklahoma 73123

(iii)   Fifty percent (50%) shall be donated to the Lance Armstrong Foundation, 2201 East 6th Street, Austin, Texas 78702.

Donations of those Settlement Payments made by Class Members who indicate on their Proof of Claim Form that they wish to donate their Settlement Payments to the cy pres charities shall be made in the name of each Class Member in the amount of that Class Member's Settlement Payment. All other unclaimed Settlement Proceeds shall be donated in the name of RadioShack.

The Claim Administrator shall provide the Parties with a written report regarding the amount of all unclaimed funds.

The Claim Administrator shall establish an interest bearing account into which shall be placed all Settlement Payments which are returned as undeliverable; and all Settlement Payment checks which are not negotiated within one hundred eighty (180) calendar days after the date they are mailed. If a Settlement Payment check is not negotiated in that period of time, the Settlement Payment check shall be voided.

The Claim Administrator shall provide the Parties with a written report regarding the amount of all undeliverable Settlement Payments and all voided

Settlement Payment checks.

Within two hundred ten (210) calendar days after receipt of the Settlement
Amount, the Claim Administrator shall pay the amounts for undeliverable
Settlement Payments and those Settlement Payment checks that are not negotiated
within 180 calendar days, and any interest earned on such funds to those cy pres
charities and in the proportions set forth above in Section III, Paragraph 12(f)(i)-
(iii).

13.   **Option to Void Agreement:**

It is understood and agreed by the Parties that the allocation of the
Settlement Amount, the formula for the distribution of the Settlement Proceeds,
and the procedure for effectuating this Settlement are subject to approval by the
Court.  However, if any Court order or action of the Court: (1) requires
RadioShack or any other Releasee to pay any portion of the Settlement Amount to
any person or entity other than as provided in this Agreement; or (2) requires
RadioShack or any other Releasee to pay more than Four Million Five Hundred
Thousand Dollars ($4,500,000) (including all Settlement Payments, PAGA
penalties, Plaintiffs' Attorneys' Fees, Plaintiffs' Expenses, Settlement Expenses,
and Class Representative Enhancements); or (3) diminishes the releases to be
obtained by RadioShack; or (4) requires any other change in this Agreement that is
materially detrimental to any Party, the Agreement shall be voidable by any Party,
by written notice to the attorney of record for the other Parties served in a manner
authorized by California Code of Civil Procedure section 1013, no later than thirty
(30) calendar days after receipt of notice of entry of any such order or action.

If a Party elects to void this Agreement, or if the Court fails to approve this
Agreement, neither RadioShack nor any other Releasee shall have any obligation
to make any payments under this Agreement and any payments made by
RadioShack or any other Releasee shall be returned promptly to RadioShack with

21

the exception of any Settlement Expenses which are or have been charged by the Claim Administrator, which shall be paid one-half by RadioShack and one-half by Plaintiffs.  Under no circumstances shall RadioShack nor any other Releasee be responsible to pay any of Plaintiffs' Attorneys' Fees, Plaintiffs' Expenses, or the Class Representative Enhancements.

14. **Media Contact:**

The Parties and their counsel agree that they will not directly or indirectly issue any press release, hold any press conference, make any posting on any web site, instant messaging site, blog, or social networking site, initiate any contact with any members of the news media, including, but not limited to, any radio or television stations, newspapers, or magazines regarding the Litigation or this Settlement.  Nothing herein shall prohibit Plaintiffs' counsel from communicating directly with their clients and Class Members.

Plaintiffs' counsel may post general information concerning the Litigation and the Settlement on their firms' web sites, provided such information is a direct quote or paraphrase of the settlement documents filed with and/or approved by the Court.  Plaintiffs' counsel also may post the settlement documents on their firm web sites.

Either party may issue a press release or communicate with the media concerning the donation of funds to the designated charities concurrent with or following the release of such funds by the Claim Administrator.  Any such communication may reference the Litigation, but neither party may make any additional comment or respond to any questions concerning the Litigation or the Settlement.

