UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD STUART,<br><br>    Plaintiff,<br><br>    v.<br><br>RADIOSHACK CORPORATION,<br><br>    Defendant.<br>_____/ | No. C-07-4499 EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND EXPENSES**<br><br>**(Docket Nos. 180, 184)** |

Currently pending before the Court are (1) Plaintiffs' motion for final approval of the class action settlement and (2) Plaintiffs' motion for attorney's fees and expenses. Having considered the papers submitted, the oral argument of counsel, and all other evidence of record, the Court hereby **GRANTS** both motions.

## I.    FACTUAL & PROCEDURAL BACKGROUND

A.    <u>Complaint</u>

This class action was initiated in state court in June 2007. The allegations underlying the complaint were that RadioShack had improperly failed to reimburse its employees for expenses they incurred in using their personal vehicles to perform inter-company transfers ("ICSTs"). Based on these allegations, claims for reimbursement pursuant to California Labor Code § 2802 and for a violation of California Business & Professions Code were asserted. *See* Docket No. 1 (complaint). Subsequently a claim for recovery of penalties under the California Labor Code Private Attorneys General Act ("PAGA"). *See* Docket No. 1 (first amended complaint).

B.  Class Certification

The case was removed to federal court in August 2007. *See* Docket No. 1 (notice of removal). In February 2009, this Court granted the motion for class certification filed by the former class representative (now deceased) Richard Stuart,[1] *see* Docket No. 65 (order), thus certifying a class consisting of "all persons employed by RadioShack within the State of California, at any time from June 3, 2003, to the present, who drove their personal vehicles to and from RadioShack stores to carry out ICSTs and who were not reimbursed for mileage." Docket No. 69 (order) (emphasis omitted). Trial was subsequently set for September 2009. *See* Docket No. 87 (order, filed on 3/16/2009).

Following certification, the Court issued a ruling regarding RadioShack's contention that its duty to reimburse its employees was dependent on the employees first making a request for reimbursement. *See* Docket No. 101 (order, filed on 4/30/2009). RadioShack sought a stay so that it could pursue an interlocutory appeal of that ruling, but that motion was denied. *See* Docket No. 113 (order, filed on 6/25/2009). Notice of class certification was then issued. *See* Docket No. 114 (order, filed on 7/9/2009).

C.  Settlement

Thereafter, the trial was moved from September to October 2009. *See* Docket No. 130 (order, filed on 8/20/2009). In preparation for trial, the parties filed various briefs related to potential defenses. In August and September 2009, the Court issued rulings with respect to the some of the parties' arguments. *See* Docket No. 139 (order); Docket No. 142 (order). In late September 2009, the parties made their initial pretrial filings. *See* Docket Nos. 156-62 (pretrial filings). Then, on October 1, 2009 – nine days before trial was scheduled to begin – the parties reached a settlement. *See* Docket No. 164 (civil minute order).

1.  Total Settlement Amount

Under the Settlement Agreement, RadioShack will pay a total of $4.5 million for the release by the class. This is an all-inclusive sum – *e.g.*, proceeds to be distributed to the class, attorney's

---

[1] After Mr. Stuart passed away, the Court allowed Kimberla Means and Ramon Vargas to substitute in as Plaintiffs and class representatives. *See* Docket No. 166 (order, filed on 10/6/2009).

2

fees and litigation expenses, costs of claim administration, incentive payments to the class representatives, and the PAGA award to the state. Notably, there is no reversion of any of the $4.5 million to RadioShack.

For example, if a class member does not submit a claim, then that money does not revert back to RadioShack but rather will be donated to charity. *See* Sett. Agreement, Ex. B (Claim Form § VI) ("IF YOU DO NOT SUBMIT A CLAIM FORM YOUR SETTLEMENT PAYMENT WILL BE DONATED TO THE DESIGNATED CHARITIES.").