In the event any Party believes that a statement has been made in violation of this provision, counsel for the Parties shall meet and confer informally in an attempt to resolve the dispute.  If any such dispute cannot be resolved informally,

22

the matter will be submitted to Hon. Joseph C. Spero, Magistrate Judge for the United States District Court, Northern District of California, (the "Arbitrator") for resolution.  In such proceeding, the Arbitrator, may grant a Cease and Desist Order but shall have no authority to make any damages award.  The decision of the Arbitrator will be final and binding.

15.    **No Effect On Other Benefits:**

RadioShack will not use the Settlement Payments for determination of eligibility for, or calculation of, any other employee benefits (e.g., retirement, deferred compensation, vacation) of Plaintiffs or any Class Member, and RadioShack will not modify Plaintiffs' or any Class Member's previously credited hours of service or other eligibility criteria under any employee pension benefit plan or employee welfare plan sponsored by RadioShack on account of the Settlement Payments.

16.    **Notices:**

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the fifth day after mailing by United States mail, addressed as follows:

**To Plaintiffs' Counsel:**

Stephen Glick
Law Offices of Stephen Glick
1055 Wilshire Boulevard,
Suite 1480
Los Angeles, California 90017

**To RadioShack's Counsel:**

Andrew M. Paley
Seyfarth Shaw LLP
2029 Century Park East, Suite 3500
Los Angeles, California 90067

23

17. **Entire Agreement:**

After this Agreement is fully executed by all Parties and their attorneys of record, this Agreement shall constitute the entire agreement relating to Settlement of the Litigation and the causes of action asserted therein. The Parties and their counsel agree that there have been no oral representations, warranties or inducements made to any party concerning this Agreement other than the representations, warranties and covenants expressly stated in the Agreement.

18. **Authorization:**

Plaintiffs' attorneys warrant and represent that they are authorized by Plaintiffs, and the attorneys of record for RadioShack warrant and represent that they are authorized by RadioShack, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement or this Agreement, or on any supplemental provisions that may become necessary to effectuate the Settlement or this Agreement, the Parties agree to seek the assistance of the Court. However, in all cases all such documents and supplemental provisions shall be consistent with this Agreement.

19. **Jurisdiction:**

The Court shall have continuing jurisdiction to with respect to implementation and enforcement of the terms of the Settlement Agreement, except for issues to be resolved by the Claim Administrator as provided herein, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Agreement and addressing such post-

24

Judgment matters as may be appropriate under court rules or applicable law. Except where the context indicates otherwise, references to the Court shall also include any other court that may assume jurisdiction of the Litigation, or any to whom the Court has referred the matter.

20. **Modification:**

This Agreement, and any and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their successors-in-interest.

21. **Successors:**

This Agreement shall be binding upon, and inure to the benefit of, the successors of each of the Parties.

22. **California Law:**

All terms of this Agreement and its Exhibits shall be governed by and interpreted according to the laws of the State of California and the Rules applicable to the Court approving the Settlement, without giving effect to any conflict of law principles or choice of law principles.

23. **Representation by Counsel:**

The Parties have each been represented by counsel and have cooperated in the drafting and preparation of this Agreement. This Agreement shall not be construed against any party on the basis that the party was the drafter or participated in the drafting.

24. **Counterparts:**

This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Any executed counterpart shall be admissible in evidence to prove the existence and contents of this Agreement.

25

25.     **Integration Clause:**

The Agreement, including exhibits attached hereto, constitutes the complete, final and exclusive embodiment of the entire agreement between the Plaintiffs and Class Members, on one hand, and RadioShack, on the other hand, with respect to the subject matter hereof.  No representations, warranties, or inducements have been made to any party concerning the Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

26.     **Interpretation of the Stipulation:**

The Agreement will be interpreted and enforced under the laws of the State of California.  The parties agree that the terms and conditions of the Agreement are the result of lengthy, intensive arms-length negotiations between the parties. Accordingly, it is agreed that no rule of construction will apply against any party or in favor of any party, and any uncertainty or ambiguity will not be interpreted against one party and in favor of the other.

27.     **Reasonableness of Settlement:**

The Parties believe that this is a fair, reasonable and adequate Settlement and have arrived at this Settlement through arms-length negotiations, taking into account all relevant factors, present and potential.