Similarly, if the Court does not award all of the attorney's fees requested by Plaintiffs' counsel, then that money does not revert back to RadioShack but rather will go back for distribution as provided by the Settlement Agreement. *See* Sett. Agreement § 9(b) ("To the extent the Court does not approve the full amount requested by Plaintiffs' counsel for Plaintiffs' Attorneys' Fees, . . . the amounts not approved will be included as part of the Settlement Proceeds, and distributed as provided in this Agreement.").

### 2. Distribution of Settlement Amount

After attorney's fees, litigation expenses, costs of claim administration, incentive payments, and the PAGA award to the state have been deducted from the $4.5 million, *see* Sett. Agreement § II.19 (defining "Settlement Proceeds"), then the remainder is left for distribution to the class members and/or donation to charity.

The following deductions have been calculated by Plaintiffs:

1. Attorney's fees -- $1.5 million. *See* Sett. Agreement § III.5.f (providing that the maximum attorney's fees available are $1.5 million (*i.e.*, one-third of the total payment by RadioShack)).
2. Litigation expenses -- $78,436.69. *See* Docket No. 4 (Mot. at 4); Docket No. 181 (Brooks Decl. ¶ 14) (claiming costs in the amount of $37,554.52); Docket No. 182 (Glick Decl. ¶ 12) (claiming costs in the amount of $13,981.32); Docket No. 183 (Herzog Decl. ¶ 9).
3. Costs of claim administration -- $65,000. *See* Docket No. 184 (Mot. at 4, 6 n.3).

1. 4. Incentive payments -- $10,000 (*i.e.*, $5,000 for each class representative). *See* Sett. Agreement § III.5.g.

2. 5. PAGA award to the state -- $50,000. *See* Sett. Agreement § III.9.

Taking into account the above deductions, the class is left with $2,796,563.31. How much each class member will get of that amount depends on the number of weeks that the class member worked.[2] *See* Sett. Agreement § III.10(a) (providing that "[e]ach Class Member shall be assigned a percentage of the Settlement Proceeds based upon his/her length of employment with RadioShack" and that the "percentage share . . . will be calculated based upon the total number of weeks worked by the Class Member in relation to the total number of weeks worked by all Class Members collectively").

    3.    <u>Release</u>

The released claims are defined in § III.3 of the Settlement Agreement.

D. <u>Preliminary Approval and Response to Notice of Settlement</u>

The Court granted preliminary approval to the settlement in April 2010. *See* Docket No. 176 (order). Consistent with that order, notice of the settlement was given to the class. Because members of the class had previously been given an opportunity to opt out (*i.e.*, as part of the notice of certification), the Court did not provide them with a second opportunity to opt out, with one exception. That is, employees who became employed after December 2008 (when the class list was originally run), and who therefore may not have received the initial notice of certification with the right to exclude, were given an opportunity to opt out. *See* Docket No. 173 (Pl.'s Supp. Br.); Docket No. 178 (Pl.'s Submission of Revised Class Notices).

It appears that notice of the settlement was issued to 14,990 persons. The claim administrator received 1,882 responses. Out of the 1,882 responses, 3 individuals opted out; the remaining 1,879 made claims. According to the claim administrator, 1 of the opt-outs was invalid,

---

[2] The number of weeks worked will initially be determined based on RadioShack's records. *See* Sett. Agreement § III.10.b. If a class member believes that that number is in error, then there is a dispute procedure available to the member. The claim administrator makes the final determination as to the number of weeks worked and that determination is final, binding, and nonappealable. *See* Sett. Agreement § III.8.e.

4

and 2 of the claims were invalid. No objections were made by any responding class member. *See* Docket No. 184 (Mot., Ex. 2) (report); Docket No. 188 (Staples Decl. ¶ 14).

Now pending before the Court is Plaintiffs' motion for final approval as well as their motion for attorney's fees and expenses.

## II. DISCUSSION

A. Motion for Final Approval

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Whether a class action is certified for settlement or, as here, certified for trial and later settled, a court may approve the settlement only after determining that the settlement is fair, adequate, and reasonable. *See* Manual of Complex Litigation § 21.61, at 308 (4th ed. 2004).