28.     **Return of Documents:**

Within thirty (30) calendar days after the Judgment becomes Final and all payments required under this Agreement have been made, Plaintiffs' attorneys shall, upon written demand by RadioShack's attorneys, return all documents received from RadioShack in the course of this Litigation except correspondence, pleadings, electronic mail messages and discovery responses but including all documents received from RadioShack setting forth ICST data, and destroy all notes of any such documents.  No copies of any such documents shall be retained.

26

29.    **Headings:**

The headings contained in this Agreement are for reference only and are not to be construed as a part of the Agreement.

30.    **Named Plaintiffs' Waiver of Right to Object:**

By signing this Agreement, Plaintiffs Ramon Vargas and Kimberla Means agree to be bound by its terms and agree not to object to any of the terms of the Agreement or the Settlement. Any objection to the terms of the Agreement or the Settlement shall be void and of no force and effect.

31.    **Failure to Timely Pay:**

In the event RadioShack fails to timely pay or fund any amount deemed to be owing pursuant to this Agreement, Plaintiffs may present this matter to the Court for any remedy the Court deems appropriate.


Dated: _____, 2010          By:_____
                                          Name
                                          Title
                                          RadioShack Corporation


Dated: _8-2-18/_____, 2010          By:_____
                                          Ramon Vargas


Dated: _____, 2010          By:_____
                                          Kimberla Means


27

29. **Headings:**

The headings contained in this Agreement are for reference only and are not to be construed as a part of the Agreement.

30. **Named Plaintiffs' Waiver of Right to Object:**

By signing this Agreement, Plaintiffs Ramon Vargas and Kimberla Means agree to be bound by its terms and agree not to object to any of the terms of the Agreement or the Settlement. Any objection to the terms of the Agreement or the Settlement shall be void and of no force and effect.

31. **Failure to Timely Pay:**

In the event RadioShack fails to timely pay or fund any amount deemed to be owing pursuant to this Agreement, Plaintiffs may present this matter to the Court for any remedy the Court deems appropriate.

Dated: _____, 2010      By:_____
                                        Name
                                        Title
                                        RadioShack Corporation


Dated: _____, 2010      By:_____
                                        Ramon Vargas


Dated: _2-19_____, 2010      By:_____
                                        Kimberla Means

27

Dated: _2 - 1 9 - 10_ , 2010

LAW OFFICES OF STEPHEN GLICK

By: _____
    Stephen Glick
Attorneys for PLAINTIFFS and CLASS

Dated: _____, 2010

DANIELS, FINE, ISRAEL,
SCHONBUCH & LEBOVITS, LLP

By: _____
    Scott A. Brooks
Attorneys for PLAINTIFFS and CLASS

Dated: _____, 2010

LAW OFFICES OF IAN HERZOG

By: _____
    Ian Herzog
Attorneys for PLAINTIFFS and CLASS

Dated: _____, 2010

SEYFARTH SHAW LLP

By: _____
    Andrew M. Paley
Attorneys for DEFENDANT
RADIOSHACK CORPORATION

28

Dated: _____, 2010          LAW OFFICES OF STEPHEN GLICK

                                       By:_____
                                          Stephen Glick
                                       Attorneys for PLAINTIFFS and CLASS


Dated: _Fabruary 22_, 2010             DANIELS, FINE, ISRAEL,
                                       SCHONBUCH & LEBOVITS, LLP

                                       By:_____
                                          Scott A. Brooks
                                       Attorneys for PLAINTIFFS and CLASS


Dated: _____, 2010          LAW OFFICES OF IAN HERZOG

                                       By:_____
                                          Ian Herzog
                                       Attorneys for PLAINTIFFS and CLASS


Dated: _____, 2010          SEYFARTH SHAW LLP

                                       By:_____
                                          Andrew M. Paley
                                       Attorneys for DEFENDANT
                                       RADIOSHACK CORPORATION

28

29.     **Headings:**

The headings contained in this Agreement are for reference only and are not to be construed as a part of the Agreement.