> In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, a district court may consider some or all of the following factors:
>
> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).

Taking into account the above factors, the Court concludes that the settlement here is fair, adequate, and reasonable. First, it is significant that no class members have presented an objection to the settlement. And out of the 1,444 members who were given an opportunity to opt out, only 3 did so.[3] *See* Docket No. 184 (Mot. at 9).

More important, under the settlement, the amount available to the class after deductions for, *e.g.*, fees and costs – *i.e.*, $2,796,563.31 – is not far off what the class might be awarded if it were to

---

[3] As noted above, the Court gave employees who became employed after December 2008 (when the class list was originally run), and who therefore may not have received the initial notice of certification with the right to exclude, an opportunity to opt out. *See* Docket No. 173 (Pl.'s Supp. Br.); Docket No. 178 (Pl.'s Submission of Revised Class Notices).

5

prevail on the merits after a trial. Plaintiffs have provided calculations showing that for the § 2802 claim alone they could get approximately $3.2 million in damages (including interest[4]). *See* Mot. at 8-10. The Court has reviewed the calculations and, as a general matter, they appear sound.[5] While Plaintiffs could arguably get more than $3.2 million because they are entitled to penalties under the PAGA, it is not clear that they could get a significant additional amount because the PAGA provides that,

> [i]n any action by an aggrieved employee seeking recovery of a civil penalty available under subdivision (a) or (f), a court may award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory.

Cal. Lab. Code § 2699(e)(2).

Furthermore, even if Plaintiffs could obtain $3.2 million or more after a trial on the merits, there is no guarantee that they would prevail on appeal. *See, e.g.*, *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) ("'It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.' . . . [T]he Settlement amount of almost $ 2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate."); *Yeagley v. Wells Fargo & Co.*, No. C 05-03403 CRB, 2008 U.S. Dist. LEXIS 5040, at *8 (N.D. Cal. Jan. 18, 2008) ("The Court finds that while the settlement offers little of value to the class, plaintiff's case is weak and the class could not do better if the Court rejected the settlement."). It is clear from the record that RadioShack would appeal the results if Plaintiffs were successful. As

---

[4] It is appropriate for Plaintiffs to include an interest component as part of its calculations because California Labor Code § 2802(b) provides that "[a]ll awards made by a court or by the Division of Labor Standards Enforcement for reimbursement of necessary expenditures under this section shall carry interest at the same rate as judgments in civil actions" and that "[i]nterest shall accrue from the date on which the employee incurred the necessary expenditure or loss." Cal. Lab. Code § 2802(b). While Plaintiffs have not provided how they calculated interest to be more than $1 million, *see* Mot. at 9-10, the Court's conservative estimate is close to that figure (about $770,000).

[5] The calculations are based on, *e.g.*, the total number of ICSTs, the IRS mileage rates, the average roundtrip mile for an ICST, and the average number of work weeks per class member. The Court has no reason to doubt this underlying information. By the time the settlement was reached, this case was well past discovery with the parties being ready to go to trial.

noted above, RadioShack sought an interlocutory appeal after the Court rejected its contention that an employer's duty to reimburse is not triggered until an employee first makes a request for reimbursement. *See* Docket No. 101 (order, filed on 4/30/2009). And it is entirely plausible that RadioShack could prevail on an appeal, either in whole or in part, particularly because the issue of when an employer's duty to reimburse is triggered is a novel one, never addressed by any federal or state court.

Finally, there is no reversion of this amount to RadioShack. According to the claims administrator, the participating class members have claimed (as of August 3, 2010), $891,616.65, or 31.88% of the $2,796,363.31. *See* Docket No. 188 (Staples Decl. ¶ 12). This provides substantial assurance that the settlement reflect good faith on the part of the negotiating parties.

Accordingly, the Court finds the settlement fair, reasonable, and adequate and grants the motion for final approval. IT IS HEREBY ORDERED:

1. The class covered by this order is defined as: "All persons employed by RadioShack within the State of California, at any time from June 3, 2003, to October 1, 2009 (the 'Settlement Period'), who drove their personal vehicles to and from RadioShack stores to carry out ICSTs and who were not reimbursed for mileage, and who did not opt out of this lawsuit in response to the notice of class certification or notice of settlement.