30.     **Named Plaintiffs' Waiver of Right to Object:**

By signing this Agreement, Plaintiffs Ramon Vargas and Kimberla Means agree to be bound by its terms and agree not to object to any of the terms of the Agreement or the Settlement. Any objection to the terms of the Agreement or the Settlement shall be void and of no force and effect.

31.     **Failure to Timely Pay:**

In the event RadioShack fails to timely pay or fund any amount deemed to be owing pursuant to this Agreement, Plaintiffs may present this matter to the Court for any remedy the Court deems appropriate.


Dated: _____, 2010          By: _____
                                       Name Robert C. Donohoo
                                       Title VP, General Counsel + Corp. Sec.
                                       RadioShack Corporation


Dated: _____, 2010          By: _____
                                            Ramon Vargas


Dated: _____, 2010          By: _____
                                            Kimberla Means


27

Dated: _____, 2010         LAW OFFICES OF STEPHEN GLICK

                                     By:_____
                                          Stephen Glick
                                     Attorneys for PLAINTIFFS and CLASS


Dated: _____, 2010         DANIELS, FINE, ISRAEL,
                                     SCHONBUCH & LEBOVITS, LLP

                                     By:_____
                                          Scott A. Brooks
                                     Attorneys for PLAINTIFFS and CLASS


Dated: _2/22/10___, 2010              LAW OFFICES OF IAN HERZOG

                                     By:_____
                                          Ian Herzog
                                     Attorneys for PLAINTIFFS and CLASS


Dated: _____, 2010         SEYFARTH SHAW LLP

                                     By:_____
                                          Andrew M. Paley
                                     Attorneys for DEFENDANT
                                     RADIOSHACK CORPORATION

28

Dated: _____, 2010            LAW OFFICES OF STEPHEN GLICK

                                        By:_____
                                           Stephen Glick
                                        Attorneys for PLAINTIFFS and CLASS


Dated: February 22, 2010                DANIELS, FINE, ISRAEL,
                                        SCHONBUCH & LEBOVITS, LLP

                                        By:_____
                                           Scott A. Brooks
                                        Attorneys for PLAINTIFFS and CLASS


Dated: _____, 2010            LAW OFFICES OF IAN HERZOG

                                        By:_____
                                           Ian Herzog
                                        Attorneys for PLAINTIFFS and CLASS


Dated: February 22, 2010                SEYFARTH SHAW LLP

                                        By:_____
                                           Andrew M. Paley
                                        Attorneys for DEFENDANT
                                        RADIOSHACK CORPORATION


28

**EXHIBIT 2**



**Simpluris**
Class Action Settlement Administration

Case Manager: Laura Staples
laura@simpluris.net
800-779-2104 ext 1115

## Stuart v. RadioShack Corporation
### Case No. C-07-04499

*Weekly Report for* **Period Ending Jul 16, 2010**
*Class Period from* **Jun 03, 2003 to Oct 01, 2009**

*Plaintiff Counsel*
Stephen Glick / Law Offices of Stephen Glick
Scott Brooks / Daniels, Fine, Israel, Schonbuch &
Lebovits, LLP
Paul Fine / Daniels, Fine, Israel, Schonbuch & Lebovits,
LLP
Ian Herzog / Law Offices of Ian Herzog
*Judge* Hon. Edward Chen

*Defense Counsel*
Andrew Paley / Seyfarth Shaw

*Court* United States District Court Northern District of
California

## Case Information

| | |
|---|---|
| *Class Size* | **14,990** |
| *Mailing Date* | **Jun 09, 2010** |
| *Claim Deadline* | **Jul 24, 2010** |
| *Opt-Out Deadline* | **Jul 24, 2010** |
| *Objection Deadline* | **Jul 09, 2010** |
| *Final Hearing Date* | **Aug 06, 2010** |