2. The Settlement Agreement is granted final approval, and the parties are ordered to carry out the provisions of the Settlement Agreement.

3. As of August 9, 2010, the Court hereby dismisses with prejudice all actions, complaints, and claims and any lawsuit against RadioShack and/or the "Released Parties" or "Releasees" (as defined in § 3.3 of the Settlement Agreement) arising out of, or related to, any of the causes of action or events complained of in the operative complaint filed herein.

4. As of August 9, 2010, the Court adjudges that all class members are conclusively deemed to have released the Released Parties from the "Released Claims" (as defined in § 3.3 of the Settlement Agreement).

5. The Court bars and permanently enjoins each class member from prosecuting against the Releasees any and all of the settled claims which the class members have or may have in the

1    future, arising out of, based upon, or otherwise related to any of the settled claims, or any of
2    the allegations contained in the litigation.
3  6. The Court bars and permanently enjoins each person in the class who did not participate in
4     the settlement by submitting a claim from participating in any future class action regarding
5     the claims raised in the litigation.
6  7. The Court reserves continuing jurisdiction to enforce the terms of the judgment.
7  B.  <u>Motion for Attorney's Fees and Expenses</u>

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In the instant case, the parties agreed as part of the settlement that Plaintiffs' counsel would be awarded no more than $1.5 million in fees, plus litigation expenses incurred. The parties also agreed that the total settlement amount of $4.5 million would cover the costs of claim administration and incentive payments to the class representatives totaling $10,000. These agreements, like all provisions in the settlement, are subject to the Court's determination of whether they are fundamentally fair, adequate, and reasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003).

1.  <u>Attorney's Fees and Litigation Expenses</u>

In the instant case, Plaintiffs' counsel ask for an award of $1.5 million (*i.e.*, one-third of the total settlement amount), plus litigation expenses which total $78,436.69. *See* Docket No. 4 (Mot. at 4); Docket No. 181 (Brooks Decl. ¶ 14) (claiming costs in the amount of $37,554.52); Docket No. 182 (Glick Decl. ¶ 12) (claiming costs in the amount of $13,981.32); Docket No. 183 (Herzog Decl. ¶ 9).

With respect to litigation expenses, counsel has provided evidence establishing that the law firms incurred $78,436.69. *See* Docket No. 181 (Brooks Decl., Ex. 1); Docket No. 182 (Glick Decl., Ex. 1); Docket No. 183 (Herzog Decl., Ex. 2). The Court has reviewed the expenses and determined that they are reasonable. The Court notes that the sum is not excessive given that this litigation has been ongoing for more than three years.

As for attorneys' fees, counsel has provided evidence establishing that the law firms incurred approximately $1.5 million as a lodestar for fees – excluding work performed in preparing for final approval and any post-judgment work that may be needed. The $1.5 million sum represents 2,116.69 hours of work over a period of more than three years. *See* Docket No. 181 (Brooks Decl., Ex. 1) (reflecting 694.9 hours); Docket No. 182 (Glick Decl., Ex. 1) (reflecting 836.53 hours); Docket No. 183 (Herzog Decl., Ex. 1) (reflecting 585.26 hours). This amounts to an average hourly rate of approximately $708 (*i.e.*, $1,500,000 ÷ 2,116.69 hours). The actual hourly rates of the billing attorneys ranged from $600 to $1,000. *See* Docket No. 181 (Brooks Decl. ¶¶ 3-4, 23) ($650 hourly rate for Mr. Brooks, who graduated in law school in 1992, and $700 hourly rate for Mr. Daniels, who has more than forty years of experience); Docket No. 182 (Glick Decl. ¶¶ 9-11) ($800 hour rate for Mr. Glick, who has more than thirty years of experience; $450 hourly rate for Mr. Jenkins, who has fourteen years of experience; and $100 hourly rate for legal assistant); Docket No. 183 (Herzog Decl. ¶¶ 6, 10) ($1,000 hourly rate for Mr. Herzog, who has an unspecified number of years of experience, and $600 hourly rate for Ms. Abitanta, who has twenty-five years of experience).