## Response Information

| | Totals | Pctg |
|---|---|---|
| **Total Responses   Received** | **1,882** | **12.56%** |
| **Total Claims   Received** | **1,879** | **12.54%** |
| Valid Claims | 1,877 | 12.52% |
| Invalid Claims | 2 | 0.01% |
| Late Claims | 0 | |
| Deficient Claims | 2 | 0.01% |
| Disputed Claims | 14 | 0.09% |
| **Total Opt Outs   Received** | **3** | **0.02%** |
| Valid Opt-Outs | 2 | 0.01% |
| Invalid Opt-Outs | 1 | 0.01% |
| Late Opt-Outs | 0 | |
| Deficient Opt-Outs | 0 | |
| **Total Objections Received** | **0** | |

800-779-2104 / Fax - 714-824-8591
http://www.simpluris.net

Orange County
3176 Pullman Street, Suite 123 / Costa Mesa, CA 92626
Orlando
1485 S. Semoran Blvd., Suite 6-1401, Winter Park, FL 32792

07/16/2010

## Mailing Information

| Mailing Title | Mailing Date | Response Deadline | Mailed | Returned | Remailed | Undeliverable |
|---|---|---|---|---|---|---|
| RadioShack_Stuart Claims Subclass 2 - Opt Out, Notice, and Claim Mailing | 06/09/2010 | 07/24/2010 | 1,444 | 85 | 60 | 20 |
| RadioShack_Stuart Claims Subclass 1 - Notice and Claim Mailing | 06/09/2010 | 07/24/2010 | 13,543 | 2,249 | 1,782 | 480 |

## Legend

| | |
|---|---|
| Total responses received: | Includes all responses received for case. Invalid, deficient and disputed responses are included. |
| Total responses received pctg: | Total responses received / class size. |
| Total claims received: | Includes all claims received for case. Invalid, deficient and disputed claims are included. |
| Total claims pctg: | Total claims received / class size. |
| Valid claim / Opt-out: | Includes responses that are not invalid, includes deficient, late and disputed. |
| Valid claim / Opt-out pctg: | Total valid responses / class size. |
| Invalid claim / Opt-out: | Responses that are duplicate submissions or have been denied by counsel. |
| Deficient claims / Opt-out: | Incomplete responses that require completion by class member. |
| Disputed claims: | Claims that are disputed by class member. |
| Undeliverable members: | Total number of class members whose notice packets are undeliverable. |
| Undeliverable mail pieces: | Total number of mail pieces that are undeliverable. |

800-779-2104 / Fax - 714-824-8591
http://www.simpluris.net

Orange County
3176 Pullman Street, Suite 123 / Costa Mesa, CA 92626
Orlando
1485 S. Semoran Blvd., Suite 6-1401, Winter Park, FL 32792

Page 1 of 2

07/16/2010

## PROOF OF SERVICE

State of California )
County of Los Angeles )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 1801 Century Park East, Ninth Floor, Los Angeles, California 90067. On July 21, 2010, I served the within document(s):

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

by placing a true copy thereof in sealed envelopes as stated on the attached mailing list.

| xx | **BY MAIL** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice a true copy would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit. |

| | **BY PERSONAL SERVICE** I caused personal delivery by ATTORNEY SERVICE of said document(s) to the offices of the addressee(s) as set forth on the attached mailing list. |

| xx | **BY OVERNIGHT DELIVERY SERVICE** I caused such envelope to be deposited with an overnight delivery service (Overnite Express/Federal Express) for delivery the next court day, or at most, within two court days of the above date. |

| | **BY E-MAIL OR ELECTRONIC TRANSMISSION**. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed on the service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. |

| xx | (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct. |

| | (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. |

Executed on July 21, 2010, at Los Angeles, California.

Christine
_____
Christine Tucker

## SERVICE LIST

1

Ian Herzog, Esq.                    **Via First Class Mail**
Law Offices of Ian Herzog
2    233 Wilshire Boulevard
Suite 550
3    Santa Monica, California 90401

4    Stephen Glick, Esq.                  **Via First Class Mail**
Law Offices of Stephen Glick
5    1055 Wilshire Boulevard
Suite 1480
6    Los Angeles, California 90017

7    Andrew M. Paley, Esq.                **Via Overnight Mail**
David D. Jacobson, Esq.
8    Seyfarth Shaw, LLP
2029 Century Park East
9    Suite 3500
Los Angeles, CA 90067-3063
10

11
2637-002
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28