The Court has reviewed the billing records submitted by counsel as well as the declarations regarding the hourly rates of counsel. The number of hours is reasonable given the length of the lawsuit and the vigorous disputes over the course of the litigation (*e.g.*, regarding RadioShack's defense that it had no duty to reimburse until an employee made a request for reimbursement). As for the hourly rates, the Court finds that they are for the most part reasonable as well. The Court notes that it has some concerns about the $1,000 hourly rate claimed by Mr. Herzog. Based on the Court's experience, this is an inordinately large hourly rate, even if the Court were to assume that Mr. Herzog has fifty years of experience. However, as noted above, given the 2,116.69 hours incurred, the average hourly rate for a fee award of $1.5 million total is $708, an amount that the Court deems appropriate, particularly when no multiplier is being sought on top of the lodestar.

Furthermore, as a percentage of the total settlement amount to be paid by RadioShack (with no possibility of reversion), the fee award represents one-third of the settlement amount. This is well within the range of percentages which courts have upheld as reasonable in other class action

9

lawsuits. *See Staton*, 327 F.3d at 968 (noting that, in the Ninth Circuit, in a common fund case, 25% of the common fund is a benchmark award for attorney's fees).

Accordingly, the Court finds the request for fees fair, reasonable, and adequate.

### 2. Costs of Claim Administration

As indicated above, the cost of claim administration is $65,000. *See* Docket No. 184 (Mot. at 6 n.3, 10) (noting that the cost of claim administration is $65,000 up to a 35% response rate); Docket No. 188 (Staples Decl. ¶¶ 12, 16) (testifying that, here, response rate of approximately 19% and that administration costs are $65,000 for a response rate up to 35%). The Court deems this cost reasonable given the services provided by the claim administrator (*e.g.*, mailing the notice, receiving claims, resolving disputed claims).

### 3. Incentive Payments

Finally, an incentive award of $5,000 for each of the two class representatives is requested, for a total of $10,000.

> Whether to grant an incentive award to the named plaintiff is a matter within the court's discretion. Such awards are intended to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." [A] court should consider the following factors when determining whether an award is justified: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

> [A] court must also ensure that the amount of the incentive award is not excessive and is not the product of fraud or collusion. The danger of an excessive incentive award to a class representative is obvious: "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." To assess whether an incentive payment is excessive, courts consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment."

*Anderson v. Nextel Retail Stores, LLC*, Nos. CV 07-4480-SVW (FFMx),CV 07-6362-SVW (FFMx),CV 07-6576-SVW (FFMx), 2010 U.S. Dist. LEXIS 71598, at *26-28 (C.D. Cal. June 30, 2010).

The Court concludes that an incentive payment to each class representative is appropriate given that a benefit was obtained for the class as a result of the settlement. *See Staton*, 327 F.3d at 977 (noting that factors to be considered include "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation'"). Moreover, the amount of the incentive payment -- *i.e.*, $5,000 for each class representative -- is reasonable. Although the class representatives did not enter this litigation until late in the proceedings, due consideration must be given to the fact that they were willing and ready to go to trial. If the class representatives had asked for a larger sum, the Court might well reach a different conclusion, but the $5,000 sought for each representative is relatively modest.

4. <u>Summary</u>

In accordance with the above discussion, Plaintiffs are awarded $1.5 million in fees, $78,436.69 in litigation expenses, and $65,000 in claim administration costs. An incentive payment for each class representative in the amount of $5,000 (for a total of $10,000) is also awarded.

### III. CONCLUSION

For the foregoing reasons, both of Plaintiffs' motions are granted.

This order disposes of Docket Nos. 180 and 184.

IT IS SO ORDERED.

Dated: August 9, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge